NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| CHRISTINE GILLESPIE, | : | **Civil Action No. 21-18990-ES-AME** |
| Plaintiff, | : | |
| | : | |
| v. | : | **REPORT and RECOMMENDATION** |
| | : | |
| NEWARK BOARD OF EDUCATION, et al., | : | |
| | : | |
| Defendants. | : | |

**ESPINOSA, U.S.M.J.**

This matter is before this Court on the following motions: (i) the Newark Defendants'[1] motion to dismiss the Complaint pursuant to Rule 12 of the Federal Rules of Civil Procedure [D.E. 43]; (ii) the Newark Defendants' motion for sanctions against Plaintiff *pro se* Christine Gillespie ("Plaintiff") [D.E. 44]; (iii) the State Defendants' Rule 12 motion to dismiss the Complaint [D.E. 45]; and (iv) Plaintiff's amended motion for sanctions [D.E. 52]. The motions are all opposed. The Honorable Esther Salas, U.S.D.J., referred the motions for a Report and Recommendation pursuant to 28 U.S.C. § 636(b). This Court has reviewed the motion papers and finds oral argument unnecessary. *See* Fed. R. Civ. P. 78(b). For the following reasons, this

---

[1] The "Newark Defendants" are: Newark Board of Education; Roger Leone; Marion Bolden; Ann Marie McGoldrick; Homere Breton; Perry L. Lattiboudere, Esq.; Cherie L. Adams, Esq.; Derlys M. Gutierrez, Esq.; the Law Firm of Adams Gutierrez & Lattiboudere, LLC; and Ruth Ruggero Hughs, Esq. The "State Defendants" are: Angelica Allen-McMillan; David Hespe; Jeffrey Gerson; and Laura Sanders. *See* D.E. 1, Compl.

Court recommends dismissal of the action and denial of the parties' respective motions for sanctions.

## I.    RELEVANT BACKGROUND[2]

### A.    Plaintiff's Workers' Compensation Matter

Plaintiff, a tenured teacher employed by Newark's public school district (the "District"),[3] alleges that, on September 4, 1998, she suffered injuries on school property due to the District's negligence. D.E. 1, Compl. ¶ 1; D.E. 1-1, Compl. ¶ 13. Despite seeking treatment through her employment, Plaintiff claims she did not receive adequate care because the District's risk manager, and dismissed-defendant, Ron Hale ("Hale"),[4] unilaterally canceled her appointments. D.E. 1-1, Compl. ¶¶ 14-15. Plaintiff then filed a workers' compensation claim. *Id.* ¶¶ 16, 19.

According to Plaintiff, on or about July 29, 1999, the District admitted to compensability for her work-related accident, which resulted in consent orders that required the District to

---

[2] This summary generally recounts the facts Plaintiff alleges in her Complaint. Those allegations are accepted as true for purposes of Defendants' Rule 12(b)(6) motions. *See Davis v. Wells Fargo*, 824 F.3d 333, 338 (3d Cir. 2016) (citation omitted). Additionally, in issuing a recommendation on the pending dispositive motions and consistent with Third Circuit law, this Court deems it necessary to consider various extrinsic documents that are either "integral to Plaintiff's Complaint, matters of public record, [or] otherwise indisputable." *Tobia v. Lakewood Bd. of Educ.*, No. 16-04850, 2020 WL 7334209, at *2 (D.N.J. Dec. 14, 2020) (collecting cases). Nonetheless, nothing herein shall constitute a conclusive finding of fact or a definitive assessment of the weight of the evidence.

[3] On July 12, 1995, the New Jersey State Board of Education (the "State Board") placed the School District of the City of Newark "on full State intervention," resulting in (i) the State Board taking over Newark's public school system, (ii) the "removal" of the Newark Board of Education, and (iii) the creation of a state-operated school district in the City Newark (*i.e.*, the District). *See Gillespie v. Janey*, 441 F. App'x 890, 891-92 (3d Cir. 2011) (citation omitted). At all relevant times alleged in the Complaint, "Newark schools were under full state intervention." *State-Operated Sch. Dist. v. Gillespie*, No. A-0391-11T2, 2014 WL 30328, at *1 (N.J. Super. Ct. App. Div. Jan. 6, 2014).

[4] On July 27, 2022, the District Court dismissed Defendants Hale, Christopher Cerf, Josephine C. Garcia, Joseph Biancamano, Esq. ("Biancamano"), Biancamano Di Stefano, LLC, Cannon Cochran Management Associates, David Russo, and Christine Farrington from this action pursuant to Rule 4(m). *See* D.E. 34.

provide Plaintiff with adequate medical care. *Id.* ¶¶ 19-21, 24. However, after the District hired dismissed-defendants Biancamano and Biancamano Di Stefano, LLC as counsel for its risk management department, Hale allegedly "forced the cancellation" of Plaintiff's remaining hand surgeries and unilaterally terminated her medical benefits in August 2000, purportedly in retaliation for Plaintiff reporting Hale's department for financial irregularities. *Id.* ¶¶ 22-23.

On or about September 22, 2000, Judge Fred Kumpf of the New Jersey Division of Workers' Compensation (the "Division") issued an order directing the District to restore Plaintiff's medical benefits. *Id.* ¶ 24. According to Plaintiff, after Judge Kumpf's "promotion" to state court in early 2001, Hale flouted the requirements of the consent orders by again terminating Plaintiff's temporary benefits and refusing to assign her to a light duty assignment. *Id.* ¶ 25. In late 2001, Plaintiff sought to compel the District's compliance with the consent orders and filed a complaint with the New Jersey Office of Administrative Law ("OAL") for the return of 42 sick days she allegedly used due to Hale's actions. *Id.* ¶¶ 27-28.[5]

B.    The Filing of Tenure Charges Against Plaintiff

Plaintiff alleges that, in retaliation for her pursuit of the workers' compensation case, Hale "directed the clerk for Home Instruction to mark [her] AWOL." *Id.* ¶ 29. Thereafter, on or about December 30, 2002, Hale and the District's newly-hired general counsel, Defendant Perry Lattiboudere, Esq. ("Lattiboudere"), with the assistance of Defendant Cherie L. Adams, Esq.

---

[5] In 2008, Plaintiff's workers' compensation matter was dismissed for lack of prosecution. *See Gillespie v. Newark Pub. Sch.*, No. A-5317-09T4, 2011 WL 2373505, at *1 (N.J. Super. Ct. App. Div. May 17, 2011). Plaintiff's later attempts to restore the matter were denied, including by the Superior Court of New Jersey, Appellate Division (the "Appellate Division"). *See, e.g.*, *id.* at *3, 5 (dismissing, in part, Plaintiff's appeal of a December 2008 order dismissing her workers' compensation matter for lack of prosecution and remanding it to the Division for further consideration of her motion to reinstate).

("Adams"),[6] initiated an action before the OAL to remove Plaintiff from her tenured position. *Id.* ¶ 31. According to the District's complaint in that action, the tenure charges were brought against Plaintiff pursuant to the New Jersey Tenure Employees Hearing Law (the "Tenure Law"), N.J.S.A. §§ 18A:6-1 to -18, for allegedly being "absent without leave, abandon[ing] her position, and/or [being] incapacitated." *Gillespie*, 441 F. App'x at 892. Plaintiff contended the charges were based on fraudulent attendance documents. D.E. 1-1, Compl. ¶ 31; *see also id.* ¶¶ 48-49, 54-55, 57-58 (alleging that the State Commissioner of Education (the "Commissioner") and District Superintendent allowed Hale, Lattiboudere, and Adams to conspire and retaliate against Plaintiff and to forge Plaintiff's attendance documents that formed the basis for the charges).[7] The District certified the charges to the Commissioner, who then referred them to the OAL for a hearing. *Gillespie*, 441 F. App'x at 892, 894 n. 8.

C.    Plaintiff's First Rulemaking Petition

In April 2006, Plaintiff filed a petition for rulemaking to amend Section 6A:3-5.1 of the New Jersey Administrative Code (the "Tenure Rule" or "Rule"). D.E. 1-1, Compl. ¶ 59a; *see also Gillespie v. Dep't of Educ.*, 397 N.J. Super. 545, 548 (App. Div. 2008), *cert. denied*, 195 N.J. 420 (2008). Among other assertions, Plaintiff argued the Rule "illegally rewrote the mandatory fixed terms set in tenure laws" without due process of law and removed or reduced

---

[6] Adams is also counsel of record in this action on behalf of herself and the Newark Defendants.

[7] Plaintiff also alleges that Hale, Adams, and others purposefully delayed her legal proceedings and avoided compliance with the consent orders in retaliation for Plaintiff's actions. *See* D.E. 1-1, Compl. ¶¶ 32-38, 41, 45-49. Although not the subject of this Report and Recommendation, this Court notes that the United States Court of Appeals for the Third Circuit ("Third Circuit") has found "that the delayed and protracted handling of the tenure charges appear[ed] to be [Plaintiff's] own doing." *Gillespie*, 441 F. App'x at 892, 893, 894 n. 8 (stating that, even though the proceeding "was scheduled for a hearing on several occasions," it was placed on the inactive list pending the disposition of Plaintiff's workers' compensation matter—at Plaintiff's own request, and the District and Plaintiff had agreed to stay the tenure proceeding pending final resolution of the 2009 federal action filed by Plaintiff).

protections afforded by the Tenure Law. D.E. 1-1, Compl. ¶¶ 59a, 59b, 59e, 59j; *see also Gillespie*, 397 N.J. Super. at 548. The rulemaking petition was denied, D.E. 1-1, Compl. ¶¶ 59j, 59k, and Plaintiff appealed that denial to the Appellate Division. *See Gillespie*, 397 N.J. Super. at 547, 549.

On January 17, 2008, the Appellate Division affirmed the denial—rejecting, among other things, Plaintiff's contention that the Tenure Rule is *ultra vires* because the Tenure Law mandates that all probable cause determinations concerning tenure charges "be made by the local district board of education." *Id.* at 549, 550, 554, 558 (holding that an amendment to the Rule was unnecessary because the Tenure Law "has been superseded in part by statutes that authorize the State to operate certain school districts and empower the State district superintendent to make the probable cause determinations … in certain circumstances"). Moreover, contrary to Plaintiff's assertion that the Rule "denies due process to tenured employees in school districts placed under State intervention," the Appellate Division found that the Tenure Law requires such employees be "provided with notice and an opportunity to be heard before the probable cause determination is made," and, even when such determination is made, "the opportunity for a hearing before a final decision is made." *Id.* at 557-58. Finally, the Appellate Division held the Rule was adopted in accordance with the New Jersey Administrative Procedure Act. *Id.* at 555.

The Supreme Court of New Jersey denied Plaintiff's petition for certification of the Appellate Division's order. *See Gillespie v. Dep't of Educ.*, 195 N.J. 420 (2008).[8]

---

[8] Plaintiff's two later rulemaking petitions were also denied. *See* D.E. 1-1, Compl. ¶ 59l. The Appellate Division affirmed the dismissal in her only appeal. *See In re Petition for Rulemaking Pursuant to N.J.S.A. 52:14B-4*, No. A-0028-12T1, 2014 WL 1101762, at *1 (N.J. Super. Ct. App. Div. Mar. 20, 2014) (finding Plaintiff's arguments lacked "sufficient merit to warrant discussion in a written opinion").

D.    Plaintiff's Commencement of the First Federal Action

On February 26, 2009, Plaintiff filed a lawsuit in this District against Clifford Janey, Hale, Lattiboudere, Adams, and Ann Marie McGoldrick in their individual and official capacities, arising out of allegations similar to those in this action (the "First Federal Action"). *See* Civ. No. 09-885, D.E. 1, Compl. As its "Cause of Action," that complaint provides:

> The defendants['] breach of contract between Newark Public Schools and the Newark Teachers Union, as well as their violations of Plaintiff's substantive and procedural due process rights under the [Fourteenth] Amendment; violations of Plaintiff's [First] Amendment rights; violations of her rights under the A.D.A and A.D.E.A.; the denial of Plaintiff's legislatively promised statutory tenure rights as well as the discriminatory and disparate treatment Plaintiff has endured ….

*Id.* at 2. Under the section entitled "Demand," Plaintiff claimed that (i) she was "denied light duty assignment," (ii) "tenure charges [were] wrongfully filed," and (iii) she was "illegally suspended without pay since 2003." *Id.* The defendants moved to dismiss the complaint under Rule 12(b)(6), arguing that Plaintiff had not pled sufficient facts to support a plausible claim and that, in any event, the claims were time barred. *See* Civ. No. 09-885, D.E. 7.

Before the District Court issued a decision on the motion to dismiss, Plaintiff moved to amend her pleading to add twelve "claims for relief" and additional parties, including former State District Superintendent Marion Bolden ("Bolden"). *See* Civ. No. 09-885, D.E. 11-2. The proposed amended complaint set forth allegations concerning Plaintiff's workers' compensation matter and the tenure charges that are the subject of the claims in this action, including the allegation that the District made determinations to certify the tenure charges without due process, based on fraud, and the conspiracy alleged herein. *See generally id.*; *see also Gillespie v. Janey*, No. 09-00885, 2010 WL 777954, at *1 (D.N.J. Mar. 5, 2010), *aff'd*, 441 F. App'x 890 (3d Cir. 2011). The proposed claims, which were generally framed as violations of 42 U.S.C. § 1983

6

("Section 1983"), included due process, fraud, conspiracy, disparate treatment, discrimination, breach of contract, retaliation, and equal protection claims. *See generally* Civ. No. 09-885, D.E. 11-2; *see also Gillespie*, 441 F. App'x at 893 ("All counts in the proposed amended complaint are couched in terms of [Section] 1983 violations."); *Gillespie*, 2010 WL 777954, at *5-6.

    E.    <u>The District Court's March 5, 2010 Dismissal of the First Federal Action</u>

On March 5, 2010, while the tenure proceeding was pending, the District Court granted the defendants' motion to dismiss the complaint in the First Federal Action and denied Plaintiff's motion to amend that pleading as futile. *Gillespie*, 2010 WL 777954, at *7. First, relying upon the Appellate Division's January 17, 2008 decision on Plaintiff's first petition for rulemaking, the Court held the record showed that the defendants had "adhered to the statutes governing the administrative procedure [applicable to tenure charges]." *Id.* at *3 (citing *Gillespie*, 397 N.J. Super. at 550). The District Court further found that the administrative process had not been fully exhausted, as the Commissioner had not yet issued a final determination. *Id.* (explaining, in part, that "[i]n New Jersey, the statutory remedy for disputes under applicable school laws is administrative, rather than judicial," and stating that the Commissioner's final determinations may only be appealed to the Appellate Division) (citations omitted).

Second, with respect to the claims brought under the federal Americans with Disabilities Act ("ADA") and the Age Discrimination in Employment Act ("ADEA"), the District Court held that Plaintiff had likewise failed to exhaust her administrative remedies by not filing a charge with the Equal Employment Opportunity Commission ("EEOC"). *Id.* at 3-4. Third, the District Court dismissed Plaintiff's workers' compensation-related claims, holding it was "without jurisdiction" because the Division "has exclusive original jurisdiction of all [such] claims … and

appeals may be taken directly to the … Appellate Division." *Id.* at 4. Fourth, the District Court held that Plaintiff's Section 1983 claims were time barred and that Plaintiff had failed to plead a pattern or practice of intentional discrimination to toll the applicable two-year statute of limitations. *Id.* at 6 (finding that Plaintiff knew of the events that formed the basis of her Section 1983 claims in late 2002 and early 2003). Relatedly, the District Court dismissed Plaintiff's breach of contract claims as time barred by the applicable six-year statute of limitations period. *Id.* at 7 (noting Plaintiff conceded the alleged breach occurred on or about February 27, 2003).

Finally, the District Court denied Plaintiff's motion to amend to add fraud claims. The Court concluded that (i) allowing the amendment would be prejudicial given Plaintiff's failure to "provide sufficient facts in the original complaint to give notice of the claims of fraud to the individual [d]efendants," and (ii) the proposed claims asserted against any public entity would be futile for Plaintiff's "fail[ure] to file a notice of claim in accordance with the New Jersey Tort Claims Act." *Id.* at 5. Dissatisfied with the District Court's decision to dismiss the First Federal Action, Plaintiff filed an appeal with the Third Circuit. *See* Civ. No. 09-885, D.E. 24.

F.    Plaintiff's Failed Attempt to Dismiss the Tenure Charges in 2011

On January 12, 2011, Plaintiff moved to dismiss the charges, arguing the OAL lacked jurisdiction, and the District cross-moved for a summary decision. *See State-Operated Sch. Dist. v. Gillespie*, No. 3399-03, 2011 WL 1632096, at *2 (N.J. Office Admin. L. Apr. 27, 2011). OAL Administrative Law Judge Jeffrey Gerson ("ALJ Gerson") denied the parties' respective motions. *Id.* at *8. First, ALJ Gerson rejected Plaintiff's contention that the OAL was deprived of exercising jurisdiction based on the allegation that "the District engaged in both intrinsic and extrinsic fraud." *Id.* at *3 (reasoning that "evidence of fraud may be entertained to determine the

validity of the tenure charges and certainly the credibility of the witnesses accused of such fraudulent acts"). Second, he held that Plaintiff's arguments concerning the Rule had been foreclosed by both the Appellate Division as well as a Court from this District and that the parallel workers' compensation matter did not deprive the OAL of jurisdiction, because that matter presented "different legal issues." *Id.* at *3-4 (noting, however, Plaintiff was free to try to show "the tenure charges are frivolous and were filed in retaliation …"). Finally, ALJ Gerson concluded that genuine issues of material fact required an evidentiary hearing. *Id.* at *5-8.[9]

ALJ Gerson scheduled that hearing for June 20, 2011, at which Plaintiff failed to appear. *See In re Tenure Hearing of Christine Gillespie*, No. 67-2, 2016 WL 2593712, at *2 (N.J. Office Admin. L. Apr. 26, 2016). Plaintiff explained to the Commissioner that she had not received sufficient notice of the hearing and, in any event, had requested an adjournment. *See In re Tenure Hearing of Christine Gillespie*, No. 67-2, 2011 WL 5868004, at *1 (N.J. Office Admin. L. Aug. 3, 2011). The Commissioner thus remanded the matter back to the OAL, with a directive that the parties "establish a protocol for communications." *Id.* at *2 (concluding the record did not "support the severe result of summary disposition by default").

G.      The Third Circuit's August 16, 2011 Affirmance of the District Court's March 5, 2010 Dismissal of the First Federal Action

On August 16, 2011, the Third Circuit affirmed the District Court's March 5, 2010 dismissal of the First Federal Action. *See Gillespie*, 441 F. App'x 890. With respect to the tenure

---

[9] Plaintiff appealed ALJ Gerson's April 27, 2011 Order to the Appellate Division, which summarily affirmed it "essentially for the reasons stated by ALJ Gerson." *See Gillespie*, 2014 WL 30328, at *1 (finding the appeal "to be without merit and not warranting discussion in a written opinion").

claims presented as a substantive due process violation under Section 1983,[10] the Third Circuit foreclosed Plaintiff's "assertion[s] that [] Bolden acted without authority in finding that the tenure charges were supported by probable cause and in certifying the charges to the [] Commissioner" and "that the tenure charges should have been certified by the local school board of education, rather than [] Bolden." *Id.* at 893 (deeming those claims "unsustainable").

As a threshold matter, the Third Circuit agreed with the District Court that "the statute of limitations on any substantive due process claims arising out of Bolden's actions in early 2003 expired well before this action was brought in 2009." *Id.* (citation omitted). Moreover, the Third Circuit concluded that Plaintiff's challenge to Bolden's authority was barred "by her unsuccessful attempt to amend the administrative regulation that explicitly authorized [] Bolden's actions." *Id.* at 893-94 (citing *Gillespie*, 397 N.J. Super. at 550-58) (noting that the Appellate Division had already rejected Plaintiff's legal contentions).[11] The Third Circuit further held that even if the tenure claims could be construed as procedural due process claims, dismissal was appropriate because the tenure proceeding was still pending. *Id.* at 894 (citation omitted).[12]

With respect to the remaining claims for fraud, retaliation, discrimination, and breach of contract, the Third Circuit held they were time barred. *See id.* at 894-96 (finding the continuing violation exception was inapplicable due to Plaintiff's failure to allege "a pattern or practice of intentional discrimination") (citation omitted). Finally, the Third Circuit sustained the District

___

[10] The Third Circuit deemed arguments concerning Plaintiff's tenure claims premised under the ADA and ADEA as waived for failure to properly raise them. *See Gillespie*, 441 F. App'x at 893 n. 7.

[11] The Third Circuit deemed as frivolous Plaintiff's argument that the District Court erred in considering the Appellate Division's decision as a basis for dismissal. *Gillespie*, 441 F. App'x at 896 n. 11. It also found no merit in Plaintiff's claim that the District Court was biased. *Id.* at 896 n. 12.

[12] The Third Circuit noted that Plaintiff's assertion that "there was some impropriety" in the filing and certification of charges should be presented to the OAL. *Gillespie*, 441 F. App'x at 892 n. 3.

Court's denial of Plaintiff's application for leave to amend the complaint. *Id.* at 896 (noting that, despite Plaintiff failing to amend as a matter of course, the District Court nevertheless "assessed the claims presented in the proposed amended complaint and found them to be without arguable merit, concluding that they 'would not survive a motion to dismiss'") (citation omitted).

H.   <u>Plaintiff's August 27, 2012 Motion to Vacate the District Court's March 5, 2010 Dismissal of the First Federal Action</u>

On August 27, 2012, more than a year after the Third Circuit affirmed the District Court's March 5, 2010 Order dismissing the First Federal Action, Plaintiff moved to vacate that Order pursuant to Rules 60(b) and 60(b)(4). *See* Civ. No. 09-885, D.E. 27. Plaintiff argued such relief was warranted because, in dismissing the action, "the District Court relied on certain documents submitted to the Workers' Compensation Court which were fraudulent." *Gillespie v. Janey*, 527 F. App'x 120, 122 (3d Cir. 2013) (citation omitted). On October 18, 2012, after a hearing, the District Court denied the motion to vacate. *See id.*, D.E. 34. In denying the motion, the presiding District Judge stated, in relevant part:

> … I've read the submissions before the Court. The motion to reopen the matter is denied. What's more troubling to me, quite frankly, is how dangerously close you've come, Mr. Gillespie,[13] to filing a frivolous action. And I'm going to state on the record today that should you file another matter as it related to the action that was pending before this Court and ultimately dismissed, that I will permit Mr. Stern, on behalf of his client and his firm, to move for fees and costs and expenses related to responding to what clearly is a frivolous matter. I mean, this is an action that was decided by the Court in March of 2010. It went up on appeal. It was affirmed on appeal. Nothing you have brought before the Court would even give any inkling as to something being overlooked or something new being discovered. There's finality to the action. … Nothing in this matter warrants the Court's further attention. It is a waste of the Court's time. It's a waste of defense counsel's time. The next time it is filed, fees will be imposed along with costs. …

---

[13] Plaintiff's spouse served as counsel for Plaintiff in the First Federal Action. *See* Civ. No. 09-885.

*See id.*, D.E. 37, Tr. at 14:7 - 15:2. Notwithstanding the District Court's warnings, Plaintiff proceeded to appeal the denial of the motion to vacate to the Third Circuit. *See id.*, D.E. 36.

On June 7, 2013, the Third Circuit issued an Opinion summarily affirming the District Court's October 18, 2012 denial. *See Gillespie*, 527 F. App'x at 121. In rejecting Plaintiff's contention that judgment should be vacated because the defendants allegedly committed fraud on the court, the Third Circuit held that Plaintiff cannot meet "the demanding standard of proof required to demonstrate [such] fraud … [because] the allegedly fraudulent documents had no bearing on the propriety of the District Court's ruling." *Id.* at 122 (citation omitted). The Third Circuit also foreclosed Plaintiff's argument that the District Court's judgment "had been voided by certain decisions of the Appellate Division …." *Id.* (stating "there is no merit to [Plaintiff's] assertion that the 'legal and factual landscape' … has changed" because "the majority of her claims remain time-barred," and "many of her contentions are the same arguments which were rejected when her complaint was dismissed"). Finally, the Third Circuit noted that the District Court's admonishment, "as well as [the defendants'] motion [for summary action] and its attendant possible sanctions, should serve as sufficient warning to [Plaintiff] as to the potential consequences of similar filings in the future …." *Id.* at 123.

I.    The Final Determination on the Tenure Charges

The OAL scheduled a final hearing for November 4, 2015. *In re Gillespie*, 2016 WL 2593712, at *2. Plaintiff did not appear. *Id.* Nonetheless, on December 17, 2015, the acting Commissioner again remanded the case back to the OAL for a hearing on the merits. *Id.* at 3.

Accordingly, the OAL scheduled another hearing for March 1, 2016, at which Plaintiff again failed to appear. *Id.* The hearing proceeded without Plaintiff, and the District presented its

case. *Id.* at *3, 8. After the hearing, ALJ Gerson adopted the District's proposed factual findings as uncontested. *See id.* at *3, 8 (concluding that applicable law entitled him to deem facts as "unrefuted" and noting that Plaintiff "ha[d] failed to appear … on multiple occasions, despite having been provided notice of the hearing date at the address she supplied to the Department of Education"). On or about April 26, 2016, ALJ Gerson issued the OAL's initial decision on the tenure charges, thereby recommending Plaintiff's dismissal from her tenured teaching position, and filed the decision with the Commissioner for a final determination. *See* D.E. 1-1, Compl. ¶¶ 59l, 59m, 84; *see also Gillespie*, 2016 WL 2593712, at *11. ALJ Gerson held that the District proved the tenure charges. *Gillespie*, 2016 WL 2593712, at *8.

While conceding she received a copy of ALJ Gerson's April 26, 2016 decision on or about May 6, 2016, Plaintiff alleges that the March 1, 2016 hearing did not occur and that, even if it did, she did not receive notice of the hearing. *See* D.E. 1-1, Compl. ¶¶ 59l, 59m, 66, 84, 90. Plaintiff attempted to file "exceptions" to ALJ Gerson's decision, but the Commissioner refused to consider them. *See In re Tenure Hearing of Christine Gillespie*, No. 67-2, 2016 WL 11501816, at *3 n. 1 (N.J. Office Admin. L. June 9, 2016). Thereafter, on or about June 9, 2016, the Commissioner issued a final determination adopting ALJ Gerson's April 26, 2016 decision and effectively dismissing Plaintiff from her tenured teaching position. *Id.* at *2-3.

Plaintiff then appealed those decisions to the Appellate Division. *See* D.E. 43-3 at 30, *In re Tenure Hearing of Christine Gillespie*, No. A-004364-15 (N.J. Super. Ct. App. Div. Jan. 2, 2018); D.E. 45-2 at 4, *In re Tenure Hearing of Christine Gillespie*, No. A-004369-15 (N.J. Super. Ct. App. Div. Jan. 2, 2018). After the consolidation of those appeals, D.E. 45-2 at 2, the initial appeal to the Appellate Division was dismissed on or about January 2, 2018. *See id.*

13

Thereafter, on or about June 5, 2018, Plaintiff filed another appeal challenging her dismissal with the Appellate Division. *See* App. at 1-14 (N.J. Super. Ct. App. Div. No. A-003950-17).[14] In that appeal, Plaintiff argued that ALJ Gerson's decision is void *ab initio* because it was based on fraudulent documents, a hearing that never occurred, and hearsay testimony from a witness who did not attend the hearing. *See id.* On August 21, 2018, the Appellate Division dismissed Plaintiff's appeal with prejudice. *See id.* at 15.

Thereafter, Plaintiff filed a petition for certification of the Appellate Division's August 21, 2018 dismissal order with the Supreme Court of New Jersey. *See* App. at 16-45. In support of that petition, Plaintiff reiterated arguments she presented to the Appellate Division, including that she received information from a "clerk" familiar with the history of her matters, who alleged that (i) no hearing took place on March 1, 2016 before ALJ Gerson, (ii) Adams engaged in *ex parte* communications with ALJ Gerson, and (iii) certain Defendants colluded against her. *See id.; see also* D.E. 1-1, Compl. ¶¶ 59m, 60. On August 1, 2019, the Supreme Court of New Jersey denied Plaintiff's motion for leave to file the certification petition and dismissed the petition in its entirety. *See* App. at 46; *see also In re Gillespie*, 239 N.J. 17 (2019).

---

[14] Documents concerning Plaintiff's final appeal of the tenure determination to the Appellate Division or other lawsuits pertaining to her claims in this action, which are undisputably matters of public record integral to the Complaint, were not submitted to the Court. For a complete record, and to assist the District Court in resolving certain preclusion arguments, this Court has obtained some of these documents for review and consideration from the New Jersey Superior Court ("Superior Court"), the Appellate Division, and the Supreme Court of New Jersey. *See* App. at 1-77.

J.    This Action

Plaintiff commenced this action on October 18, 2021. *See* D.E. 1. In her allegations,

which are summarized above, Plaintiff purports to state a myriad of "claims" under federal and

state laws. *See generally* D.E. 1, 1-1 & 4.[15]

- Contract-Related Claims: Claims for alleged violations of the Contract Clause of the United States Constitution, based on the allegations that Defendants (i) substantially impaired and materially breached Plaintiff's tenure rights conferred by the applicable collective bargaining agreements ("CBAs") through the promulgation and application of the Tenure Rule, and (ii) tortiously interfered with those CBAs. *See* D.E. 1-1, Compl. ¶¶ 99-147; D.E. 1-1, at pp. 171-74;[16]

- Fraud Claims: Fraud claims related to the allegedly falsified tenure charges and illegal tenure proceeding under 42 U.S.C. § 1986 ("Section 1986"),[17] 28 U.S.C. § 1291, and 18 U.S.C. §§ 1341, 1343 ("Sections 1341 and 1343"). *See* D.E. 1-1, Compl. ¶¶ 148-150c, 320-22, 433-69, 495; D.E. 1-1, at pp. 164-70;[18]

- Conspiracy Claims: Conspiracy claims related to the allegedly falsified tenure charges and illegal tenure proceeding under Section 1983, 42 U.S.C. § 1985 ("Section 1985"), and 8 U.S.C. § 241. *See* D.E. 1-1, Compl. ¶¶ 151-75f, 193-319, 337-41; *see also* D.E. 4 at pp. 4-25;

---

[15] On March 2, 2022, over four months after the Complaint in this action was filed, but before any defendant appeared, Plaintiff filed a document containing "two additional claims to be included in [her] complaint." *See* D.E. 4. Under Rule 15(a)(1)(B), "if the pleading is one to which a responsive pleading is required," then "[a] party may amend its pleading once as a matter of course no later than … 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Because the Complaint "is one to which a responsive pleading is required" and such responsive pleading or motion had not yet been filed, this Court will accept these "two additional claims" as a supplement to, and consider them part of, the Complaint filed by Plaintiff on October 18, 2021.

[16] These claims may also be properly construed as a claim for breach of the applicable CBAs, which may only be properly brought as a claim under Section 301 of the federal Labor Management Relations Act ("LMRA"). *See Snyder v. Dietz & Watson, Inc.*, 837 F. Supp. 2d 428, 441 (D.N.J. 2011) ("Because the breach of contract claim alleges a violation of a provision in the CBA, the claim must be brought under [Section] 301.").

[17] Under Section 1986, Plaintiff alleges the District failed to prevent the conspiracy and fraud that denied her of her tenure rights under the Tenure Law. *See* D.E. 1-1, Compl. ¶¶ 148-150c.

[18] Under Sections 1341 and 1343, Plaintiff alleges that Defendants committed mail and wire fraud for making false statements to the OAL, engaging in *ex parte* conduct during the tenure proceeding and hearing, and issuing a fraudulent decision. *See* D.E. 1-1, Compl. ¶¶ 466-69.

- ▪ <u>Discrimination Claims</u>: Section 1983 discrimination claims based on Defendants' alleged failure "to follow non-discrimination laws" and provide Plaintiff with a reasonable accommodation (*i.e.*, a light duty assignment) following her work-related injury under the New Jersey Law Against Discrimination ("NJLAD"), the ADA, the ADEA, and the federal Rehabilitation Act. *See* D.E. 1-1, Compl. at pp. 83 & ¶¶ 333-36, 374-77, 398-408, 443-44;

- ▪ <u>Fourteenth Amendment Claims</u>: Section 1983 claims for alleged violations of Plaintiff's due process and equal protection rights based on Defendants' alleged (i) outrageous conduct, (ii) failure to provide her with a fair and impartial tenure hearing in violation of the Tenure Law, and (iii) publication of purportedly fraudulent orders. *See* D.E. 1-1, Compl. at pp. 143-46, 175-93 & ¶¶ 378-97, 409-14, 418-32, 470-95; *see also* D.E. 4 at pp. 26-68;

- ▪ <u>First Amendment Retaliation Claim</u>: Section 1983 claim for an alleged violation of Plaintiff's rights to freedom of speech based on Defendants' alleged retaliatory discharge of Plaintiff. *See* D.E. 1-1, Compl. ¶¶ 415-42;

- ▪ <u>Other Workers' Compensation-Related Claims</u>: Section 1983 claims for (i) withholding Plaintiff's workers' compensation benefits and (ii) failure to supervise and train the District's risk management and legal departments in relation to Plaintiff's workers' compensation matter and the tenure proceeding. *See* D.E. 1-1, Compl. ¶¶ 176-201, 342-73;

- ▪ <u>Unfair Labor Practice Claim</u>: Claim brought under 29 U.S.C. § 158, for refusing to execute the terms of the CBA. *See* D.E. 1-1, Compl. ¶¶ 323-32.[19]

---

[19] The Complaint and its March 2, 2022 supplement consist of approximately 270 pages of dense, repetitive, and often incoherent allegations. This Court finds that the Complaint is anything but "simple, concise, and direct." Fed. R. Civ. Pro. 8(d)(1); *see also id.* at 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"); *Binsack v. Lackawanna Cnty. Prison*, 438 F. App'x 158, 160 (3d Cir. 2011) ("Rules 8(a) and 8(d)(1) 'underscore the emphasis placed on clarity and brevity by the federal pleading rules'") (citation omitted). At times, the Complaint also fails to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b); *see also Hamza v. United Cont'l Holdings, LLC*, No. 19-8971, 2019 WL 13398621, at *1 (D.N.J. Dec. 30, 2019) (Salas, J.) ("The purpose of Rule 10 is to create clarity in pleadings, which allows a defendant and the Court to determine whether there are sufficient facts to support a claim entitling a plaintiff to relief.") (cleaned up). Despite the excessively voluminous and unfocused nature of the Complaint, considering Plaintiff's *pro se* status, this Court construes its claims "so as to do justice." Fed. R. Civ. P. 8(e).

At Plaintiff's request, the Court has stayed this action on two different occasions: first for approximately months, beginning on August 2, 2022, and ending around October 14, 2022, and again on May 19, 2023, until July 3, 2023, to enable Plaintiff to obtain counsel. *See* D.E. 36, 39, 41, 58, 60, 63. The Court denied Plaintiff's July 11, 2023 application for an extension of the stay to afford her additional time to obtain counsel and advised that she may secure legal counsel and have such counsel appear in this action at any point during the pendency of this litigation. *See* D.E. 63. To date, no attorney has appeared. Thus, this Court addresses the pending motions.

## II.    MOTIONS TO DISMISS

Defendants' motions to dismiss implicate various provisions of Rule 12, including Rules 12(b)(1) and 12(b)(6), which impose different standards and burdens on the parties. As an initial matter, while a plaintiff has the burden of proving that the Court has subject matter jurisdiction, "[w]hen presenting a Rule 12(b)(6) motion, the defendant bears the burden to show that the plaintiff has not stated a claim." *Davis*, 824 F.3d at 349 (citation omitted).

Rules 12(b)(1) and 12(b)(6) also incorporate different standards of review. *See id.* at 348-49 (stating that "Rule 12(b)(6) provides greater procedural safeguards for plaintiffs"). Rule 12(b)(1) requires dismissal if the Court lacks subject matter jurisdiction over a claim. Fed. R. Civ. P. 12(b)(1). On the other hand, under Rule 12(b)(6), a complaint may be dismissed, in whole or in part, for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In view of the federal pleading standard, which requires a complaint to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), a Rule 12(b)(6) motion turns on whether the complaint "contain[s] sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Finally, "[t]he two rules [] treat the complaint's factual allegations very differently." *Davis*, 824 F.3d at 349. While under Rule 12(b)(1), a defendant may attack factual allegations "and submit contrary evidence in its effort to show that the court lacks jurisdiction," it may not contest factual allegations under Rule 12(b)(6). *Id.* (citation omitted).

A.    The State Defendants' Rule 12(b)(1) Motion to Dismiss

As a threshold matter, the State Defendants assert this Court lacks subject matter jurisdiction over the Complaint pursuant to the *Rooker-Feldman* doctrine. *See* D.E. 45-1, State Defs.' Moving Br. at 11-16 (arguing Plaintiff seeks reversal of state court rulings).[20] However, even in the absence of such a dispute, the Court has "an independent obligation to satisfy [itself] of jurisdiction …." *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 76-77 (3d Cir. 2003).

Accordingly, before addressing the merits of the State Defendants' Rule 12(b)(1) motion, this Court notes that it appears the District Court lacks jurisdiction over claims premised on Plaintiff's allegation that Defendants wrongfully withheld her workers' compensation benefits. Indeed, in the First Federal Action, a Court from this District dismissed "any workers' compensation claims" asserted by Plaintiff, holding it was "without jurisdiction" because "the Division of Workers' Compensation has exclusive original jurisdiction of all claims for workers' compensation benefits and appeals may be taken directly to the [Appellate Division]." *Gillespie*, 2010 WL 777954, at *4 (Wigenton, J.) (citing N.J.S.A. §§ 34:15-49, 34:15-66; *see also* N.J.S.A.

---

[20] The State Defendants also argue the Court lacks subject matter jurisdiction because Plaintiff's claims are barred under preclusion theories. *See* State Defs.' Moving Br. at 10, 17-19. Because preclusion does not implicate the Court's subject matter jurisdiction, *Vuyanich v. Smithton Borough*, 5 F.4th 379, 385, 389 (3d Cir. 2021), the State Defendants' preclusion arguments are addressed under Rule 12(b)(6).

§ 34:15-66 (stating, among other things, that the judgment entered by the Appellate Division on an appeal from a judgment of a workers' compensation judge "shall be conclusive and binding" and that nothing in that provision "limit[s] the jurisdiction of the Supreme Court [of New Jersey]").

This Court concurs with that holding to the extent Plaintiff (i) asserts traditional workers' compensation claims, (ii) demands redress for violations of the New Jersey Workers' Compensation Act (the "NJWCA"), or (iii) seeks reversal of any judgment of a workers' compensation judge. *See Pue v. N.J. Dep't of Lab.*, No. 23-855, 2024 WL 1975387, at *4-5 (D.N.J. May 3, 2024) (Kirsch, J.) (holding the Court "lacked jurisdiction to hear appeals of workers' compensation claims"); *Bello v. United Pan Am Fin. Corp.*, No. 19-9118, 2023 WL 5447285, at *5 (D.N.J. Aug. 24, 2023) (Skahill, J.) (denying motion to amend to add a claim for violations of the Act because the claim is barred by that Act); *Dillon v. Liberty Mut. Ins. Co.*, No. 10-5853, 2011 WL 3163252, at *4 n.2 (D.N.J. July 25, 2011) (Chesler, J.) ("Review of final decisions of the Division jurisdictionally is assigned to the Appellate Division ….") (citations omitted); *see also Calix v. A2Z Universal*, No. 15-3169, 2018 WL 1003270, at *3 (D.N.J. Feb. 21, 2018) (Sheridan, J.) (applying *Burford* abstention and staying action pending final administrative resolution of a compensation claim); *Pederson v. Powell-Duffryn Terminals, Inc.*, 34 F. Supp. 2d 915, 921 (D.N.J. 1999) (Walls, J.) ("This Court does not have jurisdiction to compel payments of workers' compensation benefits to plaintiff."). Therefore, this Court **RECOMMENDS** the dismissal of all claims seeking relief that is traditionally under the jurisdiction of the Division of Workers' Compensation and the Appellate Division.

Next, this Court turns to the State Defendants' contention that *Rooker-Feldman* mandates dismissal of the Complaint. This doctrine dictates that federal district courts may not "rely[] on their original jurisdiction to engage in appellate review of state-court orders." *Merritts v. Richards*, 62 F.4th 764, 774 (3d Cir. 2023) (citations omitted). "The doctrine's namesake cases"—*Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *D.C. Ct. App. v. Feldman*, 460 U.S. 462 (1983)—"supply four conditions, which, when all satisfied, require the dismissal of a claim for lack of jurisdiction." *Id.* (citations omitted). Although they "may be evaluated in any sequence," courts often analyze the necessary conditions for dismissal in the following order: (i) "[t]he federal plaintiff must lose in a state-court judicial proceeding"; (ii) "[t]he state-court judgment or decree must be rendered before the federal action was filed"; (iii) "[t]he federal plaintiff must invite the review and rejection of the state-court judgment"; and (iv) "[t]he federal plaintiff must complain of injuries caused by the state-court judgment." *Id.* (citations omitted).

Notably, however, there is a critical distinction between assessing for jurisdiction under *Rooker-Feldman* and determining whether state preclusion principles bar a plaintiff from asserting a claim. "Because for a long time lower courts construed *Rooker-Feldman* 'to extend far beyond the contours of the *Rooker* and *Feldman* cases,' … the Supreme Court [of the United States] has 'confined' the doctrine's operation to 'narrow ground.'" *Tobia*, 2020 WL 7334209, at *4 (D.N.J. Dec. 14, 2020) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283-84 (2005)); *see also Vuyanich*, 5 F.4th at 384 (explaining that the Supreme Court "made clear *Rooker-Feldman* does not defeat jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court or even presents a claim that 'denies a legal conclusion' a state court has reached.") (cleaned up) (internal citations omitted).

20

If the federal plaintiff presents some independent claim that purports to deny "a legal conclusion that a state court has reached in a case to which he [or she] was a party," then (i) the court has subject matter jurisdiction over the action, (ii) preclusion principles apply (rather than *Rooker-Feldman*), with "state law determine[ing] whether the defendant prevails under principles of preclusion." *Burrell v. Staff*, 60 F.4th 25, 33 (3d Cir. 2023) (holding that *Rooker-Feldman* did "not thwart federal jurisdiction" where the claims at issue—despite potentially "deny[ing] conclusions reached by the state court"—did "not require review and rejection of the orders in which those conclusions were reached") (citation and internal quotation marks omitted), *cert. denied sub nom. by Lackawanna Recycling Ctr., Inc. v. Burrell*, 143 S. Ct. 2662 (2023).

First, for the Court to dismiss the Complaint for lack of subject matter jurisdiction under *Rooker-Feldman*, Plaintiff must have been a party in the state judicial proceeding where she "received an adverse ruling." *Merritts*, 62 F.4th at 774 (citations omitted). To that end, the State Defendants argue that Plaintiff was a party and lost in each of the relevant underlying state judicial proceedings involving her challenge to the Tenure Rule, the OAL's jurisdiction over the tenure charges, and the ultimate dismissal from her tenured position. *See* State Defs.' Moving Br. at 13-14 (citing *Gillespie*, 397 N.J. Super. 545 (Appellate Division affirming denial of Plaintiff's first rulemaking petition and challenge to the Tenure Rule); *Gillespie*, 2014 WL 30328, at *1 (Appellate Division summarily affirming ALJ Gerson's April 27, 2011 decision that the OAL had jurisdiction over the tenure charges); D.E. 43-3 at 30, D.E. 45-2 at 4 & App. at 15 (Appellate Division dismissing Plaintiff's appeals of the final determination upholding the tenure charges); *In re Gillespie*, 239 N.J. 17 (Supreme Court of New Jersey denying Plaintiff's motion for leave to file a certification petition)). As Plaintiff unquestionably received adverse rulings in each of

these state court proceedings as a party-participant, the State Defendants have shown that the first *Rooker-Feldman* condition is satisfied.

To satisfy the second condition, this action must have been "filed after the [relevant] state-court judgment or decree was rendered." *Merritts*, 62 F.4th at 776 (citations omitted). In the Third Circuit, the judgment must be "effectively final," meaning "(i) the highest state court has issued a terminal ruling …; (ii) a lower state court has issued a ruling for which the time to appeal has expired, or the parties have voluntarily terminated the case … ; or (iii) all questions of federal law have been resolved by the highest state court, notwithstanding any surviving state law or factual issues." *Id.* at 776, 776 n. 8 (citations omitted). Here, each of the relevant state court judgments were issued or upheld before Plaintiff filed this lawsuit. Therefore, the second *Rooker-Feldman* condition is likewise satisfied.

The third and fourth prongs involve overlapping analyses. For a claim to "invite review and rejection of a state-court ruling," it must seek (i) a determination about whether the state court "'reached its result in accordance with law,'" or (ii) "'to have the state-court decisions undone or declared null and void.'" *Merritts*, 62 F.4th at 777 (citations omitted). This prong is not satisfied, however, when "the federal plaintiff presents some independent claim" that "litigate[s] previously litigated matters," "even if that claim denies a legal conclusion reached by the state court." *Vuyanich*, 5 F.4th at 387 (citations and internal quotation marks omitted). Merely calling a state court order invalid is "insufficient, on its own." *Id.* (finding that instead of "contending that [the] state court erred in issuing its order," the complaint alleged "'that people involved in the decision violated some independent right'") (citations omitted). Rather, "[p]rohibited appellate review consists of a review of the proceedings already conducted by the

22

lower tribunal to determine whether it reached its result in accordance with law." *Tobia*, 2020 WL 7334209, at *8 (citations and internal quotation marks omitted).

Relatedly, "[t]he final condition for *Rooker-Feldman* dismissal is that a federal plaintiff must complain of a legal injury caused by the state-court ruling," *Merritts*, 62 F.4th at 778 (citations omitted). This requires "an inquiry into the source of the … injury." *Vuyanich*, 5 F.4th at 385 (citation omitted). The injury must be "'produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it.'" *Id.* (holding that the alleged injuries were caused by the defendants and that, at best, the state court "acquiesced in" or "ratified" the defendants' actions) (citation omitted); *Tobia*, 2020 WL 7334209, at *5 ("What matters is whether the injuries alleged in the federal suit are 'inextricably intertwined' with the judgment in the state suit.") (citations omitted). If a defendant's actions, and not the state court judgment, produced the source of the plaintiff's injury, "the federal suit is independent, even if it asks the federal court to deny a legal conclusion reached by the state court." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 167 (3d Cir. 2010) (stating that "[a] useful guidepost is the timing of the injury, that is, whether the injury complained of in federal court existed prior to the state-court proceedings and thus could not have been 'caused by' those proceedings.").

The State Defendants argue two reasons the third condition is satisfied. *See* State Defs.' Moving Br. at 16. First, they argue Plaintiff's assertions that the State Defendants engaged in unlawful conduct "contradict all of the findings of the numerous state court determinations." *Id.* Second, in a rather conclusory fashion, they assert that the Complaint "fails to raise a legally sufficient independent claim that would result in a ruling other than one that overturns these decisions." *Id.*

With respect to the fourth prong, they contend that the source of Plaintiff's alleged injury "stem[s] from the decision removing her from her tenured position, and all subsequent decisions affirming that removal," which according to the State Defendants, "arise directly from the state courts' judgments." *Id.* at 15 (curiously conceding that Plaintiff's claims all "allege violations based on the State Defendants' inability to pass regulations and statutes related to the process of her removal, as well as the removal itself.").

This Court disagrees with the State Defendants on both fronts and finds *Tobia* instructive. In *Tobia*, a Court from this District applied the *Rooker-Feldman* conditions to a similar fact pattern. In that case, the plaintiff alleged that the defendants, including the Lakewood Board of Education, "brought baseless tenure charges against her because she voiced concerns over what she believed to be illegal conduct." *Tobia*, 2020 WL 7334209, at *1. Based on that allegation and others, the plaintiff asserted, among other things, retaliation claims under the First Amendment and the New Jersey Conscience Employee Protection Act, disparate treatment claims under federal and state law, and due process claims for the alleged pretextual nature of the state-level proceedings. *See id.* In defending the *Rooker-Feldman* challenge, the plaintiff argued her injuries arose from the defendants' "retaliatory decision to file tenure charges," rather than the subsequent state court judgment affirming the final decision to uphold the charges. *Id.* at *1, 5.

Like in *Tobia*, Plaintiff here does not expressly seek reversal of any state court judgment or an order that "undo[es] or declare[s] null and void the state court's decision based on an error contained therein." *Id.* at *8 (stating that "review and rejection" entails "the plaintiff ask[ing] the federal court" for such relief) (citations and internal quotation marks omitted). The *Tobia* court reached its conclusion despite noting the possibility that the plaintiff sought "an end-run around

24

her termination." *Id.* at *9. Undoubtedly, here, the allegations stated in the Complaint touch and concern the same subject matter of prior lawsuits filed in state court, including her assertion that Defendants injured her through, in part or in whole, the promulgation of the allegedly *ultra vires* Tenure Rule or the OAL adjudicating the tenure charges despite purportedly lacking jurisdiction to do so. Certainly, those issues were decided and foreclosed by the Appellate Division. *See Gillespie*, 2014 WL 30328, at *1; *Gillespie*, 397 N.J. Super. at 547, 558. However, this Court finds that, as alleged, the Complaint does not demand an order reversing those state court decisions. Like in *Tobia*, for the most part, Plaintiff purports to state civil rights claims under federal law, including Section 1983, to vindicate independent rights, such as due process, equal protection, and free speech—rights that exist independent of state law or those state-court judgments. *See Tobia*, 2020 WL 7334209, at *9.

Nonetheless, even if the third condition were satisfied, *Rooker-Feldman* would not bar the District Court from exercising subject matter jurisdiction over the action, because Plaintiff does not claim that the state court decisions identified by the State Defendants caused her alleged injuries. Rather, Plaintiff alleges that Defendants' actions—*i.e.*, the filing and certification of tenure charges, denial of her rulemaking petition, conduct of the tenure proceeding, and upholding of the charges—were the source of her injuries. This Court finds *Tobia*'s analysis on this prong persuasive. With respect to the retaliation and disparate treatment claims, that Court reasoned that the plaintiff "challenge[d] the constitutionality of [the] [d]efendants' conduct, which merely resulted in the adverse state court judgment, not the validity of the judgment itself." *Id.* at *5. Similarly, on the due process claim, that Court found the alleged injuries traced back to the defendants' conduct because the plaintiff claimed she was charged and discharged

"for improper reasons." *Id.* at *6-7. Like in *Tobia*, Plaintiff has "allege[d] an independent injury" that occurred before the relevant state court proceedings, and the Complaint does "not allege harm produced by the state courts' intentions, reasoning, procedures, or similar." *Id.* at *6-7. At most, the relevant state court decisions merely "ratified, acquiesced in, or left [Defendants' actions] unpunished." *Vuyanich*, 5 F.4th at 385 (citation omitted). Accordingly, as the final condition is not satisfied, *Rooker-Feldman* is not a bar to the District Court's subject matter jurisdiction.

In sum, this Court concludes that the District Court has subject matter jurisdiction over the Complaint, except for any purported workers' compensation claim asserted therein, and therefore **RECOMMENDS** the District Court deny in part the Defendants' motion under Rule 12(b)(1), and grant in part that motion, only concerning the workers' compensation claims.

B.    Defendants' Rule 12(b)(6) Motions to Dismiss

Defendants seek Rule 12(b)(6) dismissal on several grounds. First, they argue the Complaint is barred under applicable statutes of limitations. *See* D.E. 43-1, Newark Defs.' Moving Br. at 7-10; State Defs.' Moving Br. at 21-22. Second, they assert that Plaintiff's claims are precluded. *See* Newark Defs.' Moving Br. at 10-14; State Defs.' Moving Br. at 17-19. Finally, the State Defendants contend that certain claims are deficiently pled. *See* State Defs.' Moving Br. at 19-21. Although this Court will address each of these arguments, efficiency requires a preliminary review of certain of Plaintiff's "claims" under Rule 12(b)(6).

As previously noted, to survive a Rule 12(b)(6) motion to dismiss, "a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Doe v. Princeton Univ.*, 30 F.4th 335, 341-42 (3d Cir. 2022) (quoting Fed. R. Civ. P. 8(a)(2));

*see also Twombly*, 550 U.S. at 555 (stating that the purpose of Rule 8(a)(2) is to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests") (citation and quotation marks omitted). In other words, the Complaint must allege sufficient facts that, if true, state a facially plausible claim for relief and allow the factfinder to "'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Doe*, 30 F.4th at 342 (quoting *Twombly*, 550 U.S. at 557, and citing *Iqbal*, 556 U.S. at 678). Applying the Rule 12(b)(6) standard, the Court must accept the "factual allegations as true and consider those facts in the light most favorable to [the plaintiff]," but it need not accept "legal conclusions and recitals of the elements of a cause of action supported by mere conclusory statements." *Id.* (citations and internal quotation marks omitted); *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012) (requiring district courts to "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements").[21] This standard applies with equal force to *pro se* complaints, such as the one subject to dismissal in this action. *Mala v. Crown Bay*

---

[21] In that vein, in deciding a Rule 12(b)(6) motion, federal district courts "'may not consider matters extraneous to the pleadings.'" *Doe*, 30 F.4th at 342 (citation omitted). However, the Court may consider and factor into its analysis the following matters: (i) the well-pleaded facts of the Complaint; (ii) exhibits attached thereto; (iii) matters of public record; and (iv) documents "integral to or explicitly relied upon in the [C]omplaint." *Id.* (citation omitted); *see also Levins v. Healthcare Revenue Recovery Grp. LLC*, 902 F.3d 274, 279-80 (3d Cir. 2018) (stating that a district court may "consider 'an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document'"); *Schmidt v. Skolas*, 770 F.3d 241, 250 (3d Cir. 2014) (explaining that "the justification for the integral documents exception is that it is not unfair to hold a plaintiff accountable for the contents of documents [he or she] must have used in framing [his or her] complaint, nor should a plaintiff be able to evade accountability for such documents simply by not attaching them to [the] complaint"); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1197 (3d Cir. 1993) (noting that matters of public record include administrative and court decisions). However, the Court may not consider the "truth of facts" in such documents if "contested by the well-pleaded facts of a complaint," which "must prevail." *Doe*, 30 F.4th at 342. As set forth above, this Court has appropriately considered various extrinsic documents to address the Rule 12 motions.

*Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (holding that although their pleadings must be liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints").

### 1. Non-Cognizable Claims

As an initial matter, this Court finds that certain "claims" must be dismissed because they are not cognizable under federal or state law. First, any claims brought under 28 U.S.C. § 1291, *see* D.E. 1-1, Compl. ¶¶ 320-22, 433-65, 495, must be dismissed because there is no right of action available thereunder. *See* 28 U.S.C. § 1291 (stating that the federal courts of appeals "have jurisdiction of appeals from all final decisions of the [federal] district courts … , except where a direct review may be had in the Supreme Court [of the United States]"). Second, the mail and wire fraud claims asserted under Sections 1341 and 1343, *see* D.E. 1-1, Compl. ¶¶ 466-69, must be similarly dismissed because there is no private right of action under these statutes. *See Mickman v. Phila. Pro. Collections LLC*, No. 22-2598, 2023 WL 6392756, at *2 (3d Cir. Oct. 2, 2023) (affirming a district court's conclusion that 18 U.S.C. §§ 1341, 1346, and 1349 do not "provide for a private cause of action"), *cert. denied*, 2024 WL 3014582 (U.S. June 17, 2024); *Obianyo v. Tennessee*, 518 F. App'x 71, 72 (3d Cir. 2013) ("[C]riminal statutes such as 18 U.S.C. § 1343, which criminalizes wire fraud ... provide no private right of action[.]"); *Addlespurger v. Corbett*, 461 F. App'x 82, 87 (3d Cir. 2012) ("[T]here is no private cause of action for a violation of the federal mail and wire fraud statutes[.]"); *Importers Serv. Corp. v. Aliotta*, No. 22-4640, 2023 WL 3173568, at *8 (D.N.J. Apr. 28, 2023) (dismissing mail and wire fraud claims asserted under Section 1341 and 1343, with prejudice, "as improperly brought because there is no private right of action"). Accordingly, this Court **RECOMMENDS**

dismissal, with prejudice, of all claims brought under either 18 U.S.C. § 1341, 18 U.S.C. § 1343, or 28 U.S.C. § 1291.

### 2.    Statute of Limitations

Having addressed the viability of "claims" that are not recognized by state or federal law, the Court turns to Defendants' contention that Plaintiff's claims are time barred. *See* Newark Defs.' Moving Br. at 7-10; State Defs.' Moving Br. at 21-22. As a preliminary matter, however, the Court notes that dismissal on statute-of-limitations grounds is appropriate at this stage of proceedings only "'where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the complaint.'" *Trustees of United Food & Com. Workers Union v. Consulate Health Care, LLC*, No. 23-2645, 2024 WL 1827745, at *5 (D.N.J. Apr. 26, 2024) (citation omitted). In other words, "'[i]f the bar is not apparent on the face of the complaint, then [a statute of limitations defense] may not afford the basis for dismissal.'" *Id.* (citation omitted). Here, the Complaint itself and other materials that may be properly considered confirm that most, if not all, of Plaintiff's claims are time barred.

Naturally, the Court begins with an assessment of the date when Plaintiff's purported claims accrued. Federal law governs the question of "when [] a cause of action accrues," and dictates that "the statute of limitations begins to run when the plaintiff knew or should have known of the injury upon which its action is based." *Brown v. Rauth*, No. 15-1764, 2017 WL 5053921, at *3 (D.N.J. Nov. 2, 2017) (citing *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009)) (internal quotation marks omitted). Generally, this would be "at the time of the last event necessary to complete the tort, [and] usually at the time the plaintiff suffers an injury." *Brown*, 2017 WL 5053921, at *3; *see also Sexton v. N.J. Dep't of Corr.*, No. 21-20404, 2023 WL

8868810, at *4 (D.N.J. Dec. 22, 2023) (stating that "[a] claim for a discrete discriminatory act or retaliatory act typically begins to run on the day the act occurs," and, if the complained-of conduct constitutes a series of discrete acts, the claim accrues on "the date on which the last component act occurred") (citation and internal quotation marks omitted); *Gillespie*, 2010 WL 777954, at *7 ("New Jersey courts have generally stated that a claim accrues … on the date on which the right to institute and maintain a suit first arose.") (citations and internal quotation marks omitted). To determine when Plaintiff's claims accrued, this Court must analyze their underlying factual bases.

Plaintiff's purported claims are all premised on the following allegations: (i) Defendants failed to provide Plaintiff with a reasonable accommodation and failed to comply with the subject consent orders after she sustained the work-related injury; (ii) in retaliation for Plaintiff's filing of a workers' compensation claim and taking other actions, including reporting Hale and others for alleged illegal conduct, Defendants discriminated against her, conspired to falsify documents, and brought the tenure charges; (iii) Defendants furthered the fraud and conspiracy by failing to comply with the Tenure Law and provide her with a fair and impartial tenure hearing; (iv) Defendants unlawfully denied Plaintiff's petitions for rulemaking, which would have resulted in an amendment of the allegedly illegal Rule; and (v) Defendants illegally sustained the tenure charges without a hearing. *See generally* D.E. 1, 1-1 & 4. The last of these actions occurred on or about June 9, 2016, when the Commissioner adopted ALJ Gerson's April 26, 2016 initial decision upholding the tenure charges and recommending Plaintiff's dismissal. *See* D.E. 1-1, Compl. ¶¶ 59l, 59m, 84; *see also In re Gillespie*, 2016 WL 2593712, at *3, 11; *In re Tenure Hearing of Christine Gillespie*, 2016 WL 11501816, at *2-3. Notably, on or about

30

June 5, 2018, Plaintiff appealed those decisions to the Appellate Division. *See* App. at 1-14 (arguing that ALJ Gerson's initial decision is void *ab initio*, because it was allegedly based on fraudulent documents, a hearing that never occurred or was never noticed, and hearsay testimony from a witness who did not attend the hearing).

Moreover, Plaintiff alleges that, in October 2018, she received information from a "clerk" who: (i) "is familiar with the history of the case"; (ii) Plaintiff believes is "employed in either the OAL, [Defendant Adams Gutierrez & Lattiboudere, LLC], the Department of Law, the Appellate Division, the State [Department of Education], or the Administrative Office of the Courts"; and (iii) told her that ALJ Gerson engaged in "illegal ex parte" and extrajudicial conduct and that no hearing ever occurred on March 1, 2016. *See* D.E. 1-1, Compl. ¶¶ 59m, 60. Even if the Court were to ignore the fact that Plaintiff filed an appeal with the Appellate Division on June 5, 2018, which, at least, presented some of the facts that she claims to have learned for the first time in October 2018, Plaintiff was on notice about all relevant facts by October 31, 2018, at the latest.

Next, this Court identifies the applicable statutes of limitations. First, Section 1983 and 1985 claims "are subject to New Jersey's two-year statute of limitations for personal-injury claims." *Brown*, 2017 WL 5053921, at *3 (citing *Patyrak v. Apgar*, 511 F. App'x 193, 195 (3d Cir. 2013)). Second, Section 1986 claims must be brought "within one year after the cause of action has accrued." 42 U.S.C. § 1986; *see also Ouaziz v. Murphy*, No. 23-2696, 2024 WL 397708, at *6 (D.N.J. Feb. 2, 2024), *reconsideration denied*, 2024 WL 1533464 (D.N.J. Apr. 9, 2024). Third, any claims brought either under the National Labor Relations Act ("NLRA") or the LMRA are subject to a six-month statute of limitations period. *See* 29 U.S.C. § 160(b); *see also United Gov't Sec. Officers of Am. v. CCA of Tennessee LLC*, No. 15-5745, 2016 WL 3392258, at

*4 (D.N.J. June 13, 2016). Fourth, "NJLAD [discrimination and retaliation] claims are subject to a two-year statute of limitations." *Sexton*, 2023 WL 8868810, at *4 (citation omitted); *see also Gillespie*, 441 F. App'x at 895.

Applying the most favorable limitations period of two years to the latest date by which Plaintiff's NLRA, LMRA, NJLAD, and Sections 1983, 1985, and 1986 claims could have accrued, *i.e.*, October 31, 2018, this Court finds that all such claims are time barred. While Plaintiff was, at best, required to file this action no later than October 31, 2020, she did not do so until October 18, 2021.

Although this Court finds that Plaintiff did not state fraud or breach of contract claims under New Jersey state law, *see generally* D.E. 1-1, Compl., even if she did, those claims would also be time barred under the applicable six-year state of limitations. *See Gillespie*, 441 F. App'x at 894, 896; *Gillespie*, 2010 WL 777954, at *7. For these claims, the Court need not use the hypothetical (and generous) October 31, 2018 date, because those claims undoubtedly accrued much earlier. Based on a fair reading of the Complaint, the fraud claims are based on the tenure charges the Newark Defendants filed, and the contract claims relate to Plaintiff's contention that Defendants' actions were inconsistent with the Tenure Law and the applicable CBAs. *See* D.E. 1-1, Compl. ¶¶ 31, 99-147, 148-150c, 320-22, 433-69, 495; *see also Gillespie*, 2010 WL 777954, at *7 (noting Plaintiff's allegation, in the First Federal Action, that "'Defendants placed the District in Breach of Contract when they violated [N.J.S.A. §] 18A:6–11' causing the statute of limitations to commence to run on February 27, 2003, when 'illegally filed tenure charges were received by the Office of Controversies and Disputes'").

With respect to the fraud claims, the Third Circuit already held that Plaintiff was on notice of Defendants' purported fraudulent conduct "in early 2003." *Gillespie*, 441 F. App'x at 894-95 (construing the fraud claims in the First Federal Action as based on Lattiboudere's "actions relating to the December 30, 2002 Notice of Proposed Action," false claims "that a pre-termination hearing was held," and "the two Certificates of Determination containing different dates"). Even if that were not so, Plaintiff nonetheless conceded—in a complaint filed in state court in 2014 relating to the filing of her tenure charges and the workers' compensation matter—that "[t]he fraud in this case was not discovered until March 30, 2010 and May 30, 2010 with attendance documents for [sic] provided by the District under OPRA …." *See* App. at 51.

As to the contract claims, the Third Circuit has already had occasion to assess this issue, concluding that "the statute of limitations [on the contract claim] began to run in December 2002 when [Plaintiff] was notified of the tenure charges …." *Gillespie*, 441 F. App'x at 895-96 (finding "unavailing" Plaintiff's assertion that "she did not discover her contract claim until October 2007," and that any breach "occurred on February 27, 2003"). In sum, even if Plaintiff had pleaded fraud and breach of contract claims under state law, they would be time barred.

Finally, there is no basis to conclude that any limitations period has been tolled. Although the Complaint notes the existence of a continuing violation theory as a basis to toll a statute of limitations period, Plaintiff does not allege the required pattern or practice. *See Gillespie*, 2010 WL 777954, at *6 ("To prevail on a continuing violation theory, however, the plaintiff must show more than the occurrence of isolated or sporadic acts of intentional discrimination.") (citation and internal quotation marks omitted). Critically, in her opposition papers, Plaintiff makes no attempt to fend off Defendants' statute of limitations arguments or to convince this

Court that any of the applicable statutes of limitations have been tolled. In sum, even assuming *arguendo* that Plaintiff's claims are sufficiently and properly pleaded in the Complaint (despite a strong basis to conclude otherwise), they are time barred under the applicable statute of limitations. Accordingly, for the foregoing reasons, this Court **RECOMMENDS** the dismissal of Plaintiff's claims with prejudice.[22]

### 3.    Failure to Exhaust

Non-exhaustion of administrative remedies provides an additional basis for Rule 12(b)(6) dismissal of Plaintiff's ADA, ADEA, and LMRA claims. *See Devine v. St. Luke's Hosp*., 406 F. App'x 654, 656 (3d Cir. 2011) (holding that while failure to exhaust is not a jurisdictional defect, it "is a ground to dismiss a case for failure to state a claim" under Rule 12(b)(6)) (citation omitted). Under the ADA and ADEA, "a plaintiff must exhaust her administrative remedies, by filing a charge with the EEOC, before bringing a civil action." *Gillespie*, 2010 WL 777954, at *3-4 (citing *Phillips v. Sheraton Soc'y Hill,* 163 Fed. Appx. 93, 94 (3d Cir.2005); *Ruehl v. Viacom, Inc.,* 500 F.3d 375, 382-83 (3d Cir.2007)). Here, like in prior actions, Plaintiff failed to allege that she exhausted, or even sought to exhaust, her administrative remedies in connection with her purported ADA and ADEA claims. *See id.* (dismissing Plaintiff's ADA and ADEA claims after finding she failed to submit them to the EEOC and, concerning the ADA claim,

---

[22] Even if Plaintiff adequately pleaded fraud and breach of contract claims under state law, and timely did so, this Court would nevertheless recommend their dismissal. To the extent any state law claims survive dismissal under some theory, this Court recommends that the District Court decline to exercise supplemental jurisdiction over any such state law claims, including claims for fraud, breach of contract, or discrimination (*e.g.*, under the NJLAD), pursuant to 28 U.S.C. § 1367(c)(3). That provision grants Courts discretion to decline to exercise supplemental jurisdiction after it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Here, as this Court has recommended dismissal of all claims over which the District Court has original federal question jurisdiction, it also **RECOMMENDS** the District Court decline to exercise supplemental jurisdiction over any remaining state law claims pursuant Section 1367(c)(3). *See Fuzy*, 2022 WL 1284731, at *10-11.

obtain a right-to-sue letter). Indeed, the Complaint suggests she never did. *See* D.E. 1-1, Compl. ¶ 336 (filing "a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in Federal court, but a requirement that, like a statute of limitations is subject to waiver, estoppel, and equitable tolling.") (citations and internal quotation marks omitted).

Plaintiff's claims that Defendants expressly breached provisions of the applicable CBAs, *see* D.E. 1-1, Compl. ¶¶ 99-147, which may only be properly brought as LMRA claims are likewise subject to dismissal for failure to exhaust. *See Lueck*, 471 U.S. at 210; *Snyder*, 837 F. Supp. 2d at 441. Before suing under the LMRA, "an employee seeking to vindicate personal rights under a CBA must first attempt to exhaust any mandatory or exclusive grievance procedures provided in the agreement." *Naderi v. Concentra Health Servs., Inc.*, No. 21-18958, 2024 WL 2954181, at *6 (D.N.J. June 12, 2024) (dismissing claims, without prejudice, as the complaint did not allege the plaintiff attempted "to grieve the breach of contract claim") (citations omitted). Here, Plaintiff does not even attempt to purport that she exhausted her administrative remedies before filing a claim for breach of a CBA.

Accordingly, for the foregoing reasons, this Court **RECOMMENDS** the dismissal of Plaintiff's ADA and ADEA claims and any purported LMRA claims.

### 4.    Preclusion

The Court now turns to Defendants' preclusion arguments. If, like in this case, "the *Rooker-Feldman* doctrine does not apply," then "[p]reclusion law governs the '[d]isposition of a federal action once a state court adjudication is complete.'" *Tobia*, 2020 WL 7334209, at *11 (citations omitted). "[F]ederal courts 'give the same preclusive effect to a state-court judgment as another court of that State would give.'" *Id.* (citation omitted). The Court may consider a

preclusion defense on a motion to dismiss "if its applicability can be determined from the face of the complaint and any documents properly considered …."[23] *Gage v. N.J. Dep't of Env't Prot.*, No. 23-21264, 2024 WL 1076675, at *4 (D.N.J. Mar. 12, 2024) (citations omitted).

Defendants argue that both issue and claim preclusion bar Plaintiff's claims. *See* Newark Defs.' Moving Br. at 10-14; State Defs.' Moving Br. at 17-19. Specifically, the Newark Defendants argue the Complaint raises the same issues considered in prior state and federal decisions dismissing her claims, and indirectly attacks the Commissioner's final determination upholding the tenure charges, "which was affirmed on all appeals." *See* Newark Defs.' Moving Br. at 12 (stating that, in the First Federal Action, the District Court dismissed her fraud, due process, retaliation, discrimination, and conspiracy claims). The State Defendants expand on that argument by asserting that: (i) the Appellate Division and the Supreme Court of New Jersey have issued a final judgment on the merits with respect to Plaintiff's challenge to their final determination upholding the tenure charges; (ii) Plaintiff has been a party to all relevant prior proceedings; (iii) the issues presented in this action are essentially the same as those raised in the earlier lawsuits; and (iv) the underlying claims in all of these matters are the same. *See* State Defs.' Moving Br. at 17-18. In turn, Plaintiff appears to focus her argument on her belief that her claims were not previously litigated on the merits.[24] *See generally* D.E. 46, 47 & 49. For

---

[23] Thus, "prior judicial decisions may be noticed for their existence and legal effect on the current proceeding." *Fink v. Bishop*, No. 23-0566, 2024 WL 863300, at *5 (D.N.J. Feb. 29, 2024) (citation omitted); *see also Gage*, 2024 WL 1076675, at *4 ("[T]he Court may take judicial notice of the pleadings and orders from the prior proceedings … to establish the nature and scope of prior proceedings between the parties."); *Scalercio-Isenberg v. Select Portfolio Servicing, Inc.*, No. 22-02705, 2024 WL 378652, at *6 (D.N.J. Jan. 31, 2024) (taking notice of a judgment and pleadings in a prior federal action).

[24] In opposition, Plaintiff filed three separate submissions—all untimely and in violation of the Local Civil Rules. *See* L. Civ. R. 7.1(d)(2) (requiring the filing of opposition papers "at least 14 days prior to the original motion day, unless the Court otherwise orders, or an automatic extension is obtained"). Moreover, like the Complaint, these filings are dense, repetitive, and incoherent in many

example, she asserts that the First Federal Action did not qualify as such because the District Court dismissed the complaint "on jurisdictional issues as premature or time barred." D.E. 47 at 1 (further implying that the alleged fraud upon the courts precluded any decision on the merits). Notwithstanding the inaccurate characterization of the District Court's decision in the First Federal Action, Plaintiff bizarrely contends that the alleged fraud rendered every court ruling or administrative decision void *ab initio*. D.E. 49 at 8.

### i. *Res Judicata*

The Court begins its preclusion analysis with the doctrine of *res judicata*, also known as claim preclusion, which "bars suit when three elements are present: '(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action.'" *Davis*, 824 F.3d at 341 (citation omitted). In assessing these elements, the Court should focus on requiring "a plaintiff to present all claims arising out of the same occurrence in a single suit" for the purpose of "avoid[ing] piecemeal litigation," "conserv[ing] judicial resources," "reliev[ing] parties of the cost and vexation of multiple lawsuits," "preventing inconsistent decisions," and "encourag[ing] reliance on adjudication." *Id.* at 341-42 (citations and internal quotation marks omitted). Significantly, the *res judicata* bar includes claims that could have been asserted in a prior lawsuit. *Id.* at 342 (citation omitted).

---

respects. Finally, Plaintiff filed excessively long opposition papers in contravention of the Local Civil Rules. *See* D.E. 46 (totaling 68 pages); D.E. 49 (totaling 42 pages). Local Civil Rule 7.2 limits opposition briefs to 40 ordinary typed or printed pages (excluding pages required for the table of contents and authorities), and further provides that "[b]riefs of greater length will only be accepted if special permission of the Judge is obtained prior to submission of the brief." *See* L. Civ. R. 7.2(a), (b). Nevertheless, considering Plaintiff's *pro se* status and to reach the merits of the pending motions, this Court excuses these non-trivial failures.

As an initial matter, this Court considers which of the prior judgments identified by Defendants, if any, qualifies for the *res judicata* bar. For claim preclusion purposes, "[a] judgment is considered rendered 'on the merits' when a given court addresses the fundamental legal issues and facts of the case." *Kennedy v. ESQ Cap. III, LLC*, No. 23-02268, 2024 WL 1739863, at *4 (D.N.J. Apr. 22, 2024). There is no claim preclusion if the prior action was "dismissed for 'want of jurisdiction, or was disposed of on any ground which did not go to the merits of the action.'" *Id.* (citations omitted). However, a dismissal of an action on statute of limitations grounds constitutes a final judgment on the merits. *See Fam. C.L. Union v. State*, 386 F. Supp. 3d 411, 440 (D.N.J. 2019) (rejecting the argument that the prior judgments dismissing claims on statute of limitations grounds were not on the merits because "none of the substantive issues were discussed"), *aff'd sub nom. Fam. C.L. Union v. Dep't of Child. & Fams.*, 837 F. App'x 864 (3d Cir. 2020); *see also Singer v. Bureau of Pro. & Occupational Affs.*, 648 F. App'x 193, 194 (3d Cir. 2016) ("[T]he fact that the claims were previously dismissed as time-barred does not prevent application of claim preclusion.") (citation omitted).

Overall, "[t]he on-the-merits requirement is better understood in terms of its functional equivalent: whether a dismissal is with prejudice." *Papera v. Penn. Quarried Bluestone Co.*, 948 F.3d 607, 610 (3d Cir. 2020). On the other hand, a without-prejudice dismissal has no claim-preclusive effect. *Id.* at 611 (internal citations and quotation marks omitted). Critically, "[t]he voluntariness of a dismissal bears on whether it is with prejudice." *Id.* at 610. As a default rule, an involuntary dismissal is considered with prejudice, unless "the dismissal order states otherwise." *Id.* at 610 (citing Fed. R. Civ. P. 41(b)) (internal quotation marks omitted). "[A]n actual verdict or summary judgment" is not required. *Id.* (citations omitted). The default rule

"applies to, among other things, dismissals for failure to prosecute or to comply with a court order or rules." *Id.* (citing Fed. R. Civ. P. 41(b) and explaining "[u]nless the dismissal order states otherwise, … any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits."). In short, "involuntary dismissals are presumptively with prejudice." *Id.* However, because Defendants bear the burden of proving all claim preclusion elements and ambiguities must be construed "against claim preclusion," courts must construe: (i) "unclear dismissal orders as voluntary"; and (ii) "unclear first voluntary dismissals as without prejudice." *Id.* at 611 ("Only a clear and explicit statement will suffice to make a dismissal involuntary, or voluntary with prejudice."); *see also* Fed. R. Civ. P. 41(a) ("[I]f the plaintiff previously dismissed any … action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits.").

Here, Defendants have identified the following judgments as relevant to the preclusion analysis: (i) the Appellate Division's January 17, 2008 decision affirming the denial of Plaintiff's first rulemaking petition challenging the validity of the Tenure Rule (the "Rulemaking Decision"). *See Gillespie,* 397 N.J. Super. at 548; (ii) the District Court's March 5, 2010 dismissal of Plaintiff's Fourteenth Amendment due process and equal protection, First Amendment retaliation, breach of contract, fraud, conspiracy, disparate treatment, and discrimination claims in the First Federal Action (the "Federal Judgment"). *See Gillespie*, 2010 WL 777954, at *1; (iii) the Appellate Division's January 6, 2014 decision summarily affirming ALJ Gerson's April 27, 2011 order denying Plaintiff's motion to dismiss the tenure charges for lack of jurisdiction (the "OAL Jurisdiction Decision"). *See Gillespie*, 2014 WL 30328, at *1; and

39

(iv) the Appellate Division's January 2, 2018 and August 21, 2018 decisions dismissing Plaintiff's appeal of the OAL's final determination sustaining the tenure charges (the "Tenure Decision"). *See* D.E. 45-2; App. at 15, *In re Tenure Hearing of Christine Gillespie,* No. A-003950-17 (N.J. Super. Ct. App. Div. Aug. 21, 2018), *cert. denied*, 239 N.J. 17 (2019).[25] These decisions all have claim-preclusive effect because they were, at least partially,[26] rendered on the merits and addressed "fundamental legal issues and facts of the case." *Kennedy*, 2024 WL 1739863, at *4. More importantly, these decisions were all with prejudice because they each either provided that the involuntary dismissal was with prejudice or did not express that it was without prejudice. *See Papera*, 948 F.3d at 610-11; *see also* Fed. R. Civ. P. 41(b). Moreover, although not seemingly relied upon by Defendants, this Court notes that the Superior Court's February 28, 2014 decision dismissing Plaintiff's fraud-based claims in N.J. Super. Ct. No. ESX-

---

[25] Consistent with Third Circuit law, *Fink v. Bishop*, 2024 WL 863300, at *5, this Court takes notice of the existence and legal effect of other prior state and federal decisions relating to the allegations asserted in this action, most, if not all, of which Defendants identify in their motion papers. *See* N.J. Super. Ct. No. ESX-L-4700-10 (removed to federal court, *see* D.N.J. No. 10-3875, and voluntarily dismissed without prejudice); N.J. Super. Ct. No. ESX-L-3394-12 (removed to federal court, *see* D.N.J. No. 12-6561, and voluntarily dismissed without prejudice); N.J. Super. Ct. No. ESX-L-184-14 (dismissed with prejudice); N.J. Super. Ct. No. ESX-L-720-14 (dismissed with prejudice); D.N.J. No. 17-4402 (remanded to the Appellate Division); D.N.J. No. 17-4403 (remanded to the Appellate Division); D.N.J. No. 17-5402 (dismissed without prejudice under Rule 4(m)); D.N.J. No. 18-10659 (dismissed without prejudice under Rule 4(m)); N.J. Super. Ct. No. ESX-L-1533-19 (dismissed without prejudice for lack of prosecution); N.J. Super. Ct. No. ESX-L-7705-19 (dismissed without prejudice for lack of prosecution); D.N.J. No. 19-19036 (dismissed without prejudice under Rule 4(m)); D.N.J. No. 21-5343 (dismissed without prejudice under Rule 4(m)). Defendants either certified or proffered this information, and this Court was able to corroborate it through the relevant courts' electronic case filing ("ECF") systems. Except for N.J. Super. Ct. Nos. ESX-L-184-14 and ESX-L-720-14, which were purportedly dismissed with prejudice by the Superior Court, New Jersey's trial court, none of these dismissal orders constitute a final judgment on the merits, because the dismissals were without prejudice. *See Papera*, 948 F.3d at 610-11. Accordingly, they cannot serve as a basis to bar Plaintiff from asserting the claims in this action.

[26] To the extent these courts rooted any portion of their dismissal orders in a lack of jurisdiction, that portion of the decision is not considered on the merits. *See Kennedy*, 2024 WL 1739863, at *4.

L-720-14,[27] after Plaintiff failed to oppose a motion to dismiss, also qualifies as a final judgment

on the merits for claim preclusion purposes. *See* App. at 72-73.[28] Therefore, this Court concludes

that the first *res judicata* element has been met with respect to the foregoing prior decisions.

With respect to the second element, this Court finds Plaintiff has brought this action

against the same parties or their privies. Plaintiff does not contest this. Although some of the

defendants in the prior lawsuit are not defendants in this action and vice versa, "[c]ourts have

routinely barred, via claim preclusion, a Plaintiff from bringing an action based on the same

allegations as a previous action against new defendants." *Scalercio-Isenberg*, 2024 WL 378652,

at *10 (citations omitted). That is because, in this context, "privity" means "[t]he connection or

relationship between two parties, each having a legally recognized interest in the same subject

matter." *Fam. C.L. Union*, 386 F. Supp. 3d at 440 (citation and internal quotation marks

omitted). It "requires a prior legal or representative relationship between a party to the prior

---

[27] In N.J. Super. Ct. No. ESX-L-720-14, Plaintiff's complaint asserts fraud-based claims against Adams, Lattiboudere, Adams Gutierrez & Lattiboudere, LLC, and Derlys M. Gutierrez, Esq. *See* App. at 47-73.

[28] Curiously, Defendants did not submit with their motion papers the relevant filings from N.J. Super. Ct. Nos. ESX-L-184-14 or ESX-L-720-14 (*e.g.*, pleadings and dismissal orders). Those filings are not available through the Superior Court's ECF system. Although this Court was able to obtain the relevant filings from the Superior Court, *see* App. at 47-73, it has not been able to obtain similar filings from N.J. Super. Ct. No. ESX-L-184-14. Rather than making those easily accessible to the Court, Defendants resorted to certifying or proffering relevant information from those cases. *See, e.g.*, D.E. 43-2 (certification of counsel for the Newark Defendants). While the Court may properly take judicial notice of matters of public record, as it has done in connection with N.J. Super. Ct. No. ESX-L-184-14, this Court cannot rely on Defendants' factual representations and excludes them as they fall outside the categories of documents that may be properly considered in resolving a Rule 12(b)(6) motion. *See Pauly v. Houlihan's Restaurants, Inc.*, No. 12-0025, 2012 WL 6652754, at *4 (D.N.J. Dec. 20, 2012) (excluding declaration submitted in support of a Rule 12(b)(6) motion to dismiss); *Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 475 n. 21 (D.N.J. 1998) (excluding certification submitted in opposition to a Rule 12(b)(6) motion on the ground that it constitutes "matters outside the pleadings"). Relatedly, although the Superior Court's ECF system indicates that N.J. Super. Ct. No. ESX-L-184-14 was dismissed with prejudice, this Court may not, on the current record, conclude that the purported dismissal order in N.J. Super. Ct. No. ESX-L-184-14 carries similar preclusive effect, particularly in connection with this case.

action and the nonparty against whom estoppel is asserted." *Id.* at 441 (quoting *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 312 (3d Cir. 2009)) (internal quotation marks omitted); *see also E.E.O.C. v. U.S. Steel Corp.*, 921 F.2d 489, 493 (3d Cir. 1990) ("One relationship long held to fall within the concept of privity is that between a nonparty and party who acts as the nonparty's representative.") (citations omitted). Here, Plaintiff alleges, among other things, that Defendants acted together in a conspiracy to deprive her of rights. Thus, by Plaintiff's own admission, the defendants in this and prior lawsuits—whether part of the City of Newark or the State of New Jersey—were each acting on behalf of each other and with a common legal interest—*i.e.*, to prosecute and adjudicate the tenure charges. *See Gambocz v. Yelencsics*, 468 F.2d 837, 842 (3d Cir. 1972) (concluding the relationship of parties to a second complaint was so close to the parties to the first that the second complaint "was merely a repetition of the first cause of action"). Thus, the second element for claim preclusion is met.

Finally, this Court turns to the third *res judicata* element and concludes that the Complaint is, at least in part, derived from the same or related transactions that formed the bases of Plaintiff's claims asserted in prior lawsuits and dismissed by federal or state courts. Under the Third Circuit's preclusion precedent, there is no precise definition of the phrase "cause of action"; rather, courts "take a broad view of what constitutes the same cause of action." *Davis*, 824 F.3d at 342 (stating that "res judicata generally is thought to turn on the essential similarity of the underlying events giving rise to the various legal claims") (citation and internal quotation marks omitted). In assessing whether underlying events giving rise to the various legal claims turn on "essential similarity," courts consider the following factors: (i) "whether the acts complained of and the demand for relief are the same"; (ii) "whether the theory of recovery is the

same"; (iii) "whether the witnesses and documents necessary at trial are the same"; and (iv) "whether the material facts alleged are the same." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 277 (3d Cir. 2014). Because "the focus is on facts rather than legal theories," the doctrine "bars a claim that arises from the same set of facts as a claim adjudicated on the merits in the earlier litigation." *Davis*, 824 F.3d at 342 (holding that *res judicata* barred a myriad of claims that the plaintiff could have asserted in his earlier action) (citation and internal quotation marks omitted); *see also Scalercio-Isenberg*, 2024 WL 378652, at *9 ("A party raising new and discrete facts is not itself dispositive, rather, a court will still apply claim preclusion to bar the new claims if it finds the new facts arise out of the same transactions, or from connected transactions, which were raised in the previous action.").

Applying these principles, this Court finds that Plaintiff's claims concerning (i) her challenge of the Tenure Rule, (ii) the Newark Defendants' filing and certification of the tenure charges, as well as the events of the tenure proceedings leading up to the March 1, 2016 hearing and final determination, and (iii) the merits of the State Defendants' decision to uphold the final charges have all been previously adjudicated on their merits.

In the Rulemaking Decision, the Appellate Division considered and rejected Plaintiff's arguments that the Tenure Rule denied her due process and was inconsistent with the provisions of the Tenure Law and the New Jersey Administrative Procedure Act. *See Gillespie*, 397 N.J. Super. at 547, 549-50, 554-55, 557-58. Despite these claims being dismissed by the Appellate Division on January 17, 2008, and again by the District Court in the First Federal Action on March 5, 2010, *Gillespie*, 2010 WL 777954, at *3, Plaintiff repackages them in this action as contract-based and due process claims. Moreover, as part of the Federal Judgment, the District

Court dismissed many of the same claims asserted in this case—*i.e.*, due process, equal protection, retaliation, breach of contract, fraud, conspiracy, disparate treatment, and discrimination claims—under Rule 12(b)(6). Those dismissed claims were based on the same allegations contained in the Complaint in this action, specifically, that the Newark Defendants wrongfully filed and certified tenure charges, denied her a reasonable accommodation after sustaining the work-related accident, and suspended her without pay. *See* Civ. No. 09-885, D.E. 1, 11-2; *see also Gillespie*, 2010 WL 777954, at *3-7. In the OAL Jurisdiction Decision, the Appellate Division rejected Plaintiff's claim that the tenure proceeding violated her due process rights because the OAL lacked jurisdiction—an assertion that Plaintiff has repeated in this Complaint. *See Gillespie*, 2014 WL 30328, at *1. Moreover, in the Superior Court's February 28, 2014 decision, Plaintiff's fraud claims relating to the filing and certification of the tenure charges, claims that Plaintiff also purports to state in this action based on federal law, were likewise dismissed. *See* App. at 47-73. Finally, in the Tenure Decision, the Appellate Division dismissed, with prejudice, Plaintiff's appeal challenging Defendants' determination, thereby upholding the tenure charges. *See id.* at 1-15.

In sum, the substance of Plaintiff's allegations in these prior actions match most of her claims in this action. For the most part, the two sets of claims are brought under the same provisions of law (Section 1983) and assert the same alleged grievance. To the extent Plaintiff expanded on those allegations in the Complaint, any new facts are merely progressions of the same transaction or occurrence that formed the basis of her previously dismissed claims. *See Fam. C.L. Union*, 386 F. Supp. 3d at 439 (subjecting the plaintiffs' constitutional claims to the claim-preclusive bar despite the addition of "allegations of similar examples of the same

constitutional harm," and stating that those "claims do not become new for purposes of claim preclusion merely because they allege subsequent instances of the supposed constitutional violation that was initially litigated"); *see also Amid v. Chase*, 720 F. App'x 6, 10 (2d Cir. 2017) ("A suit can be claim precluded even if it is based in part on facts that occurred after the initial suit.") (citation omitted). Ultimately, because "the focus is on facts rather than legal theories," a broad view of Plaintiff's litigations confirms that they involve essentially the same allegations, claims, and legal theories. *See Fink v. Bishop*, 2024 WL 863300, at *5 ("nominal differences … do not defeat claim preclusion"); *see also Gage*, 2024 WL 1076675, at *4 (holding that the addition of new claims and legal theories did not preclude the application of *res judicata* because the underlying events giving rise to the legal claims in the different actions were identical).

Because all requirements for claim preclusion are satisfied, Plaintiff's claims concerning her challenge of the Tenure Rule, the Newark Defendants' filing and certification of the tenure charges, the events of the tenure proceeding leading up to the March 1, 2016 hearing and final

determination, and the merits of the State Defendants' decision to uphold the final charges are barred.[29] Accordingly, this Court **RECOMMENDS** their dismissal with prejudice.[30]

        ii.     *Collateral Estoppel*

Even if the District Court were to conclude that *res judicata* did not preclude all asserted claims or apply to the newly named defendants, collateral estoppel would preclude them. Collateral estoppel, or issue preclusion, "bars parties from re-litigating an issue determined by a 'final and valid' judgment in any future lawsuit." *Scalercio-Isenberg*, 2024 WL 378652, at *6 (citing *United States v. Rigas*, 605 F.3d 194, 217 (3d Cir. 2010)). To determine whether New Jersey law bars the Complaint under the doctrine of collateral estoppel, the Court should assess the following five factors or elements:

---

[29] Arguably, the only claim that could survive the *res judicata* bar is Plaintiff's due process claim brought under Section 1983 and based on Defendants' alleged failure to provide her with a fair and impartial tenure hearing before terminating her tenured employment. However, in appealing the final determination on the tenure charges to the Appellate Division, Plaintiff sought reversal, in part, based on her assertion that the hearing never occurred. *See* App. at 1–14. The Appellate Division nevertheless dismissed the appeal with prejudice on timeliness grounds. Whether or not such appeal could be labelled as a due process claim, the fact of the matter is that, in applying the "essential similarity" test, "the acts complained of and the demand for relief are the same," and the material facts to be considered are the same. *Blunt*, 767 F.3d at 277 ("It is not dispositive that a plaintiff asserts a different theory of recovery or seeks different relief in the two actions."). Even if the District Court were to conclude that Plaintiff's due process claim is not barred under *res judicata*, there is no need to address the sufficiency of Plaintiff's pleading of this claim because it is time barred under the applicable two-year statute of limitations. *See Hassani v. New Jersey*, No. 21-75, 2022 WL 1291311, at *4 (D.N.J. Apr. 30, 2022) (applying two-year statute of limitations to a procedural due process claim brought under Section 1983).

[30] This Court rejects Plaintiff's argument that all prior actions, including the First Federal Action, should be ignored due to error and Defendants' alleged perpetration of fraud. "[I]t is well-established that prior judgments still have preclusive effect even if they potentially contain errors." *Scalercio-Isenberg*, 2024 WL 378652, at *8 (collecting cases). The Third Circuit foreclosed a similar argument following the District Court's issuance of the Federal Judgment. *See Gillespie*, 527 F. App'x at 122 (rejecting Plaintiff's contention that the Federal Judgment should be vacated due to the defendants' alleged perpetration of fraud on the court, reasoning that Plaintiff was not able to meet the demanding standard of proof and "the allegedly fraudulent documents had no bearing on the propriety of the [Federal Judgment]").

46

> (1) the identical issue was decided in a prior adjudication; (2) the issue was actually litigated; (3) there was a final judgment on the merits; (4) the determination was essential to the earlier judgment; and (5) the party against whom the doctrine is asserted was a party or in privity with a party to the earlier proceeding.

*Id.* (quoting *Fitzgerald v. Shore Mem'l Hosp.*, 92 F. Supp. 3d 214, 225-26 (D.N.J. 2015)); *see also Tobia*, 2020 WL 7334209, at *13 (applying New Jersey law). Defendants "bear the burden of establishing all five elements." *Tobia*, 2020 WL 7334209, at *13 (citation omitted).

Notwithstanding the parties' respective contentions, here, there is no dispute that the fifth element is met because Plaintiff, "the party against whom the doctrine is asserted[,] was a party … to the earlier proceeding[s]." *Scalercio-Isenberg*, 2024 WL 378652, at *6; *see also Fuzy v. Westfield Bd. of Educ.*, No. 19-18434, 2022 WL 1284731, at *7 (D.N.J. Apr. 29, 2022) (stating that the modern doctrine does not require complete party-identity) (citations omitted). There is also little question about the third element. "'Unlike claim preclusion, the effectiveness of issue preclusion … does not require the entry of a judgment, final in the sense of being appealable.'" *Fuzy*, 2022 WL 1284731, at *7 (quoting *In re Brown*, 951 F.2d 564, 569 (3d Cir. 1991)). Rather, this element is met "'whenever an action is sufficiently firm to be accorded conclusive effect.'" *Id.* (quoting *In re Brown*, 951 F.2d at 569). Unquestionably, and as provided in this Court's *res judicata* analysis, the prior court decisions reached such finality.[31]

---

[31] Under New Jersey law, agency or administrative decisions are given "full preclusive effect … as long as the proceedings provide significant procedural safeguards similar to those … provided … in courts of law." *Tobia*, 2020 WL 7334209, at *11 (holding that an independent arbitrator's decision issued pursuant to the Tenure Law—sustaining tenure charges—carried preclusive effect under New Jersey law) (citations and internal quotation marks omitted); *see also Tice v. Bristol-Myers Squibb Co.*, 325 F. App'x 114, 118 (3d Cir. 2009) ("[F]inal agency decisions outside the Title VII context normally have preclusive effect in federal courts pursuant to the doctrines of collateral estoppel and res judicata.") (citations omitted). While there is no question that the State Defendants acted in a quasi-judicial capacity, that the Commissioner remanded the matter to the OAL on various occasions after Plaintiff failed to appear for scheduled hearings, and that Plaintiff promptly received ALJ Gerson's initial decision upholding the tenure charges, this Court cannot conclude, on the pleadings—which includes Plaintiff's allegation that she did not receive notice of the March 1, 2016 hearing—that the tenure proceedings provided significant

To satisfy the first element, "the issues must be 'in substance the same.'" *Scalercio-Isenberg*, 2024 WL 378652, at *6 (citation omitted). "In assessing similarity, courts consider 'whether there is substantial overlap of evidence or argument in the second proceeding; whether the evidence involves application of the same rule of law; whether discovery in the first proceeding could have encompassed discovery in the second; and whether the claims … are closely related.'" *Id.* (citations omitted). Here, a review of the prior lawsuits shows that the central theme of Plaintiff's claims was Defendants' allegedly discriminatory, fraudulent, and retaliatory actions in terminating her medical benefits, bringing the tenure charges, and certifying them for a final hearing on the merits in violation of the Tenure Law and due process. Plaintiff is unquestionably attempting to relitigate these very same issues in this action. At worst, the issues are substantially the same. Moreover, as a result, "[t]here is … a substantial overlap of evidence and identical argumentation between the [] claims" raised in the litigation. *Scalercio-Isenberg*, 2024 WL 378652, at *7 (reaching such conclusion despite noting that the prior action "ended before discovery could begin"). Therefore, this Court finds the requisite identity of issues between those raised in the prior lawsuit and this action to trigger collateral estoppel.

As to the second prong, an issue is "actually litigated" when it "is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined." *Fuzy*, 2022 WL 1284731, at *6 (quoting *Tobia*, 2020 WL 7334209, at *15) (internal quotation marks omitted).

---

and sufficient procedural safeguards like in the case of the arbitration held in *Tobia*. *See Tobia*, 2020 WL 7334209, at *22 (finding, *inter alia*, that the plaintiff "received notice of the hearing, engaged in scheduled pre-hearing discovery, and had ample time to prepare her case"). Still, this Court notes that the District Court in the First Federal Action already found that the Newark Defendants' actions in filing and certifying the tenure charges were consistent with the Tenure Law, because: (i) Plaintiff received notice of the tenure charges and had an opportunity to defend the charges in a 160-page response; and (ii) upon examination of the charges and Plaintiff's response, the State District Superintendent concluded that probable cause existed to support the charges. *Gillespie*, 2010 WL 777954, at *3.

Here, while this element is not necessarily met as to every issue raised by the Complaint, the following issues have been "actually litigated": (i) the unlawfulness of the Tenure Rule and the necessity for an amendment. *See* Rulemaking Decision; (ii) the Court's lack of jurisdiction over workers' compensation claims. *See* Federal Judgment; (iii) the timeliness of Plaintiff's federal and state law claims relating to the filing and certification of the tenure charges and suspension of her employment benefits. *See* Federal Judgment; (iv) Plaintiff's assertion that the Federal Judgment is void because Defendants allegedly committed fraud upon the District Court. *See Gillespie*, 527 F. App'x at 122; and (v) the OAL's jurisdiction over the tenure proceeding. *See* OAL Jurisdiction Decision. Therefore, the relevant tribunals' findings as to these issues have preclusive effect so long as the fourth element is satisfied.[32]

Finally, in determining whether an issue is essential to the prior judgments, courts "look to whether the issue 'was critical to the judgment or merely dicta.'" *Tobia*, 2020 WL 7334209, at *17 (citation omitted); *see also Fields v. Dickerson*, No. 14-778, 2016 WL 3619119, at *5 (D.N.J. July 6, 2016) ("A matter is essential when it was necessary to support the judgment rendered in the final action."). This condition is satisfied as to the foregoing issues here. Simply put, those aforementioned issues were essential to the relevant judgments because the issuing courts based their dismissals, at least in part, on them. *See Scalercio-Isenberg*, 2024 WL 378652, at *7 ("The Court in the Prior DNJ Action based its dismissal of the prior claims on Plaintiff's

---

[32] On the pleading record, this Court cannot accord preclusive effect to the State Defendants' final determination sustaining the tenure charges because: (i) at this juncture, a finding cannot be made about whether that determination can be considered preclusive under collateral estoppel; and (ii) even though Plaintiff presented the issue via appeal, it does not appear that the Appellate Division assessed and determined the merits of the State Defendants' final determination. *See* App. at 15 ("The appeal is untimely and is dismissed with prejudice."). This notwithstanding, as stated earlier, any claim challenging the legality and validity of that final determination is time barred.

failure to state a claim using the same arguments presented in this case, and this issue was essential to the Court's determination.") (citations omitted).

In sum, because Defendants have established all five elements for collateral estoppel, this Court finds that Plaintiff is precluded from relitigating the previously identified issues, and this necessarily bars her claims related to the allegedly fraudulent, retaliatory, and discriminatory tenure charges; the promulgation and application of the Tenure Rule; and the failure to provide her with reasonable accommodation.

For all the foregoing reasons, this Court **RECOMMENDS** that the District Court grant Defendants' motions to dismiss, at least in part, pursuant to Rule 12(b)(6).[33]

### C.     The State Defendants' Rule 12(b)(5) Motion to Dismiss

The State Defendants also seek dismissal of the four individual State Defendants for insufficient service of process under Rule 12(b)(5). *See* D State Defs.' Moving Br. at 4-5, 8-10. For the following reasons, this Court finds that dismissal of those parties is warranted.

---

[33] The Court need not address the State Defendants' qualified immunity arguments concerning Plaintiff's Section 1983 claims, *see* State Defs.' Moving Br. at 20-21, which rest on the familiar concept insulating government officials "who are 'performing discretionary functions ... from liability for civil damages' when their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Gross v. Cairo*, No. 22-2920, 2023 WL 8646265, at *2 (3d Cir. Dec. 14, 2023) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). This Court assumes that argument is limited to claims asserted against them in their individual capacity. *See Mouzone v. Ahlert*, No. 22-2885, 2024 WL 1299974, at *3 (3d Cir. Mar. 27, 2024) (affirming Court's rejection of such argument because "all defendants were sued solely in their official capacities") (citation omitted). Regardless, and while recognizing that qualified immunity defenses should be resolved at the earliest stage possible, this Court heeds the Third Circuit's "caution[] that 'it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases.'" *Wagner v. City of Newark*, No. 23-731, 2024 WL 2698588, at *5 (D.N.J. May 24, 2024) (quoting *Newland v. Reehorst*, 328 F. App'x 788, 791 n.3 (3d Cir. 2009)) (stating qualified immunity will be upheld at the pre-answer stage only when immunity is established on the face of the complaint). While the State Defendants insist their actions have been upheld "through the nearly twenty years of litigation related to this matter," State Defs.' Moving Br. at 20, no factfinder known to this Court has held, for example, that the State Defendants' specific actions were "found to be lawful." In any event, on the current record, this Court does not recommend dismissal based on qualified immunity.

First, Plaintiff failed to timely serve the State Defendants with process. Under Rule 4, Plaintiff was required to effectuate service of a summons with a copy of the Complaint on each Defendant within 90 days after being filed. Fed. R. Civ. P. 4(c), (m). Because Plaintiff filed the Complaint on October 18, 2021, *see* D.E. 1, she was required to serve all Defendants by January 17, 2022. However, no waiver or proof of service was filed by that date. *See* Fed. R. Civ. P. 4(l) (requiring the filing of an affidavit of service from the process server unless service is formally waived by a defendant); *see also Walker v. Penn. Off. of Admin.*, No. 23-2047, 2023 WL 8179274, at *1 n. 3 (3d Cir. Nov. 27, 2023) (stating that failure to file proof of service may not be excused even if the defendant to be served has actual notice of the action as "[p]roper service is also a prerequisite to personal jurisdiction") (citation omitted).

Where, as in this case, service is not made within 90 days of the filing of the Complaint, the Court must, upon proper notice, either (i) dismiss the action without prejudice against any Defendant that was not so served, or (ii) order that service be made within a specified time, unless Plaintiff demonstrates good cause for the failure, in which case the Court must extend her deadline to effectuate service. *See* Fed. R. Civ. P. 4(m). Accordingly, and consistent with Rule 4(m), the District Court filed a notice on April 1, 2022, informing Plaintiff that her action would be dismissed against the Defendants who had not yet voluntarily appeared, including all State Defendants, unless Plaintiff filed proof of service by April 15, 2022, demonstrating that they were served by January 17, 2022. *See* D.E. 7. Plaintiff failed to meet that deadline.

Instead, on May 10, 2022, Plaintiff filed "returns of service" for some Defendants, including State Defendants Sanders and Gerson. *See* D.E. 10. The server purportedly left process at what appears to be their former place of employment on April 29, 2022. *See id.* at 2-3; *see also*

D.E. 10-1, 10-2 (including April 30, 2022 letters addressed to the Court and Clerk of Court, which concede that State Defendants Sanders and Gerson were former administrative law judges); State Defs.' Moving Br. at 10 (State Defendants proffering that Plaintiff attempted to serve State Defendants Sanders, Gerson, and Hespe "at their former agencies"). Leaving aside the fact that, to date, Plaintiff has not filed proof of service on either Allen-McMillan or Hespe, service on State Defendants Sanders and Gerson was untimely.[34] Critically, Plaintiff neither requested nor obtained an extension of the service deadline. Moreover, Plaintiff has not shown good cause for her failure to effectuate service by the January 17, 2022 service deadline, for an extension of that deadline, or why Rule 4(m) dismissal is not warranted in these circumstances.

In any event, the State Defendants correctly argue that State Defendants Sanders, Gerson, and Hespe, who were sued in their individual capacities, were improperly served under either state or federal rules. Under the Rules, an individual located in the United States may be served by: (i) "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made"; (ii) "delivering a copy of the summons and of the complaint to the individual personally"; (iii) "leaving a copy of each at the individual's dwelling or usual place of abode with someone of

---

[34] Although the State Defendants appeared in the action on May 20, 2022, *see* D.E. 12, they promptly moved to dismiss for insufficient service of process, under Rule 12(b)(5), on July 26, 2022. *See* D.E. 32. Accordingly, they preserved their right to assert this defense. *See McCray v. Unite Here*, No. 13-6540, 2014 WL 2611830, at *1 (D.N.J. June 11, 2014) (holding that the defendant did not waive its right to assert a defense under Rule 12(b)(5), because he asserted such defense in its first Rule 12 motion); *see also Lawson v. Rite Aid of Penn., Inc.*, No. 04-1139, 2006 WL 2136098, at *2 (E.D. Pa. July 26, 2006) ("Making a general appearance … does not constitute a waiver of personal service so long as the defendant raise[d] the issue of insufficient service in the first responsive pleading or Rule 12 motion.") (citations omitted); *Burroughs Corp. v. Carsan Leasing Co.*, 99 F.R.D. 528, 531 (D.N.J. 1983) (same).

suitable age and discretion who resides there"; or (iv) "delivering a copy of each to an agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e).

To the extent Plaintiff attempted service on these individuals at their former place of employment, the only possible method of effective service could be under New Jersey law, *see id.* at 4(e)(i), which provides that personal service is the primary method of service. *See* N.J. Ct. R. 4:4-4(a)(i). While substituted service may be effectuated in certain circumstances, there is no provision for effective service by leaving process at an individual's *former* place of employment. *See* N.J. Ct. R. 4:4-4(b), (c).

Accordingly, for the foregoing reasons, this Court further **RECOMMENDS** dismissal of the State Defendants for insufficient service of process under Rule 12(b)(5).

## III.    MOTIONS FOR SANCTIONS

Finally, this Court turns to the two pending motions for sanctions. *See* D.E. 44, 52. The Newark Defendants seek fees and costs incurred since March 5, 2010, pursuant to Rule 11, the New Jersey Frivolous Claims Act, N.J.S.A. § 2A:15-59.1, and New Jersey Court Rule 1:4-8. D.E. 44. In short, these Defendants argue that sanctions are appropriate principally because Plaintiff "has continued to pursue her meritless claims" in bad faith and has "file[d] virtually identical frivolous complaints in multiple forums" in violation of state and federal court orders. D.E. 44-1 at 5, 16. In support of their motion, defense counsel, Ms. Adams, certified, in relevant part, that: (i) on April 18, 2022, she sent Plaintiff a letter demanding that Plaintiff withdraw all claims against the Newark Defendants and advising that they would otherwise pursue sanctions under Rule 11; and (ii) Plaintiff failed to respond to the letter and has refused to withdraw her

claims. D.E. 44-2.[35] In opposition, Plaintiff contends that the claims asserted in this lawsuit are not frivolous and have not been litigated on the merits in federal court. *See* D.E. 46 at 61-63. In reply, the Newark Defendants argue that aside from engaging in *ad hominem* attacks and harassing behavior against Defendants and defense counsel, Plaintiff's opposition "merely reiterates the 20-year-long history of her failed attempts to relitigate previously dismissed claims." D.E. 48.[36] On the other hand, Plaintiff seeks sanctions against the Newark Defendants for allegedly committing fraud upon this District Court by "engaging [in a] fraudulent and frivolous defense." D.E. 52. The Newark Defendants reject Plaintiff's assertion, state that they merely rely on earlier decisions, and argue that sanctions are not warranted because Plaintiff has not "prevailed." D.E. 53. The State Defendants take no position. D.E. 54.

As a general matter, the Court has the inherent authority "to impose sanctions on both litigants and attorneys to regulate their docket, to promote judicial efficiency and to deter abuse of judicial process," including when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Li v. Zhang*, No. 22-891, 2023 WL 8603026, at *5 (D.N.J. Dec. 12, 2023) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991); *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 505 (3d Cir. 1991)) (internal quotation marks omitted). However, the Court must exercise its inherent power "with restraint and caution" and reserve it "for those cases in which

---

[35] With that letter, Ms. Adams included an excerpt of a transcript of proceedings in the First Federal Action, which were held in this District in 2012. *See* D.E. 44-3 at 6-7. As stated earlier, the District Judge warned Plaintiff about filing "another matter as it relate[s] to the action that was … ultimately dismissed," and which the Court described as "dangerously close" to being frivolous. *Id.* at 6-7 (stating it would grant defendants leave "to move for fees and costs and expenses related to responding to what clearly is a frivolous matter" and impose fees and costs).

[36] The State Defendants also request Plaintiff's opposition be disregarded as untimely. D.E. 48 at 1.

the conduct of a party or an attorney is egregious and no other basis for sanctions exists." *Id.* (quoting *In re Prudential*, 278 F. 3d 175, 189 (3d Cir. 2002)) (internal quotation marks omitted).

Moreover, Rule 11 affords the Court discretion to "impose an appropriate sanction on any attorney … or party that violated the rule or is responsible for the [rule] violation," "after notice and a reasonable opportunity to respond." Fed. R. Civ. P. 11(c)(1); *see also Fink*, 2024 WL 863300, at *5 (stating that, by its own explicit terms, Rule 11 applies to unrepresented parties). That sanction "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4); *see also Li*, 2023 WL 8603026, at *5 (noting that the "'the test for determining whether Rule 11 sanctions should be imposed is one of reasonableness under the circumstances'") (citation omitted). A Rule 11 violation occurs if a filing is "presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," or "the claims, defenses, and other legal contentions are [not] warranted by existing law." Fed. R. Civ. P. 11(b)(1), (2).

However, the Court may only consider a Rule 11 motion for sanctions if the moving party "present[ed] the motion to the offending party and allow[ed] 21 days for the other party to withdraw or correct the challenged issue," before filing the motion. *Li*, 2023 WL 8603026, at *5 (citations omitted); *see also* Fed. R. Civ. P. 11(c)(2) ("The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets."). Here, the record reflects that the Newark Defendants have failed to comply with Rule 11(c)(2)'s safe harbor provision. Although defense counsel certified that she sent a letter to Plaintiff demanding that Plaintiff withdraw her claims and advising that

the Newark Defendants would pursue Rule 11 sanctions, *see* D.E. 44-2 ¶ 1, the record does not

make clear that Plaintiff was served with the Rule 11 motion. *See* D.E. 44-3. Rather, defense

counsel sent Plaintiff a proposed stipulation of dismissal with the following warning:

> If you do not sign and return the signed Stipulation of Dismissal withdrawing your
> complaint against the Defendants, this firm will be left with no alternative but to
> file a motion for fees and costs or, in the alternative a motion in aid of litigant's
> right and for fees and costs against you for egregious abuse of the court system.

*Id.* Therefore, because the Newark Defendants failed to present the Rule 11 motion to Plaintiff

before filing it, in violation of the safe harbor provision of Rule 11(c)(2), they cannot "overcome

their threshold, procedural burden, which must be satisfied prior to the Court considering the

merits of the motion." *Li*, 2023 WL 8603026, at *6 (accordingly refusing to address the merits of

the Rule 11 motions at such time); *see also Fink*, 2024 WL 863300, at *11 (denying Rule 11

motion for the movant's failure to comply with the safe harbor provision of Rule 11(c)(2),

despite noting that that the plaintiff's "conduct has no doubt been egregious"). In short, this

Court finds that the Newark Defendants' Rule 11 motion must be denied as premature.[37]

In any event, the sanctions motions—whether brought under Rule 11, N.J.S.A. § 2A:15-

59.1,[38] or New Jersey Court Rule 1:4-8[39]—should be also denied as premature, because the

---

[37] To the extent Plaintiff's sanction motion is construed as a Rule 11 motion, that motion must similarly be denied for failure to comply with the safe harbor provision of Rule 11(c)(2).

[38] The New Jersey Frivolous Claims Act ("NJFCA") provides, in part, that "[a] party who prevails in a civil action … against any other party may be awarded all reasonable litigation costs and reasonable attorney fees, if the judge finds at any time during the proceedings or upon judgment that a complaint, counterclaim, cross-claim or defense of the nonprevailing person was frivolous." N.J.S.A. § 2A:15-59.1(a)(1), (b) (requiring a finding that: (i) the claim or defense "was commenced, used or continued in bad faith, solely for the purpose of harassment, delay or malicious injury"; or (ii) "[t]he nonprevailing party knew, or should have known, that the [claim or defense] … was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law").

[39] New Jersey Court Rule 1:4-8 appears to be New Jersey's parallel provision to Rule 11. *Compare* Fed. R. Civ. P. 11, *with* N.J. Ct. R. 1:4-8; *see also Sun Chem. Corp. v. Fike Corp.*, No. 13-4069,

District Court has yet to consider this Report and Recommendation and any objections thereto, and therefore, the merits of the parties' respective claims and defenses have yet to be determined. Moreover, "Rule 11 is not a vehicle for resolving the merits of the parties' legal and factual claims." *Tiger Supplies Inc. v. Mav Associates LLC*, No. 20-15566, 2022 WL 195858, at *1 (D.N.J. Jan. 21, 2022) (citation omitted). While the Newark Defendants seek sanctions based on their view that Plaintiff persists in relitigating previously decided issues, Plaintiff's sanctions motion, which requests that the Court find Defendants have engaged in fraud, "is aimed at the merits of their dispute" and "reads like a summary judgment motion." *Id.* However, "Rule 11 cannot be used as a substitute for Rule 56." *Id.* (citation omitted). Even if Defendants were to ultimately prevail, "the Third Circuit has made clear that Rule 11 'must not be used as an automatic penalty against an attorney or a party advocating the losing side of a dispute.'" *Nahas v. Shore Med. Ctr.*, No. 13-06537, 2021 WL 3047032, at *3 (D.N.J. July 20, 2021) (quoting *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 482 (3d Cir.1987)).

Relatedly, if N.J.S.A. § 2A:15-59.1 were to apply,[40] the Court would have to conclude that the Newark Defendants are "prevailing parties," and that Plaintiff's claims are "frivolous."

---

2018 WL 3492143, at *2 (D.N.J. July 20, 2018) ("Rule 1:4-8 is patterned after Rule 11 ….") (citation and internal quotation marks omitted). To that end, courts in this District have held that "Rule 1:4-8 has no effect in this Court because it 'solely governs proceedings in New Jersey state and municipal courts.'" *Sun Chem. Corp.*, 2018 WL 3492143, at *3 (Vazquez, J.) (quoting *Ali v. Jersey City Parking Auth.*, No. 13-02678, 2014 WL 1494578, at *6 (D.N.J. Apr. 16, 2014) (Wigenton, J.), *aff'd*, 594 F. App'x 730 (3d Cir. 2014)); *see also Ali v. Portfolio Recovery Assocs., LLC*, No. 13-4531, 2014 WL 1767564, at *1 (D.N.J. May 2, 2014) (McNulty, J.) (denying application under New Jersey Court Rule 1:4-8, reasoning that New Jersey Court Rule 1:1-1 provides that '[u]nless otherwise stated, the rules in Part I are applicable to the [State of New Jersey's] Supreme Court, [] Superior Court, [] Tax Court, [] surrogate's courts, and the municipal courts'"), *on reconsideration in part sub nom.*, 2014 WL 4352316 (D.N.J. Sept. 2, 2014).

[40] Although "motions for sanctions pursuant to [N.J.S.A. §] 2A:15-59.1 have been permitted in federal court," *Sun Chem. Corp.*, 2018 WL 3492143, at *3 (collecting cases), other courts in this District have questioned whether relief under that statute may be appropriately awarded in this forum. *See Lacroce v. M. Fortuna Roofing, Inc.*, No. 14-7329, 2017 WL 431768, at *4 n.3 (D.N.J. Jan. 31, 2017)

*See Bektesevic v. Pariente-Cohen*, No. 21-607, 2021 WL 3738703, at *1 (D.N.J. Aug. 24, 2021).[41] To do so, the Court must be able to "assess the merit of the claims or the conduct of the parties," and, as previously explained, this Court cannot do so at this juncture, because the District Court has yet to either find in Plaintiff's favor or dismiss her claims. *Id.*; *see also Cooney v. Alberto*, No. 13-1849, 2017 WL 2712942, at *9 (D.N.J. June 23, 2017) ("Because there is no prevailing party yet, any decision as to an award of fees and costs is premature.").

Accordingly, this Court **RECOMMENDS** denial of the pending motions for sanctions.[42]

_____

(debating "[w]hether a motion made under authority of [N.J.S.A. §] 2A:15-59.1 is substantive … or procedural (in which case a state procedural statute will not apply)," and doubting whether N.J.S.A. § 2A:15-59.1 "can play the procedural role of Rule 11" where " the party seeking sanctions has not filed a claim for frivolous litigation under [N.J.S.A. §] 2A: 15-59.1"); *Marenbach v. City of Margate*, 942 F. Supp. 2d 488, 497 n.6 (D.N.J. 2013) (complaint filed under the Court's diversity jurisdiction); *Buying for the Home, LLC v. Humble Abode, LLC*, No. 03-2783, 2006 WL 8458811, at *1 (D.N.J. Feb. 15, 2006) (striking, with prejudice, request for fees and costs pursuant to N.J.S.A. § 2A:15-59.1, after concluding that the NJFCA "cannot be invoked in federal court with respect to claims based on federal law where subject matter jurisdiction is based on federal question"). Because this Court finds that the motion for sanctions should be denied, without prejudice, as premature, it need not take any position as to whether the parties must proceed under Rule 11 and/or N.J.S.A. § 2A:15-59.1.

[41] Indeed, in opposition to Plaintiff's sanctions motion, the Newark Defendants argue that Plaintiff has not met the threshold requirement that she prevail in the action. *See* D.E. 54.

[42] In recommending denial of these motions, this Court is mindful of Plaintiff's countless, overlapping lawsuits on the same subject matter as well as other courts' repeated warnings to her about filing frivolous claims. While Plaintiff is proceeding *pro se* and may be attempting to obtain redress in good faith, *see Kennedy*, 2024 WL 1739863, at *7 ("The authority of various courts in relation to one another is often misunderstood by attorneys, let alone a *pro se* litigant."), to the extent the District Court adopts this Report and Recommendation, Plaintiff should be mindful that refiling an identical lawsuit may subject her to Rule 11 sanctions or pre-filing injunction. Of course, the District Court may conclude that, given the protracted and repetitive history of these matters, a pre-filing injunction is warranted at this juncture. *See Fink*, 2024 WL 863300, at *6 ("Under the All Writs Act, District Courts may 'issue an order restricting the filing of meritless cases by a litigant whose manifold complaints raise claims identical or similar to those that already have been adjudicated.'") (citations omitted).

## IV.    CONCLUSION

For the foregoing reasons, this Court respectfully **RECOMMENDS** dismissal of the action and denial of the motions for sanctions. Pursuant to 28 U.S.C. § 636(b)(1), Rule 72(b)(2), and Local Civil Rule 72.1(c)(2), the parties are advised that they may file any objections to this Report and Recommendation within fourteen days of service of a copy thereof. The Clerk of Court is directed to serve a copy of this Report and Recommendation on Plaintiff.

   /s/ *André M. Espinosa*    
ANDRÉ M. ESPINOSA
United States Magistrate Judge

Dated: June 13, 2025

# **APPENDIX**

A-3950-1773

**F I L E D**
**APPELLATE DIVISION**

Christine Gillespie, Pro Se
23 Cliffside Drive
Livingston, N.J. 07039
(973) 953-9564

**JUN 0 5 2018**

CLERK

A-3950-17 T3

|  | SUPERIOR COURT OF
|  |   NEW JERSEY
|  | APPELLATE DIVISION
|  | OAL DKT. NO.: EDUTH 03399-
|  | 2003N

CHRISTINE GILLESPIE,        |

  Appellant,                |            Civil Action

                           |  Lower Court:
                           |  Office of Administrative
        v.                 |  Law
state Operated School
District City of Newark     |    NOTICE OF *MOTION TO FILE APPEAL* W/TIME
                           |  For Judicial Review
                           |  OF ALJ GERSON'S' OAL'S
                           |  CORAM NON  JUDICE ACTION&
                           |  VOID DECISION  OF 6/9/16
                           |  PURSUANT TO **Rule 2:2-) (2)**;
                           |  **Rule 4:50-3; AND TOLLING** .

**PLEASE TAKE NOTICE**  that Appellant respectfully files this

motion to file  this APPEAL as within time for judicial

review of agency action  which is  brought before the court

pursuant to three(3)different rights provided by Court rules

and State law.

**PLEASE TAKE NOTICE** that this appeal is being presented

pursuant to:

**1). N.J. Court Rule 2:2-3(2) to review final decision and**

**action  of State agency ;**

RECEIVED
APPELLATE DIVISION

JUN 0 5 2018

SUPERIOR COURT
OF NEW JERSEY

**APP - 001**

1



**2). N.J. Court Rule 4:50-3,** as  ALJ Gerson's action and

decision  of 4/26/1t6  have  been  proven fraudulent and

void;

**3). tolling** ALSO renders this filing to be within time

pursuant  to  the  N.J. Appellate Division's findings  **that**

**filing of an action in one forum will toll the statute of**

**limitations during the pendency of that proceeding, its**

**pending in federal Court since last July, 2017.**


**PLEASE TAKE NOTICE** that **firstly** , this appeal is  filed

pursuant to N.J. **Court Rule 2:2-3(a)(2)** as the N.J.

Constitution, Art. VI, § 5, ¶ 4  allocates relief from

agency actions which  have caused  Petituioner/ Respondent

harm to the N.J. Superioer Court, Appellate Division.


**PLEASE TAKE ADDITIONAL NOTICE**  that **SECONDLY**  this appeal

for judicial review is filed pursuant to **N.J. Court Rule**

**4:50-3,** as  ALJ Gerson's void decision of 4/26/16 has just

been  proven to be fraudulent on 3/22/18 by the KRONOS

Attendance Records provided by the Newark Public School

district on March 22, 2018 for Homre Breton,  the ALJ'S  one

and only claimed witness,  who is a hearsay witness,. His

KRONOS Attendance Records reveal that Breton  never left the

Newark Public School  District  on 3/1/16 to attend any

2

hearing in the OAL on 3/1/16. Fraud also has a six year statute of limitations in N.J.

**PLEASE TAKE SPECIAL NOTICE** that Homre Breton's  KRONOS Attendance Records reveals that **Breton never attended any hearing in the OAL  on 3/1/16** as his Kronos attendance record  reveal that Breton never left the district on 3/1/16,thus proving ALJ Gerson's actions and decision of 4/26/16 to be  fraud and void ab initio which **N.J. Court Rule 4:50-3,** provides for the appeal of without being subject to the period of limitations. In ADDITION THE N.J. STATUTE OF LIMITATIONS FOR FRAUD IS **SIX YEAR STATUTE OF LIMITATIONS.**

**PLEASE TAKE FURTHER NOTICE** that in addition, Petitioner/ Respondent recently  discovered ALJ  Gerson's actions  and decision of 4/26/16 are  fraudulent and void ab ibnitio; they are based on the phantom hearing of 3/1/16 proven to have never been held and to be  proven fraudulent and void on the face of the record  on 3/22/18 when the district released under OPRA Homre Breton's Kronos Attendance records for March 1, 201, proving their only claimed witness at the 3/1/16 hearing was never at any  such hearing.  Nor is ther any Petitioner  at the purported hearing iof e3./1/16 and to thias very dasy no petitioner has ever come forward

3

rendering thus defaulting, as attorneys can't testify to their hearsay.

**PLEASE TAKE FURTHER NOTICE** that Homre Breton's Kronos Attendance records provided under OPERA by the on 3/23/16 prove that Breton  was at work within the Newark Public School district all day on March 1, 2016, proving that Petitioner/Respondent was made the victim of a fraudulent sham dismissal action.


**PLEASE TAKE FURTHER NOTICE** that Homre Breton  was the one and only witness, a hearsay witness, who doesn't even know Petitioner/ Respondent and is a friend and former coworker of the conspirators , he is neither a state licensed nor a degreed school or district administrator and certainly could never offer anything that would have supported the fraudulent defaced and forged attendance sheets,  his Kronos Records  provided on 3/23/18 reveal that he was never at any such hearing on 3/1/16  exposing their fraud  just twenty eight days ago,  making this well within time as **FRAUD HAS A SIX YEAR STATUTE OF LIMITATIONS IN N.J.**


**PLEASE TAKE NOTICE** that after the intervention of the Government Records Council, the district was compelled to release Homre Breton's KRONOS attendance records on 3/23/18. As of the date of this notice of appeal dated  4/21/18, ALJ

4

Gerson's action and decision of 4/26/16 have been proven to

be fraudulent and void ab initio by Homre Breton's KRONOS

Attendance Reports provided just twenty nine(29) days ago

3/23/18  and certainly makes this appeal wwell within time

as provided by the **discovery rule** , **N.J. Court Rule 4:50-3,**

**and the N.J. STATUTE OF LIMITATIONS FOR FRAUD IS SIX YEARS.**


**PLEASE TAKE ADDITIONAL NOTICE** that **THIRDLY, tolling** ALSO

renders this filing to be within time pursuant  to  the

N.J. Appellate Division's findings  **that filing of an action**

**in one forum will toll the statute of limitations during the**

**pendency of that proceeding.** Mitzer v. West Ridgelawn

Cemetary Inc. 709 A2d 825  (N.J.Supwer.Ct., App. Div. 1998.


**PLEASE TAKE NOTICE** that the  OAL's/ALJ Gerson's action of

3/1/16  and decision of 4/26/16 illegally engaged in to

illegally address **non board sponsored charges**  as tenure

charges, pursuant to ultra vires rules N.J.A.C.6A:3-5.1 et

seq. seq. claiming N.J.S.A.18A:7A-39 as authority which

have been and continue to be  pending in  Federal District

Court since July, 2017, as Dkt No. 2:17-cv-04402(ES)(SCM),

**tolls** any statute of limitations on Appellant's refiling of

this current appeal.

**PLEASE TAKE NOTICE** that neither ALJ Gerson nor the OAL are in  any way prejudiced by the refiling of this appeal as they  have  been on continuous notice since 6/14/16 to prepare their  defense  for their coram non judice void ab initio actions in violation of their oaths of office, State and federal laws,  and in violation of the U.S. and N.J. Constitutions.

**PLEASE TAKE NOTICE** that this re-filing is made necessary due to  the Appellate Court's error in dismissing the original appeal in this case, Docket No. A-004364, believing Appellant should have filed a brief in the case when the Appellate Court's order consolidating this case with Docket No. A-004369  was in litigation at the time on an interlocutory appeal before the N.J. Supreme Court, which denied the Appellate Court of its jurisdiction to act on consolidation of the cases and therefore the initial appeal was wrongly dismissed.

Respectfully submitted,

*Christine Gillespie*

Christine Gillespie, Pro Se

6

Christine Gillespie, Pro Se
23 Cliffside Drive
Livingston, N.J.07039
Aopril *30,* 2018
(973) 953-9564

Clerk of the Court
N.J. Superior Court
Appellate Court
Richard J Hughes Justice Complex
25 W. Market Street
Trenton, N.J. 08625

            Re: Christine Gillespie v. Commissioner Hespe
                        State DOE/BOE

Dear Clerk of the Court,

        I am the  Appellant, Pro Se in the above referenced *in support of motion to file out of time*
appeal. Please accept this letter-brief to identify the court
rules and the Appellate Court Decisional Law which grant

Appellant the right to file this appeal under as being timely.

        **This appeal is not being filed under Court Rule 2:4-4**

therefore Court Rule 2:4-1(b) is not applicable **This appeal is
not being filed under Court rule 2:4-1(b)** .

        Instead, this appeal for judicial review of agency action

and decision of 4/26/16 is timely filed before the court pursu**ant**

to three(3)different rights provided by the N.J. Constitution

Court rules and State law.

This appeal is being presented to the court  pursuant to

the following court rules and pursuant to the Court's decisional

law on tolling.   **1)**.**N.J. Court Rule 2:2-3(2)** to review final

decision and action  of State agency caused by ultra vires Quasi

legislative act N.J.A.C.6A:3-5.1 et seq.  **2)N.J. Court Rule**

1

**APP - 008**

**4:50-3** as Commissioner's decision of 6/9/16 was recently *fraudulent* proven void on 3/22/18 by Newark Public Schools with the KRONOS attendance records for Homre Breton which proved that Homre Breton was at work in the district the entire day on March 1, 2016 and never was at any hearing in the OAL on March 1, 2016 as fraudulently claimed.

**3).** Pursuant to this Court's **holding on "tolling" in   Mitzer v. West Ridgelawn Cemetary Inc.** 709 A2d 825  (N.J.Super.Ct., App. Div. 1998 as the legality of Commissioner's jurisdiction is pending in Federal District Court since July, 2017, as Dkt No. 2:17-cv-04402(ES)(SCM), which **tolls** any statute of limitations on Appellant's refiling of this current appeal.

**To reiterate, Appellant has been provided three different rights to file this appeal for judicial review of agency**

      **Firstly** , this appeal is filed pursuant to N.J. **Court Rule 2:2-3(a)(2)** as the N.J. Constitution, Art. VI, § 5, ¶ 4 allocates relief from agency actions to the Superior Court, Appellate Division for agency's failure to act in accordance with law and constitutional rights and failure to provide Petitioner/Respondent the duty owed.

      **SECONDLY** this appeal for judicial review is filed pursuant to **N.J. Court Rule 4:50-3,** as Commissioner Hespe's decision of 6/9/16 has recently been proven to be fraudulent and void on the face of the record by Homre Breton's KRONOS attendance records provided by the Newark Public School District

2

on  May 6, 2016, while  **also committing  federal mail fraud**.


**3)**. Pursuant to this Court's **holding  on "tolling" in   Mitzer v.**
**West Ridgelawn Cemetary Inc.** 709 A2d 825  (N.J.Super.Ct., App.
Div. 1998.The  statute of limitations is tolled for the filing
this appeal  as the legality of  the ALJ's jurisdiction to
violate mandatory State law,  to illegally address non board
sponsored charges as being tenure charges pursuant to
N.J.A.C.6A:3-5.1 et seq., which claim N.J.S.A.18A:7A-39 as
authority to violate State law, to deny Petitioner/Respondent's
vested property rights, to deny her equal protection of the law,
to impair the state's obligation in contract, to impinge upon her
state created substantive rights, to induce breach of her
contract with NPS **has been and continues to be pending in U.S.**
**District Court since July, 2017, as Dkt No. 2:17-cv-**
**04402(ES)(SCM),** which  **tolls** any statute of limitations on
Appellant's refiling of this current appeal.
**To reiterate, Appellant has been provided three different rights**
**to file this appeal for judicial review of agency action and**
**decision purportedly rendered by ALJ Gerson on 4/26/16** .

        **Firstly** , this appeal is  filed pursuant to N.J. **Court**
**Rule 2:2-3(a)(2)** as the N.J. Constitution, Art. VI, § 5, ¶ 4
allocates relief from agency actions and decisions to the
Superior Court, Appellate Division for agency's failure to act in
accordance with law and constitutional rights and failure to

3

Div. 1998, as the Commissioner's actions taken in violation of his only enabling statute N.J.S.A.18AL6-16 of the Tenure Employee Hearing Law, based on N.J.A.C.6A:3-5.2 et seq ., which claim N.J.S.A.18A:7A-39 as the legal · authority for the Commissioner to exceed his jurisdictional limitations, has been pending and continues to be pending in Federal District Court since July, 2017, as Dkt No. 2:17-cv-04402(ES)(SCM), which **tolls** any statute of limitations on Appellant's refiling of this current appeal.

Neither the Commissioner nor the State BOE/DOE are in any way prejudiced by the refiling of this appeal as theY have been on continuous notice since 12/29/15 to prepare their defense for their coram non judice void ab initio actions in violation of their oaths of office, State and federal laws, and in violation of the U.S. and N.J. Constitutions.

✗ This re-filing is made necessary due to the Appellate Court's error in dismissing the original appeal in this case, Docket No. A-004369, believing Appellant should have filed a brief in the case when the Appellate Court's order consolidating this case with Docket No. A-004364 was in litigation at the time on an interlocutory appeal before the N.J. Supreme Court, which denied the Appellate Court of its jurisdiction to act on consolidation of the cases and therefore the initial appeal was wrongly dismissed. During this time period , the fraud in this case surfaced. *Fourthly, fraud has six year statute of limitations). Breton & Krones reports proves Breton never left district to testify at any hearing in OAL on 3/1/16, therefore, as Breton is the only person, a hearsay witness, who doesn't even know me, who allowed his name to be used, and he was not at any hearing on 3/1/16, then there was no hearing, as Adams can't testify!*

The Court's courtesies in processing this appeal are appreciated.

Please find two hundred and fifty ($250.00)dollar filing fee.

April 30, 2018

Respectfully submitted,

Christine Gillespie, Pro Se

5

APP - 012

## CERTIFICATION

I, Christine Gillespie do certify and say:

1.Firstly, I would like to certify that I was away from April 11, 2018 until April  18, 2018. When I returned on April 18, 2018, I found a letter from the clerk' s office to correct the noted deficiencies  for two different appeals within fifteen days. The letter is dated 4/8/18. When I left on 4/11/18, there was no letter from the clerk's office. I don't know what date the letter arrived, but I have worked as quickly a possible to correct the noted deficiencies in two different appeals within fifteen days of  the 4/19/18 receipt of the clerks letter in  my new  mail when I arrived Home.

2. This current appeal was originally filed  within 45 days of issuance of the agency decision on 6/13/16 .

3.  The Court Consolidated this  appeal with another appeal of an agency decision which I believed would shortchange judicial review of the complete records of each which are overwhelming in the case of each of the agencies, involving different areas of jurisdiction and different violations, etc.

4. I then filed an interlocutory appeal in the N.J. Supreme Court to challenge the consolidation order.

5.This re-filing is made necessary due to  the Appellate

1

Court's error in dismissing the original appeal in this case, Docket No. A-004364, believing Appellant should have filed a brief in the case, while the Appellate Court's order consolidating this cases with Docket No. A-004369 was in litigation at the time on an interlocutory appeal before the N.J. Supreme Court, which then denied the Appellate Court of its jurisdiction to act on the consolidation order of the cases until the Supreme Court issued its decision. Therefore the initial appeal was wrongly dismissed.

6. The jurisdiction of the agency action under N.J.S.A.18A:7A-39 to deny me of my vested property rights, to deny me of equal protection of the tenure laws, and to induce the breach of my contract is presently pending before the federal district court, so the agencies are in no way prejudiced by this refiling, as they have been on continuous notice since June 13, 2016 that their abuse of their jurisdictional authorities is being challenged.


IF THE ABOVE STATEMENTS ARE WILFULLY FALSE I AM SUBJECT TO PUNISHMENT.

Christine Gillespie, Pro Se

DATE 6/1/18

2

APP - 014

ORDER ON MOTION
---------------


IN THE MATTER OF THE TENURE
HEARING OF CHRISTINE GILLESPIE

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.   A-003950-17T3
MOTION NO.   M-008619-17
BEFORE       PART S
JUDGE(S):    CARMEN MESSANO


MOTION FILED:    06/05/2018     BY:  CHRISTINE GILLESPIE

ANSWER(S)        08/09/2018     BY:  COMMISSIONER OF EDUCATION
FILED:           07/20/2018          STATE OPERATED SCHOOL DISTRICT
                                     OF THE CITY OF NEWARK


SUBMITTED TO COURT: August 16, 2018

ORDER
-----

        THIS MATTER HAVING BEEN DULY PRESENTED TO THE COURT, IT IS, ON THIS
20th day of August, 2018, HEREBY ORDERED AS FOLLOWS:


MOTION BY APPELLANT

MOTION TO FILE APPEAL AS WITHIN
TIME FOR JUDICIAL REVIEW OF ALJ
GERSON'S OAL'S CORAM NON JUDICE
ACTION & VOID DECISION OF 6/9/16
PURSUANT TO RULE 2:2-)(2);
RULE 4:50-3 AND TOLLING          DENIED


SUPPLEMENTAL:  The appeal is untimely and is dismissed with prejudice.


                         FOR THE COURT:



                         _____
                         CARMEN MESSANO, P.J.A.D.


67-2/03    STATEWIDE
ORDER - REGULAR MOTION
MAM

APP - 015

C  1137 SEP 2018   ~~REVISED~~   081854

# NEW JERSEY SUPREME COURT

Christine Gillespie, Pro Se
23 Cliffside Drive
Livingston, N.J. 007039
(973) 953-9564

Supreme Court of New Jersey
App.Div.Number :A-003950-17T

CIVIL ACTION

IN THE MATTER OF THE TENURE
HEARING OF CHRISTINE GILLLESPIE

AMENDED BRIEF
IN SUPPORT OF
PETITION FOR CERTIFICATION

AMENDED
BRIEF IN SUPPORT OF   PETITION FOR CERTIFICATION

To: Clerk of the Supreme Court
Hughes Justice Complex
P.O. Box 970
Trenton, N.J 08625-0970

Clerk of the Appellate Division
Hughes Justice Complex
P.O. Box 006
Trenton N.J. 08625-0006

Carolyn Jones, D.A.G.
Department of Law
Hughes Justice Complex
25 W. Market Street
Trenton, N.J. 08625

Cherie L. Adams, Esq.
AGL, LLC.
1037 Raymond Blvd.,
Newark, N.J. 07102

RECEIVED

NOV 29 2018

SUPREME COURT
OF NEW JERSEY

**APP - 016**

## TABLE OF CONTENTS

Statement of Facts ........................................... 1

Legal Arguments ............................................. 3

Conclusion.................................................. 20

Authorities................................................iii

Certificate of Service...................................... v

### Arguments


### LEGAL ARGUMENT

Judicial review of administrative agency action is a matter of constitutional right in New Jersey. See N.J. Const. art. VI, § 5¶4 (allocating relief from agency actions to "the Superior Court, on terms and in the manner provided by rules of the Supreme Court, as of right")................................3

POINT I
Judicial review is nevertheless "**required**" when one or more of the following circumstances is present.:

   **I.**Where Agency **violated procedural and statutory rights** of parties in making its substantive determination, Court review is granted by the APA under Court Rule 2:2-3(a)(2) .

   **II.** Where Appellant **challenges the mechanism (procedure)** by which the agency makes its substantive determinations, court review is a right under the APA and Court Rule 2:2-3(a) (2).
**III.** Where **no other adequate judicial-type remedy is available to address grievances,** court review is under APA as any further action would be futile, resulting in further injury.
**IV.** Where the **agency acts in excess of its statutory authority and is non-discretionary**;
**V.** Where an agency has an obligation to carry out a mandatory, nondiscretionary duty and fails to carry out that duty, the **failure to carry out that duty is itself final agency action**................................4

i

## POINT II

Appellant recently received information from a woman who identified herself only as a clerk familiar with the history of the case. She informed Appellant that she has had the compelling need for some time to provide Appellant information on the illegal extrajudicial ex parte conduct between Cherie L. Adams, Esq. and ALJ Gerson, the Commissioner and others, resulting in what she labeled as some of "the most underhanded litigation tactics" that she has ever witnessed, which she said is the talk of the court. She further advised Appellant where to find evidence of the illegal extrajudicial ex parte conduct.........6

## POINT III

THERE WAS NEVER ANY HEARING IN THIS CASE ON MARCH 1,2016! There was never any fact witness to represent the Petitioner (District)present before ALJ Gerson on March 1, 2016 and there was never any Respondent present before ALJ Gerson on March 1, 2016. Thus ALJ Gerson's jurisdiction was never invoked on March 1, 2016 to enable him to even hold any hearing in this case on March 1, 2016. Without a Petitioner and without the Respondent present before ALJ Gerson on March 1, 2016, ALJ Gerson had no jurisdiction to even hold a hearing on March 1, 2016. .....................10

## POINT IV

The numerous jurisdictional failings appearing on the face of the record were the reasons for engagement ex parte actions , collusion, trickery and deceit on 4/26/16, and for the fraudulent claim that a hearing was held on 3/1/16, as ALJ Gerson has never at any time ever had any jurisdiction over this contested workers' compensation case and the non board sponsored charges which are hearsay charges, with no hearing of any kind of any kind ever provided and all fraudulent filing documents , which never produced TENURE charges. Any contrary thinking is ignorance of N.J.S.A.18A:6-11 of the *Tenure Employee Hearing Law* L.1967, C.399 with all rights continued in TEACHNJ , L.2012, C.226.....................................................................13

## POINT V

As proven by the findings of Judge Nilda Hernandez on September 19, 2011, the district was a serial offender of court orders since 2001, and comes to court with unclean hands . Thus proving the conspirators' bogus AWOL charges to be retaliatory fraud in blatant violation of workers' compensation public policy N.J.S.A.34:15-39.1 and 39.2, which carry both civil and criminal penalties...............................................15

## POINT VI

When there is a jurisdictional failing appearing on the face of the record, the matter is void, subject to vacation with

ii

APP - 018

damages, A "Lack of jurisdiction cannot be corrected by an order
nunc pro tunc. The only proper office of a nunc pro tunc order
is to correct a mistake in the records; it cannot be used to
rewrite history." E.g., Transamerica Ins. Co. v. South, 975 F.2d
321, 325-26 (7th Cir. 1992); United States v. Daniels, 902 F.2d
1238, 1240 (7th Cir. 1990); King v. Ionization Int'l, Inc., 825
F.2d 1180, 1188 (7th Cir. 1987). And Central Laborer's Pension
and Annuity Funds v. Griffee, 198 F.3d 642,644(7th cir.1999)......18

## **LEGAL AUTHORITIES**

### **FEDERAL CASES**

Bowen v. Michigan Academy of Family Physicians supra 476 U.S. at
675.................................................................4

*Central Laborer's Pension and Annuity Funds v. Griffee, 198
F.3d 642,644(7thcir.1999)*........................................*11*

*Earle v McVeigh,91 US 503, 23 L Ed 398.*...........................*5*

*Gonzales v. Buist. (04/01/12) 224 U.S. 126, 56 L. Ed. 693, 32 S.
Ct. 463.*..........................................................*11*

*King v. Ionization Int'l, Inc., 825 F.2d 1180, 1188 (7th Cir.
1987)*.............................................................*11*

*Renaud v. Abbott, 116 US 277, 29 L Ed 629, 6 S Ct 1194.*...........*5*

*Sabariego v Maverick, 124 US 261, 31 L Ed 430, 8 S. Ct. 461.*.......*5*

*Sierra Club v. Thomas, 828 F.2d 783, 793(D.C. Cir. 1987)*........*5,23*

*Transamerica Ins. Co. v. South, 975 F.2d 321,325-26(7th Cir.)*..*23*
*1992)*............................................................*11*

*Trinsey v. Pagliaro, D. C. Pa. 1964, 229 F. Supp. 647.*..........*12*

*United States v. Daniels, 902 F.2d 1238, 1240 (7th Cir. 1990)*..*11*

*iii*

*United States v. Lovasco (06/09/77) 431 U.S. 783, 97 S. Ct. 2044, 52 L. Ed. 2d 75*..............................................................11

*Utah wilderness Alliance v. Norton, 301 p.3d 1217,1229 ( 2002)*.................................................................5,12


**STATE CASES**

*Giuseppe Zito v. Aic N.J.Super Docket No. A1070-10T2.*....................8

*Heritage Bank, N.A. v. Ruh, 191 N.J.Super. 53,71-72,465 A.2d* ..18

*547 (Ch.Div.1983). Untermann v. Untermann, supra, 19 N.J. at 518,117 A.2d 599* .............................................................19

*Untermann v. Untermann, supra, 19 N.J. at 518, 117 A.2d 599.*........19


OTHER
*Barbara Kate Ripa, California Lawyer*..............................19

iv

## Certificate of Service

Appellant certifies that she caused two copies the amended Brief in Support of Certification and Motion to File as within time to be served on the following attorneys of record on November 26, 2018.


Cherie L. Adams, Esq.
AGL 1037 Raymond Blvd.
Newark N.J.07039


Carolyn Jones, D.A.G.
Depasrtmernt of Law
Hughes Justice Complex
Trenton, N.J.


*Christine Gillespie*
Christine Gillespie, Pro Se

v

APP - 021

## STATEMENT OF FACT

This Petition for Certification  is brought before the N.J. Supreme Court to respectfully request the Court to vacate the order rendered on August 20, 2018 by the Motion Panel of the Appellate Division of N.J. Superior Court. The order of August 20, 2018 denied Appellant's motion to file as within time her appeals for  judicial review of  the  Commissioner's void decision  of June 9, 2016, rendered beyond his jurisdiction. The Motion Panel also denied ALJ Gerson's coram non judice constitutionally repugnant  void ab initio order of April 26, 2016,  rendered without any jurisdiction whatsoever while engaging in illegal ex parte actions and collusion , committing unconscionable gross constitutional violations of Appellant's due process rights, while engaging in his own fraud upon the court.

The commissioner was disqualified as the decision maker in this case as it was his illegal tortuous interference in contracts in state operated school districts which has caused the anarchy that Appellant was made the victim of in the district and in the OAL. Nor has  the Commissioner any  jurisdictional authority to determine ALJ Gerson's jurisdiction, **AS HE WAS THE ONE WHO ILLEGALLY EXPANDED ALJ'S JURISDICTION TO ADDRESS NON BOARD SPONSORED CHARGES AND CANNOT ACT ON ALJ'S VOID DECISION.** Nor does the commissioner have any jurisdictional authority to determine ALJ Gerson's gross constitutional violations  and damages  inflicted upon Appellant by  ALJ Gerson's refusal to act

1

in accordance with law  resulting in illegal ex parte actions and collusion with conspirator who also is opposing counsel, to intentionally cause Appellant harm.

## PROCEDURAL HISTORY

Both  appeals, the appeal of the ALJ's decision of April 26, 2016, and the appeal of the  Commissioner's decision of June 9, 2016 were originally filed on June 13, 2016 and given the docket numbers of A-004364 and A-004369, respectively. Both appeals were accepted in 2016. Months later, the motion panel combined the appeals, without having any motion for consolidation before it, and without the motion panel  making any motion of its own.

Appellant then filed an Independent Action in Equity to vacate the order of consolidation with supporting  brief. When denied, Appellant filed an interlocutory appeal of the Panel's refusal to vacate its consolidation order with the N.J. Supreme Court. While the interlocutory appeal was  still before the Supreme Court, the Motion Panel erroneously dismissed Appellant's two appeals  claiming that Appellant failed to file a brief, when the Appellate Division lost jurisdiction while case was before the N.J. Supreme Court on interlocutory appeal.

The Appellate Panel was well aware that its jurisdiction was  tolled  while  that  very  issue  of  consolidation  was  on interlocutory appeal before the Supreme Court.

This is proven by the Panel itself in the letter received from the clerk dated 5/18/17 in response to Appellant's motion

2

for "RECUSAL OF JUDGE SUSAN B. REISNER from all four of Appellant's pending appeals in Docket Nos. A-004363, 004364, 004369, and 003484, all -15T3. The Clerk responded that due to the fact that one of the cases, A-004363, was in the Supreme Court, they couldn't hear the motion, stating: "**It appears that this case is in the Supreme Court and the Appellate Court cannot hear this motion as WE DO NOT HAVE JURISDICTION.**"

Yet, that same motion panel dismissed Appellant's two appeals, Docket Nos. A-004364, and A-004369, when they were before the N.J. Supreme Court on interlocutory appeal to vacate panel's order refusing to vacate its void consolidation order, while the motion panel was fully aware that it had no jurisdiction to act in the case, during the pending litigation in the Supreme Court on the very same issue of the consolidation order.

## LEGAL ARGUMENT

**Judicial review of administrative agency action is a matter of constitutional right in New Jersey.** See N.J. Const. art. VI, § 5¶4 (allocating relief from agency actions to "the Superior Court, on terms and in the manner provided by rules of the Supreme Court, as of right").

**POINT I**
**Judicial review is nevertheless "required" when one or more of the following circumstances is present.:**

I. Where Agency **violated procedural and statutory rights** of parties in making its substantive determination, Court review is granted by the APA under Court Rule 2:2-3(a)(2).

II. Where Appellant **challenges the mechanism (procedure) by which the agency makes its substantive determinations**, court review is a right under the APA and Court Rule 2:2-3(a)(2).

III. Where **no other adequate judicial-type remedy is available to address grievances**, court review is under APA as any further

3

action would be futile, resulting in further injury.

**IV.** Where the **agency acts in exceeds scope of its statutory authority and is non-discretionary,** review is always available under APA. See Bowen v. Michigan Academy, supra 476 U.S. at 675.

**V.** Where an agency has an obligation to carry out a mandatory, nondiscretionary duty and fails to carry out that duty, **the failure to carry out that duty is itself 'final agency action.**

The judicial misconduct that has been proven to exist in this case involves each of the above violations  and culminated in the most deceitful illegal extrajudicial ex parte actions with collusion between ALJ Gerson and Cherie L. Adams, Esq., acting on hearsay charges, **not tenure charges** as fraudulently claimed, no probable cause, no evidence, no pretermination hearing,  all fraudulent filing  documents, as proven within, without any fact witness, without jurisdiction over this active contested workers' compensation case which this case is and has always been and remains through this very date.

ALJ Gerson blatantly violated N.J. Administrative Law N.J.S.A.52:14F-8 which strictly prohibited ALJ Gerson's jurisdiction over this contested workers' compensation case and demanded immediate dismissal of the case. His refusal to obey law and to dismiss this contested workers' compensation case, which the conspirators tried to morph into a bogus tenure case, resulted in ALJ Gerson's  blatant violations of  the Exclusivity Provision of the N.J. Workers' Compensation Act, he violated the Doctrine of Res Judicata which protects the  consent court orders in this case; he violated the Doctrines of  Collateral Estoppel, Judicial Estoppel, Promisory Estoppel,  the Doctrine of Primary

4

Jurisdiction, he violated the Law of the Case Doctrine. He

violated Appellant's 1st Amendment and 14TH Amendment Due

Process Rights, he violated the Code of Conduct for

Administrative Law Judges, engaging in proven extrajudicaial

exparte actions with collusion and fraud with Cherie L. Adams,

Esq.; he violated his oath of Office, and he committed treason to

the Contract Clause, the 1ST and the 14th Amendment of the U.S.

Constitution,and parallel provisions of the N.J. Constitution.

**It is a fundamental doctrine of law that a party to be affected by a personal judgment must have his day in court, and an opportunity to be heard.** *Renaud v. Abbott*, **116 US 277, 29 L Ed 629, 6 S Ct 1194. Every person is entitled to an opportunity to be heard in a court of law upon every question involving his rights or interests, before he is affected by any judicial decision on the question.** *Earle v McVeigh*,**91 US 503, 23 L Ed 398.**
**A judgment of a court without hearing the party or giving him an opportunity to be heard is not a judicial determination of his rights.** *Sabariego v Maverick*, **124 US 261, 31 L Ed 430, 8 S. Ct. 461, and is not entitled to respect in any other tribunal.**
**The law requires proof of jurisdiction to appear on the record of the administrative agency and all administrative proceedings."**
**Hagans v. Lavine 415 U.S.533.**
The substantive violations were complete when they occurred.

ALJ Gerson never at any time had any jurisdiction to ever act on

non-board sponsored charges, to claim they are tenure charges is

an insult to intelligence, fraud upon the court, and is in

ignorance/violation of N.J.S.A.18A:28-5, 18A:6-11, 52:14B-10.1.

"Where an agency has an obligation to carry out a mandatory,
nondiscretionary duty and fails to carry out that duty, the
**failure to carry out that duty is itself 'final agency action.'"**
*S. Utah Wilderness Alliance* v.*Norton,* 301 F.3d 1217, 1229 (10th
Cir. 2002) (applying similar federal APA provision, 5 U.S.C. §
551(13)); see also *Sierra Club* v. *Thomas,* 828 F.2d 783, 793 (D.C.
Cir. 1987) ("**[I]f an agency is under an unequivocal
statutory duty to act, failure so to act constitutes,in**

APP - 026

**effect, an affirmative act that triggers 'final agency action' review."**N.J.S.A.52:14F-8 and 52:14B-10.1 mandated ALJ's immediate dismissal of this contested workers' compensation case.

**POINT II**

Appellant recently received information from a woman who identified herself only as a clerk familiar with the history of the case. She informed Appellant that she has had the compelling need for some time to provide Appellant information on the illegal extrajudicial ex parte conduct between Cherie L. Adams, Esq. and ALJ Gerson, the Commissioner and others, resulting in what she labeled as some of **"the most underhanded litigation tactics"** that she has ever witnessed, which she said is the talk of the court. She further advised Appellant where to find evidence of the illegal extrajudicial ex parte conduct.

Based on the information provided, Appellant was advised to research the ICLE 2016 SCHOOL LAW CONFERENCE for herself, to discover the extrajudicial ex parte communications and collusion between ALJ Gerson and Cherie L. Adams, Esq., which Appellant was informed culminated in ALJ Gerson allowing Adams to write his fraudulent decision of April 26, 2016 **'to meet her specs'** , which Appellant had already suspected because the fraudulent statements are not part of the record and ALJ Gerson would have never been able to refer to specific dates. The fraudulent decision of 4/26/16 which Appellant received on May 6, 2016, claims that a hearing was held over two months prior in the OAL on March 1, 2016 , just four days after their ex parte association on 2/26/16. The decision fraudulently claims there was a hearing in the OAL on 3/1/16, when no such hearing was ever held. As the clerk knew Appellant's name, phone number and the history of Appellant's case, the clerk, who remained anonymous, most likely is employed in either the OAL, AGL LLC, the Department of Law, the Appellate Division, the State DOE,

6

APP - 027

or the Administrative Office of the Courts.

Appellant's follow-through investigation into the ex parte relationship between ALJ Gerson and Cherie L. Adams, Esq., which Appellant was advised to investigate by the anonymous clerk revealed that Adams reportedly sought and received permission to organize and present an ICLE course: "The All New 2016 School Law Conference" on February 26, 2016 at Renaissance Woodbridge Hotel , 515 U.S. Highway 1, S. Islen, N.J.  Of all the administrative law judges in the State of New Jersey who would have been anxious to appear, receive acclaim and be paid to speak at the 9:00 a.m. to 3:30 p.m. NJICL Conference, Cherie L. Adams, Esq. reportedly selected ALJ Jeffrey Gerson. (Ex. 1) According to rules for judicial conduct, ALJ Gerson was obligated to inform Appellant that he was to engage in extrajudicial ex parte communications with Cherie L. Adams, Esq. which were not authorized by law. ALJ Gerson's ex parte conduct with conspirator, who is also the purported Petitioner's representing counsel, Cherie L. Adams, Esq., was improper and should be "condemned" by the court as it is unethical and unprofessional, which culminated in their collusion and their criminal activity to intentionally set Appellant up by falsely claiming there was a hearing on March 1, 2016, claiming Appellant never attended, to inflict egregious harm upon Appellant.

ALJ Gerson and Cherie L. Adams, Esq. engaged in illegal ex parte actions which culminated in the criminal fabrication of

7

ALJ Gerson's fraudulent decision of 4/26/16 ,involving the
court's own fraud upon the court ,extrinsic fraud upon Appellant
perpetrated upon her with the fraudulent decision of 4/26/16
reportedly written by Cherie L. Adams, Esq., involving RICO
violations of  mail fraud, wire fraud and internet fraud,
illegally robbing Appellant of  due process and liberty rights,
illegally terminating her permanent contract with the district
with no tenure charges before him , based on  nothing but the
conspirators' privately orchestrated bogus AWOL charges, which
are hearsay. The privately orchestrated bogus AWOL charges  are
proven hearsay charges to the newly hired clerk: Ann Marie
McGoldrick,  hired by the district on 7/01/02 and was used by the
conspirators to falsely  swear that Appellant was AWOL from
9/04/01 through  6/15/02, which is a period of time  McGoldrick
never even worked in the district, had no personal knowledge, and
the hearsay could never rise to the level of probable cause.

"HEARSAY in an affidavit or certification is not to be considered
by the judge pursuant to court rules 1:6-6." Giuseppe Zito v. Aic
N.J.Super Docket No. A1070-10T2.
    ALJ  Gerson permitted and engaged in  extrajudicial *ex parte*
communications with Cherie L. Adams, Esq. outside the presence of
Appellant, who was  the respondent in the impending  proceeding,
engaging in criminal conduct. This was because they knew they had
no legal authority to ever hold any hearing. In addition,
Appellant would have never represented herself in a defense
situation, she would have had an attorney represent her if there
was any chance of a hearing. Appellant informed ALJ Gerson and

8

the OAL of that fact in May, 2010, when she removed her union attorney for ineffectiveness of counsel, as he had a conflict of interest in presenting arguments in this case which he failed to present in prior cases. Appellant only was a pro se litigant in offensive litigation, **not defensive litigation**. In October, 2010 she filed her motion to dismiss identifying over a dozen independent reasons why ALJ Gerson did not have jurisdiction in this case.According to rules for judicial conduct, ALJ Gerson was obligated to inform Appellant that he was to engage in extrajudicial exparte communication with Cherie L. Adams, Esq. , which was not authorized by law.

Their obvious goal was to get rid of the case in 2016, as ALJ Gerson was planning retirement and he had to clear his case list, Commissioner Hespe was retiring in June, 2016, and the Newark Public School district was returning to self governance on July 1, 2016. They couldn't risk the fraudulent filing documents moving on to a new judge, nor could they allow the NPS District's new board to discover their fraud. And, Appellant's case continued to be a contested workers' compensation case, despite the conspirators' three illegal ex parte actions with proven judicial bribery with retiring workers' compensation judges to illegally get the case dismissed in 2006, 2009, and again in 2015, in effort to quickly push through their bogus charges in the OAL. Each time, of course, they never provided Gillespie notice to intentionally keep her away from the Workers'

9

Compensation Court, as otherwise Gillespie's statements on record would have prevented dismissal. And each time  N.J. Workers' Compensation Law, <u>N.J.S.A.</u>34:15-54, automatically rendered the order of dismissal void  for violations of  Appellant's  due process rights to notice and right to be heard before a property right is denied.The case was always restored to active case list.

The conspirators  used their same method of operation with ALJ Gerson. ALJ Gerson's decision  of 4/26/16 claiming the very same method of fraudulent ex parte conduct,  illegally claiming to have dismissed Appellant from her teaching position,  denying Appellant of her property rights without providing her due process rights to **NOTICE AND CHANCE TO RESPOND**, automatically rendered ALJ Garson 's coram non judice order of 4/26/16 void .

**POINT III <u>THERE WAS NEVER ANY HEARING IN THIS CASE ON MARCH 1,2016!</u>** There was never any fact witness to represent the Petitioner(District)present before ALJ Gerson on March 1, 2016 and there was never any Respondent present before ALJ Gerson on March 1, 2016. Thus ALJ Gerson's jurisdiction was never invoked on March 1, 2016 to enable him to even hold any hearing in this case on March 1, 2016.  Without a Petitioner and without the Respondent present before ALJ Gerson on March 1, 2016, his jurisdiction to  hold a hearing on 3/01/2016 was never invoked.

"Before a court (judge) can proceed judicially, jurisdiction must be complete consisting of two opposing parties (not their attorneys) - although attorneys can enter an appearance on behalf of a party,only the parties can testify and until the "PLAINTIFF"/"PETITIONER"  testifies, the court has no basis upon which to rule judicially), and the two halves of subject matter jurisdiction = the statutory or common law authority the action is brought under (the theory of indemnity) and the testimony of a competent fact witness regarding the injury (the cause of action). <u>If there is a jurisdictional failing appearing on the face of the record, the matter is void, subject to vacation with damages</u>, a "Lack of Jurisdiction"

10

cannot be corrected by an order nunc pro tunc. The only proper office of a nunc pro tunc order is to correct a mistake in the records; it cannot be used to rewrite history." E.g., Transamerica Ins. Co. v. South, 975 F.2d 321, 325-26 (7th Cir. 1992); United States v. Daniels, 902 F.2d 1238, 1240 (7th Cir. 1990); King v. Ionization Int'l, Inc., 825 F.2d 1180, 1188 (7th Cir. 1987). And Central Laborer's Pension and Annuity Funds v. Griffee, 198 F.3d 642, 644(7th cir. 1999).

The fact that there was never any hearing in this case on March 1, 2016 presents a constitutionally repugnant jurisdictional failing on the face of ALJ Gerson's decision of April 26, 2016, its called "FRAUD" and is subject to dismissal with damages.To this very day no State licensed district or school administrator has ever stepped forward to take credit for such fraud, and Attorneys can't testify for their client, they are either the counsel or the client they can't be both.Pursuant to U.S.Supreme Court law,  Cherie L. Adams' Esq could not testify in this case.

"Manifestly, [such statements] cannot be properly considered by us in the disposition of [a] case." United States v. Lovasco (06/09/77) 431 U.S. 783, 97 S. Ct. 2044, 52 L. Ed. 2d 752, "Under no possible view, however, of the findings we are considering can they be held to constitute a compliance with the statute, since they merely embody conflicting statements of counsel concerning the facts as they suppose them to be and their appreciation of the law which they deem applicable, there being, therefore, no attempt whatever to state the ultimate facts by a consideration of which we would be able to conclude whether or not the judgment was warranted." Gonzales v. Buist. (04/01/12) 224 U.S. 126, 56 L. Ed. 693, 32 S. Ct. 463.

THERE IS NO PETITIONER !To this very day no state licensed district or school administrator has ever stepped forward to take credit for the non-tenure charges.  This is the reason for the criminal exparte actions and collusion because in addition to over the dozen other reasons Appellant won case by DEFAULT !

11

Simultaneously occurring in the District in December 2002 was the Newark Board of Education's decision that it was not going to recommend the renewal of State District Superintendent (**SDS**) Marion Bolden's contract, to the N.J. State Board of Education; the board voted to recommend Superintendent Sam Snead from Connecticut to replace SDS Bolden.

Bolden had one and a half million and a half $1,500,000.00) dollars in contract payments at stake through June, 2008, and a one hundred and fifty thousand ($150,000.00) dollar a year in pension payments after that.

Bolden needed her supporters elected to the board in April, 2003 and to oust the current board members up for reelection.

Bolden needed the conspirators' help among others to help get her supporters elected to the district's board of education at the April, 2003 election and to oust those board members up for reelection who opposed the renewal of SDS Bolden's contract.

Appellant was obviously the trade-off in the deal, State District Superintendent Marion Bolden allowed the conspirators to retaliate against Appellant as they wished, and they were further allowed to sign SDS Bolden's name to their forged documents, while State District Superintendent Marion Bolden remained completely silent and allowed the conspirators to illegally assume the roll of district administrators, which they neither had the credentials or licenses to assume. They engaged

12

in perjury, forgery and fabrication of documents and evidence to intentionally cause Petitioner/Respondent harm which are third and fourth degree crimes under Title 2C of the N.J. Code of Criminal Justice, while SDS Bolden remained steadfastly silent , a sign of fraud. Even after the documents bearing her forged signatures were exposed as being fraudulent, on 3/30/09, by the district itself with OPRA  records, Bolden never said a word.

**POINT IV**
**The numerous jurisdictional failings appearing on the face of the record were the reasons for engagement ex parte actions , collusion,  trickery and deceit on 4/26/16,  and for the fraudulent claim that a hearing was held  on 3/1/16, as ALJ Gerson has never at any time ever had any jurisdiction over this contested workers' compensation case and the non board sponsored charges which are hearsay charges, with no hearing  of any kind ever provided and  all fraudulent filing documents , which never produced  TENURE charges. Any contrary thinking is ignorance of N.J.S.A.18A:6-11 of the *Tenure Employee Hearing Law*  L.1967, C.399 with all rights continued in TEACHNJ , L.2012, C.26.**

• There were never  any board sponsored tenure charges nor valid charging documents to ever invoke ALJ Gerson's jurisdiction under **N.J.S.A**.52:14B-10.1, which  automatically denied ALJ Gerson of all jurisdiction to proceed in this workers' comp case.

• They also  never had any fact witness to represent the district, a gross jurisdictional failing, rendering decision of 4/26/16 void and subject to dismissal with damages .

• They never had any state licensed district or school administrator who has ever come forward in over thirteen years to represent the district as a fact witness. This is because Appellant  was never disciplined by any of her immediate

13

APP - 034

supervisors because she was never out on her own volition.

- Appellant was never determined by the district's own treating workers' compensation doctors to be as far restored as the nature of her injuries will permit and was never released to return to regular work duty by any of the district's workers' compensation treating doctors;

- Without the required medical release, Appellant's court ordered and district approved and executed period of total temporary disability continued .

- Even the district's own medical director, Dr. Ernesto De Fazio, MD. never provided Appellant the required preadmission physical examination to enable Appellant to return to regular work duty and never provided the required medical clearance to even allow Appellant to return to regular work duty.

- And, the risk manager and TPA can't illegally unilaterally terminate medical treatment and benefits in violation of consent court orders of 3/8/00 and 9/22/00.

This situation was caused by two attorneys delving into two bodies of law they knew nothing about in December, 2002,- BOTH WORKERS' COMPENSATION LAW AND TENURE LAW. Neither had ever handled a workers' compensation case, and according to OPRA documents provided by the OAL, neither had ever handled a teacher tenure case. They were obviously convinced they could manipulate the administration of the OAL as they had already proven by their past history of being able to do, only to have

14

their dreams broadsided by Administrative Law N.J.S.A.52:14F-8.

Every due process violation that can possibly exist in such a case is personified in this case.

- Violation of Public Policy Workers Compensation Law N.J.S.A.34:15-39.1;
- Violation of Public Policy Tenure Law, N.J.S.A.18A:28-5 , 18A:6-11 mandating the fixed imperative terms set by the N.J.Legislature which must be strictly implemented to terminate a permanent contract with a tenured employee, which ALJ Gerson violated, rendering his decision of 4/26/16 further void, as he had no jurisdiction to terminate Appellant's contract.
- Violation of district policy the Attendance Improvement Policy, Appellant never disciplined.
- Breach of CBA between NPS and NTU Article V, Section I Fair Labor Practice;
- Denial of due process rights, denied the tenure hearing mandated by the tenure laws and contract; the inhumane delay of 13 years caused by ALJ Gerson illegally holding this contested workers' compensation case on the inactive for thirteen years when he had no jurisdiction to do so is outrageous and has caused Appellant catastrophic loss, immeasurable harm numerous constitutional in juries
- Retroactively denied long held vested property rights to board sponsored tenure hearing
- **Documented CEPA violations.**
- Illegally suspended without pay without due process of law since March 1, 2003.
- No post termination hearing can cure the substantive due process violations that exist making any such hearing an additional constitutional violation.
- ALJ has no jurisdiction over a contested workers' compensation case as the ALJ's jurisdiction is prohibited by N.J.S.A.52:14F-8.
- The Delay has been tortuous abuse of process , malicious prosecution and criminal, and has been in violation of Gillespie's due process rights and is constitutionally repugnant , which has caused her catastrophic loss, immeasurable harm numerous constitutional in juries.It's been in blatant violation of his only enabling statute N.J.S.AS.52:14B-10.1 which mandates expedited hearings for all cases except in cases where criminal charges are also filed, thus ALJ's decision of 4/26/16 is TIME BARRED for violations of the built in statute of limitations of N.J.S.A52:14B-10.1. He lost competency to proceed in the case in 2003!

**POINT V**
As proven by the findings of Judge Nilda Hernandez on September 19, 2011, the district was a serial offender of court orders since 2001, and comes to court with unclean hands . Thus proving the conspirators' bogus AWOL charges to be retaliatory fraud in blatant violation of workers' compensation public policy N.J.S.A.34:15-39.1 and 39.2, which carry both civil and criminal penalties.
ALJ Gerson allowed himself to be drawn into a criminal situation

and reportedly allowed Cherie L. Adams, Esq, to write his

decision of 4/26/16. Obviously ALJ Gerson forgot the Cherie L.

Adams, Esq, outright denied on record, on page 100 of the

transcript of the 2/04/11 hearing that she didn't know this is a workers' compensation case. She orchestrated, determined certified, filed, prosecuted her fraud, and never read response. ALJ Gerson obviously also forgot that he admitted on record on page 99 of the transcript of the 2/04/11 hearing that he has "a thousand (1,000) pages, if not more" of Appellant's testimony before him and he also had another two hours of her oral testimony on the tape of that 2/4/11 hearing, testifying to the fact that ALJ Gerson had absolutely no jurisdiction to act in this contested workers' compensation case, on non board sponsored charges which can never become tenure charges!

Appellant is the only litigant who has ever testified in the case. Consequently, ALJ Gerson not only had no jurisdiction to terminate Appellant's permanent contract with the district, but he never had any testimony and facts on record that would have ever supported his coram non judice illegal termination of Appellant's permanent contract with the district, which is contrary to N.J.S.A18A:28-5,6-11; rendering 4/26/16 decision void.

ALJ Gerson further also forgot that during the hearing on May 9, 2012, to address Appellant's Motion for stay during her appeal of ALJ Gerson's void order of 4/27/11 refusing to dismiss case for lack of jurisdiction, - that Adams very profoundly verbally denied for the second time having any knowledge of this case being a workers' compensation case, and loudly blurted out in court: "**I DIDN'T KNOW IT WAS A WORKERS' COMPENSATION CASE**!"

Adams' statement, during Appellant's testimony, was in attempt to distance herself from the finding of Judge Hernandez, J.W.C. made on September 19, 2011 that the district is in contempt of consent court orders since 2001, finding the district to be a serial offender of workers' compensation court orders since 2001 and also found that the district comes to court with unclean hands. Yet ALJ Gerson signed the decision of 4/26/16 that he reportedly allowed Cherie L. Adams, Esq. to write for him, making all fraudulent claims that Appellant's workers' compensation case ended in 2000, when there are no such statements in the record and are proven to be outright lies made by ADAMS in her obvious effort to escape the consequences for the conspirators' fraudulent retaliatory discharge action in blatant violation of workers' compensation public policy <u>N.J.S.A</u>.34:15-39.1 and 39.2 , which carry both criminal and civil penalties.

**The sanction of the Clean Hands Doctrine was placed upon Respondent(W.C.)/Petitioner(OAL) in the originating Workers' Compensation case, Claim Petition No. 2008-18157. On September 19, 2011, the dirtiness of Respondent's hands forced the court to rule** *sua sponte* **that Respondent "comes to the court with** <u>unclean hands."</u>

On page 7, lines 17-20 and 23-25, and on page 8, lines 1-6, of the transcript of that 9/19/11 hearing, Judge Hernandez found:

> "The Court's review of the state file does reveal that the Respondent **cancelled sua sponte and unilaterally without Court leave a scheduled surgery in 2001 to improve a work-related thumb condition for each hand.**

> "The surgery was scheduled and agreed to per a consent Order executed by Judge Kumpf. Technically,

without ever having been addressed by Judge Tuber the **Respondent is in contempt of that Order.**

"As the Court weighs the adverse interest, it finds that **but for the Respondent's conduct the scheduled surgeries would have taken place a decade ago.** **The Respondent comes to the court with unclean hands**." (Emphasis added.)

Judge Hernandez rendered her finding sua sponte on September 19, 2011 which speaks volumes of the fact that Appellant was certainly not AWOL from 9/4/01 through 6/15/02 as medical restoration to MMI was maliciously withheld by risk manager.

**"When hands are particularly filthy, the court on its own may apply unclean hands on public policy grounds to protect the court's integrity."** "The Dirt on Unclean Hands," Barbara Kate Ripa, *California Lawyer*.

**"The Clean Hands Doctrine exists to be invoked where the totality of the circumstances demand, unless it is to become meaningless, empty verbiage. Equitable maxims should serve as more than buzzwords to trigger equitable jurisdiction.** *Heritage Bank,N.A.v.Ruh,*191N.J.Super.53,465A.2d CH.Div.1983.

POINT VI

When there is a jurisdictional failing appearing on the face of the record, the matter is void, subject to vacation with damages, A "Lack of jurisdiction cannot be corrected by an order nunc pro tunc. The only proper office of a nunc pro tunc order is to correct a mistake in the records; it cannot be used to rewrite history." E.g., Transamerica Ins. Co. v. South, 975 F.2d 321, 325-26 (7th Cir. 1992).

**THE FOLLOWING ARE JUST SEVERAL OF THE NUMEROUS JURISDICTIONAL FAILINGS APPEARING ON FACE OF RECORD RENDERING ALJ'S 4/26/16 DECISION VOID SUBJECT TO VACATION WITH DAMAGES:**

**1.** The ten jurisdictional elements of N.J.S.A 18A:6-11 are the only mandatory jurisdictional elements that can produce a tenure hearing and produce tenure charges and which must be implemented before the district ever could acquire jurisdiction under said law to certify any charges to the commissioner. The ABSENCE of the main jurisdictional element: **the mandatory quorum of the full membership of the board,** proves there were never any board sponsored charges as mandated by N.J.S.A 18A:6-11 ever pending before ALJ Gerson to ever invoke his jurisdiction under his only enabling statute N.J.S.A.52:14B-10.1. Therfore, ALJ GERSON ACTED CORAM NON JUDICE, RENDERING HIS 4/26/16 DECISION VOID, SUBJECT TO VACATION WITH DAMAGES.

**2.** N.J.S.A.18A:28-5 preempts ALJ Gerson's constitutionally

18

repugnant tortious illegal interference in Appellant's contract acting on hearsay charges without any jurisdiction to do so to illegally terminate Appellant's permanent contract with the district of NPS; ALJ Gerrson is charged with knowing that ONLY fixed terms of the N.J.Legislature set in N.J.S.A.18A:28-5 can terminate a permanent contract with tenured employee.**THUS ALJ's DECISION OF 4/26/16 IS VOID, SUBJECT TO VACATION WITH DAMAGES.**

**3.** There is the false statement on face of record that the state district superintendent can conduct tenure hearings pursuant to N.J.S.A.18A:7A-39, when N.J.S.A.18A:7A-39 doesn't even mention the word"tenure"! Nor does it relate to nor regulate tenure.**THUS DECISION OF 4/26/16 IS VOID, SUBJECT TO VACATION WITH DAMAGES.**

**4.**ALJ Gerson tried to cover for his illegal actions by claiming that SDS Bolden provided Respondent a tenure hearing pursuant to N.J.S.A.18A:7A-42(a)(3),which only regulates personnel actions with **at will employees.** Thus ALJ Gerson not only lied about SDS Bolden providing Gillespie a hearing but then he substituted N.J.S.A.18A:7A-42(a)(3) for the N.J.S.A.18A:7A-39 which he is charged with knowing neither law regulates tenure rights, and that the N.J. Legislature makes it expressly clear in N.J.S.A.1:1-11 that it would never deny vested property rights even if it repealed the entire Tenure Employee Hearing Law! **THUS ALJ'S DECISION OF 4/26/16 IS VOID, SUBJECT TO VACATION WITH DAMAGES.**

**5.** The AWOL charges are proven to be **hearsay** to the newly hired clerk Ann Marie McGoldrick, hired on 7/1/02 and was used to swear that Appellant was AWOL from 9/04/01 through 6/15/02, which is period of time McGoldrick never even worked in the District.Hearsay can't rise to level of probable cause.**ALJ'S DECISION OF 4/26/16 IS VOID, SUBJECT TO VACATION WITH DAMAGES.**

**6.** Another jurisdictional failing appearing on the face of the record, found on the filing documents is the claim that pursuant to N.J.S.A.18A:7A-39 State district superintendent Marion Bolden provided Appellant a **TENURE** hearing on 2/20/03 during which probable cause of the hearsay charges was determined and resolutions were adopted as claimed on the **Personnel Action Notice** of 2/20/02; SDS Bolden's attendance records provided by the district over six years later on 3/30/09 under OPRA prove that SDS Marion Bolden was in New Orleans on paid leave at the A.A.S.A.Conference from 2/20/03 through 2/24/03, enjoying Mardi Gras, and never provided Appellant any hearing at all on 2/20/03. **THUS ALJ'S DECISION OF 4/26/16 IS VOID, SUBJECT TO VACATION WITH DAMAGES.**

**7.** Those findings of probable cause said to have been made at

the phantom hearing of 2/20/03, were then fraudulently certified as adopted at the phantom hearing of 2/20/03 in the companion document, the **Certificate of Determination** prepared on 2/25/03, which intentionally eradicated space for the identity of the date of the 2/20/03 hearing to conceal their fraud, in effort avoid SDS Bolden being charged with perjury if ever discovered that she never provided any hearing on 2/20/03, as the certification bears SDS Bolden's forged signature; **thus the fraudulent concealment of hearing date on the Certificate of Determination is fraud upon the court rendering ALJ GERSON'S DECISION OF 4/26/16 VOID, SUBJECT TO VACATION WITH DAMAGES.**

**8.** ALJ Gerson had **no documented evidence** to support the conspirators' forged, completely defaced, redacted and erased time sheets which no self respecting clerk in payroll would have ever accepted as being valid, and which no court would have ever accepted and acted upon marking Appellant AWOL FOR AN ENTIRE SCHOOL YEAR OF 9/04/01 through 6/15/02 with no intervention by Appellant's immediate supervisors, that's ludicrous! Without providing any documented history proving the district's mandatory disciplinary policy, the **Attendance Improvement Program** was ever implemented with Appellant by any of her immediate supervisors: Ann Wilson, State District Associate Superintendent Lawrence Ashley, State District Assistant Superintendent Randall Kantor, documenting their attempts to correct the situation, which also required the mandatory conference to be held by the immediate supervisor with the employee and the Union **BEFORE ANY FORMAL DISCIPLINARY ACTION IS TAKEN, ALJ'S DECISION OF 4/26/16 IS VOID, SUBJECT TO VACATION WITH DAMAGES.**

**CONCLUSION**

ALJ Gerson's continuous failure for over a decade to carry out his NONDISCRETIONARY duties to dismiss case as mandated by N.J. Administrative Law N.J.S.A. 52:14B-10.1 and N.J.S.A. 52:14F-8 and tenure law N.J.S.A. 18A:6-13 is considered to be **final agency** action under the APA subject to review under court rule 2:2-3(a)(2). Void orders are never time barred and can be repeatedly challenged.

<u>DATE 11/21/18</u>

Respectfully submitted,

*Christine Gillespie*

Christine Gillespie, Pro Se

20

# EXHIBIT 1

APP - 042

The All-New 2016 School Law Conference

Page 1 of 3

| CLE Programs | CLE On-Demand | CLE On CD | New Attorneys | Book Store | Your Portfolio | Your CLE Transcripts |

Return to previous page

### The All-New 2016 School Law Conference

Closed

List Price: $220.00 USD

Format/Skill Level: Meeting

Location:     Renaissance Woodbridge Hotel
              515 US Highway 1 S Iselin, NJ 08830-3010

**Want to save more?**

Log in to see if you qualify for a lower rate.

Date:         February 24, 2016

Time:         9:00 AM - 3:30 PM ET

Add to Calendar

NJSBA & NJSBA Section/Committee members are eligible for special discounts - login to see your discounted rate for this program.

Presented in cooperation with the NJSBA School Law Committee

*As revealed by clerk : Exparte Action*

Moderator/Speaker:

**David B. Rubin, Esq.**
Law Offices of David B. Rubin (Metuchen)

**Rebecca K. Spar, Esq.**
Cole Schotz, PA (Hackensack)

Speakers include:

*Keynote Speaker:*
**John Mooney**
Chief Executive Officer, Founding Editor
NJ Spotlight

**Hon. Jeffrey A. Gerson, ALJ**
(Newark)

**Cherie L. Adams, Esq.**
Adams Gutierrez & Lattiboudere, LLC (Newark)

**Lenore Boyarin, Esq.**
Sussan Greenwald & Wesler (Cranbury)

**Carolyn R. Chaudry, Esq.**
Schwartz Simon Edelstein & Celso (Whippany)

**Steven R. Cohen, Esq.**
Selikoff & Cohen, PA (Mount Laurel)

**Assemblyman Patrick J. Diegnan, Jr.**
(South Plainfield)

**Hillary Freeman, Esq.**
Freeman Law Offices, LLC (Princeton)

**Michael Kaelber, Esq.**
New Jersey School Boards Association (Trenton)

**Paige Kowalski, MPP**
Vice President Policy and Advocacy
Data Quality Campaign (Washington DC)

Brenda K. Leong, Esq.
Senior Counsel and Operations Manager
Future of Privacy Forum (Washington DC)

Viola S. Lordi, Esq.
Wilentz, Goldman & Spitzer, PA (Woodbridge)

Isabel Machado, Esq.
Machado Law Group (Clark)

David Sciarra, Esq.
Executive Director, The Education Law Center (Newark)

Kathleen Styles, Esq.
Chief Privacy Officer,
US DOE (Washington DC)


## About The Program:

NJICLE is pleased to present the 13th Annual School Law Conference. This comprehensive program features a case law and legislative update, a timely discussion on compelling school law issues, and entirely new workshops focusing on specialized areas of school law involving regulation of staff/student relationships, charter schools, residential placements, religions and the schools, employment related issues, "stay put", and special education independent evaluations.

Whether you represent students or school districts, this panel of highly respected school law authorities will equip you with the tools you need to better represent your clients in situations that arise in the school law arena.


## Program Agenda:

| | |
|---|---|
| 9:00 | Welcome |
| 9:05 | Keynote Presentation - An interview with John Mooney |
| 10:00 | Case Law and Legislative Update - Cherie L. Adams, Esq. |
| 11:00 | Break |
| 11:10 | Plenary roundtable - Student Data Privacy - David B. Rubin, Esq.; Kathleen Styles, Esq.; Brenda K. Leong, Esq.; Paige Kowalski, MPP |
| 12:15 | Luncheon |
| 1:15 | Workshop I<br>A. Regulating staff/student relationships in person, off campus, online, etc - Steven R. Cohen, Esq.; Vittorio S. LaPira, Esq.<br>B. When is a residential placement necessary for education reasons? - Lenore Boyarin, Esq.; Rebecca Spar, Esq.; Carolyn R. Chaudry, Esq. |
| 2:35 | Workshop II<br>A. Charter School Issues - David Sciarra, Esq.; Michael Kaelber, Esq. - Viola S. Lordi, Esq., Assemblyman Patrick J. Diegnan, Jr.<br>B. Credibility determinations in special education hearings - Hon. Jeffrey A. Gerson, ALJ; Rebecca Spar, Esq.; Isabel Machado, Esq.; Hillary Freeman, Esq. |
| 3:30 | Adjourn |


## CLE Credits:

**NJ CLE Information:** This program has been approved by the Board on Continuing Legal Education of the Supreme Court of New Jersey for 6.3 hours of total CLE credit.

**NJ CLE :** This program has been approved for 6.3 credits (50 minutes hour)

**PA CLE:** 5.0 substantive credits pending ($20 fee – separate check payable to NJICLE must be submitted at the end of the program)

**NY CLE (t&nt):** 6.0 professional practice credits

Door Registration: $280
S144000W6

Would you like to fax your registration to us?
Click here for PDF Registration Form.

**Group Registrations:**
Interested in registering a group for this program? Click here for a PDF Group Registration Form.

# New Jersey Institute for Continuing Legal Education

A Division of the NJSBA
One Constitution Square, New Brunswick, NJ 08901
Phone: (732) 214-8500 · Fax: (732) 249-0383 · CustomerService@njsba.com

NJICLE is a fully accredited CLE provider in NJ, NY & PA

© Copyright 2018 New Jersey State Bar Association. All rights reserved.
Privacy Policy | Copyright Policy

SUPREME COURT OF NEW JERSEY
M-1305 September Term 2018
C-1137 September Term 2018
081854

In the Matter of the
Tenure Hearing of
Christine Gillespie

(Christine Gillespie - Movant)

**F I L E D**

AUG . 1 2019

*Heather J Baker*
CLERK

O R D E R

It is ORDERED that the motion for leave to file a petition for certification as within time (M-1305) is denied; and it is further

ORDERED that the notice of petition for certification and petition for certification (C-1137) are dismissed.

WITNESS, the Honorable Stuart Rabner, Chief Justice, at Trenton, this 30th day of July, 2019.

CLERK OF THE SUPREME COURT

APP - 046

25688

SUPERIOR COURT OF NJ
CIVIL DIVISION
ESSEX VICINAGE

2014 JAN 10 P 1:47

FINANCE DIVISION
RECEIVED/FILED
37

SUPERIOR COURT OF NJ
CIVIL DIVISION
ESSEX VICINAGE

2014 JAN -6 P 3: 29

FINANCE DIVISION
RECEIVED/FILED
34

Christine Gillespie  Pro Se
_____
Name
23 Cliffside Drive, Livingston, N.J.07039
_____
Address
(973) 725-7080
_____
Telephone Number

Christine Gillespie
_____
                                    Plaintiff

                    v.

Cherie L. Adams, Esq. et als.
_____

(See Attached)
_____
                                    Defendant (s)

Superior Court of New Jersey

Law Division    Essex    County

Docket No    L 184-14
                (to be filled in by the court)

**CIVIL ACTION**
**Complaint**

Plaintiff, _Christine Gillespie_____, residing at
                (your name)
_____ City of _Newark_____,
        (your address)                              (your city or town)
County of _Essex_____ .
            (your county)

State Of New Jersey, complaining of defendant, states as follows:

1. On _December 26_____, 20_13__, _Cherie L. Adams, Esq. et al._____, Defendant
                                            (name of person being sued)

(Summarize what happened that resulted in your claim against the defendant.  Use additional pages if necessary.)

_(SEE ATTACHED)_____
_____
_____
_____
_____

BATCH # 868 FILED 1-6-14
CHECK/RECEIPT 2362 AMT 200

The defendant in this action resides at <u>(SEE ATTACHED)</u>                           ,

                                                    (defendant's address)

In the County of <u>Essex                                </u>, State Of New Jersey.

                    (name of county where defendant lives)

2.  Plaintiff is entitled to relief from defendant under the above facts.

3.  The harm that occurred as a result of defendant's acts include:

(list each item of damage and injury),

1.  For general damages , lost wages since March 2003 through the present , $1,500,000.00, Plaintiff seeks treble damages.

2.  For damages for irreparable harm. catastrophic loss, loss of property rights and injuries to liberty rights  in the sum of  $2,500,000.00

   For Punitive damages  in the  sum of $5,000,000.00

3.

Wherefore, plaintiff requests judgment against defendant for damages, together with attorney's fees, if applicable, costs of suit, and any other relief as the court may deem proper.

Dated:  <u>12/26/2013                </u>     Signature:  *Christine Gillespie*

## CERTIFICATION OF NO OTHER ACTIONS

I certify that the dispute about which I am suing is not the subject of any other action pending in any other court or a pending arbitration proceeding to the best of my knowledge and belief.  Also, to the best of my knowledge and belief no other action or arbitration proceeding is contemplated.  Further, other than the parties set forth in this complaint, I know of no other parties that should be made

a part of this lawsuit. In addition, I recognize my continuing obligation to file and serve on all parties and the court an amended certification if there is a change in the facts stated in this original certification. *Defendants are not being sued in any other court for fraud.*

Dated: *Christine Gillespie*    Signature: *December 26, 2013*


**OPTIONAL: If you would like to have a judge decide your case, do not include the following paragraph in your complaint. If you would prefer to have a jury to decide your case, please sign your name after the following paragraph.**


## JURY DEMAND

The plaintiff demands trial by a jury on all of the triable issues of this complaint, pursuant to New Jersey Court *Rules* 1:8-2(b) and 4:35-1(a).

Dated: 12/26/2013    Signature: *Christine Gillespie*

Appendix XII-B1

| | CIVIL CASE INFORMATION STATEMENT (CIS) | FOR USE BY CLERK'S OFFICE ONLY |
|---|---|---|



**CIVIL CASE INFORMATION STATEMENT (CIS)**

Use for initial Law Division
Civil Part pleadings (not motions) under *Rule* 4:5-1
**Pleading will be rejected for filing, under *Rule* 1:5-6(c),**
if information above the black bar is not completed
or attorney's signature is not affixed

**FOR USE BY CLERK'S OFFICE ONLY**

PAYMENT TYPE: ☑CK ☐CG ☐CA
CHG/CK NO.
2014 JAN 10 P 1:47
AMOUNT:
OVERPAYMENT:
RECEIVED/FILED
BATCH NUMBER:

| 1. ATTORNEY / PRO SE NAME | 2. TELEPHONE NUMBER | 3. COUNTY OF VENUE |
|---|---|---|
| Christine Gillespie, Pro Se | (973) 725-7080 | Essex |

| 4. FIRM NAME (if applicable) | 5. DOCKET NUMBER (when available) |
|---|---|
| | |

| 6. OFFICE ADDRESS | 7. DOCUMENT TYPE |
|---|---|
| 23 Cliffside Drive | Complaint |
| Livingston, N.J. 07039 | 8. JURY DEMAND ■ YES ☐ No |

| 9. NAME OF PARTY (e.g., John Doe, Plaintiff) | 10. CAPTION |
|---|---|
| Christine Gillespie, Plaintiff | Christine Gillespie V. Cherie L. Adams, Esq., et al. |

| 11. CASE TYPE NUMBER (See reverse side for listing) | 12. HURRICANE SANDY RELATED? | 13. IS THIS A PROFESSIONAL MALPRACTICE CASE? ☐ YES ■ NO |
|---|---|---|
| 699 | ☐ YES ■ NO | IF YOU HAVE CHECKED "YES," SEE *N.J.S.A.* 2A:53 A -27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |

| 14. RELATED CASES PENDING? | 15. IF YES, LIST DOCKET NUMBERS |
|---|---|
| ■ Yes ☐ No | A-000391-11T2 |

| 16. DO YOU ANTICIPATE ADDING ANY PARTIES (arising out of same transaction or occurrence)? | 17. NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY (if known) |
|---|---|
| ■ Yes ☐ No | ☐ NONE ■ UNKNOWN |

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

| 18. DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP? | IF YES, IS THAT RELATIONSHIP: |
|---|---|
| ■ Yes ☐ No | ■ EMPLOYER/EMPLOYEE ☐ FRIEND/NEIGHBOR ☐ OTHER(explain) ☐ FAMILIAL ☐ BUSINESS |

19. DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY? ■ YES ☐ No

20. USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION

*See Attached*

| 21. DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS? | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION |
|---|---|
| ☐ Yes ■ No | |
| 22. WILL AN INTERPRETER BE NEEDED? | IF YES, FOR WHAT LANGUAGE? |
| ☐ Yes ■ No | |

23. I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b).

24. ATTORNEY SIGNATURE: *Christine Gillespie Pro Se*

#1.
The fraud in this case involves deceptive conduct by attorneys which consists of four elements :
1. Material misrepresentatiion of present and past facts;
2 Knowledge of its falsity and the false swearing to that fraud;
3 an intention that Appellant , the Commissioner, and the AOL would rely on that fraud;
4. Reliance on the fraud by all;
5. The fraud resulted in damages suffered by plaintiff, who has endured and continues to endure catastrophic loss, and irreparable harm.

The fraud in this case was not discovered until March 30, 2010 and May 30, 2010 with attendance documents for provided by the district under OPRA for State District Superintendent Marion Bolden  and Ann Marie McGoldrick respectively proving Appellant was nevcerr provided a hearing and Appellant was made a victim of a sham , fraudulent action.

Due to the ultra vires quasi legislative action  of the Office of Controversies and Disputes(OCD) of the  N.J. State Department of Education which repudiated the mandates  of its authorizing statute,N.J.S.A.18A:6-11 of the *Tenure Employee Hearing Law,*  the OCD prescribed an inferior dismissal procedure be implemented in state operated school districts.

The OCD divorced the inferior procedure from its limited applicability from within its confines of N.J.S.A.18A:7A-45c and prescribed  its use in sos districts  on a regular basis then involved a third statute by erroneously . claiming their interpretation of N.J.S.A.18A:7A-39 as authority to trump mandatory law in which the Legislature speaks in the imperative.
Without any rulemaking record applicable to the ultra vires rules and no legal authority for its action OCD used interpretive rules to  infringe upon State created substantive rights, impair contracts , create an arbitrary underclass of tenured teachers, deny them equal protection of the law, deprive them of their tenure rights, removing all the procedural safeguards placed upon the district by the N.J. Legislature by the terms it set in the Tenure Law, N.J.S.A.18A:28-5 in the permanent contract and the Tenure Employee Hearing Law, N.J.S.A.18A:6-11.

The discriminatory dismissal procedure left the district lawless under the tenure laws, and as the result of internal mismanagement,  leaving Plaintiff without the protection of her tenure rights and vulnerable to the illegal actions of

l

Perry Lattiboudere, Esq, and his friend and planned partner in their own firm, Cherie L. Adams, Esq., who orchestrated false attendance charges against who was on an adjudicated period of total temporary disability . They acted in concert without the involvement of any district or school administrator and without board knowledge oversight and vote in violation of N.J.S.A.18A:7A-48b.


Unbeknownst to Plaintiff at the time, Lattiboudere and Adams had their own need to retaliate against Plaintiff as her letter writing was shedding light on the illegal scam which Lattiboudere and Adams were engage in , and being run out of the legal department of NPS which as 1099s provided by the district in August of 2011 under OPRA reveal reaped payments of two million ($2,000,000.00) Dollars just from 2002 through 2008 . They obviously were not about to allow Appellant's letter writing to be a detriment to their plans. It was obviously the self interests of Lattiboudere and Adams which motivated their contemptible, fraudulent conduct. They certainly did not risk their licenses for Hale.
Although the fraudulent documents were mailed to Plaintiff to receive on New Years' Eve of 12/31/02 for maximum effect which further **exhibits the depth of their animosity and their vindictiveness which drove them to commit crimes of the 3rd and 4th degree, believing that Plaintiff would never discover the fraud they perpetrated upon her because she was on an adjudicated period of total temporary disability Plaintiff did not learn of the fraud until 3/30/09 and 4/30/10 by attendance documents provided by the district under OPRA for State Superintendent Marion Bolden and Annb Marie McGoldrick, respectively.**



**The Statement of Charges and Statement of Evidence Are The Products of Third and Fourth Degree Crimes Under Title 2C of The New Jersey Code of Criminal Justice .**


1. **N.J.S.2C:28-1 Perjury    The Statement of Charges and The Statement of Evidence involve 3rd degree crimes of Perjury .**


° **(a) Offense defined** . A person is guilty of perjury , a

2

**crime of the third degree, if in any official proceeding he makes a false statement under oath or equivalent affirmation , or swears or affirms the truth of a statement previously made , when the statement is material and he does not believe it to be true.**

Ruth Ruggero,Esq., assistant to Cherie L.Adams Esq. at the time   committed perjury on 12/30/02 , by  notarizing the fraudulent Statement of Charges and Statement of Evidence. claiming that Ann Marie McGoldrick swore to the Statement of Charges and the Statement of Evidence while appearing before Ruggero on December 30, 2002,
Ruggero was certainly well aware that her statements were not true and that  McGoldrick  never appeared before her on 12/30/02 and that McGoldrick never swore to the truth of any Statement of Charges or Statement of Evidence on 12/30/02, as Ruggero wanted everyone to believe by her fraudulent notarization.

McGoldrick's Kronos attendance documents were provided to Plaintiffby the District under OPRA, seven years later on 4/30/10. McGoldrick's Kronos attendance records  reveal, that McGoldrick was out of work on a two week Christmas vacation from 12/19//02 through 1/ 02/03 and never swore to the truth of any  charges or evidence on 12/30/02.  For seven long years Ruggero's perjury has kept Plaintiff in bureaucratic quicksand in the Court of Administrative Law while fully aware that her perjury on fraudulent documents which Ruggero helped prepare have caused Plaintiff to endure catastrophic loss, irreparable harm, and numerous constitutional injuries, being  illegally suspended without pay since March, 2003.

- **(b) Materiality. Falsification is material, regardless of the admissibility of the statement under rules of evidence, if it could have affected the course or outcome of the proceeding or the disposition of the matter. It is no defense that the declaring mistakenly believed the falsification to be immaterial . Whether a falsification is material is a question of law.**

There is no question that Ruggero's perjury is material  and was admitted into the Court of Administrative Law as a legal document which has  affected and continues to affect the course of the OAL proceedings. Ruggero's false notarization of  the charging documents  is perjury , false charging documents which Ruggero also stated in another certification of 2/25/03  that she helped to prepare. That admission was put forward after Plaintiffreported to the

3

County Superintendent that the signature was just a scrawl, the jurat was not complete , and that Ann Marie McGoldrick was not the State District Superintendent of Schools. These attorneys had so many opportunities to retract their fraudulent, criminal action but believed they'd be able to trump the judicial system.
False attendance charges were lodged against Appellant without board knowledge, without board oversight, without board vote of approval in violation of N.J.S.A.18A:7A-48B; 18A:7A-29; 18A:18A-1 et seq.  as revealed by OPRA documents provided by the District in August, 2011.

It obviously was Ruggero's specific intent to make those fraudulent documents appear valid by notarizing fraud to cause Plaintiffharm, which she has successfully achieved. The documents all speak for themselves, they don't require Plaintiffto argue that they are fraudulent. Ruggero notarized each document claiming that McGoldrick, swore to the Statement of Charges and to the Statement of Evidence while appearing before Ruggero on 12/30/02,  McGoldrick's Kronos attendance records reveal that McGoldrick requested the two week vacation time months in advance and that during the period of 12/19/02 through 1/02/03
The fraudulent documents were all that was required to catapult  their vengeance and retaliation beyond the norms of human decency as Lattiboudere, Adams and Hale all had their own need to retaliate against Plaintifffor her engagement in protected speech..
 Without  Ruggero's false notarization on those charging

documents , those documents would not have been filed. Few,

if any attorneys, would risk their positions, or license, by

fraudulently notarizing  false documents  to cause another

harm. They were banking on pushing their fraud through an

expedited hearing, which was prevented by N.J.S.A.52:14F-8

which prohibits  the ALJ's jurisdiction over a contested

workers' compensation case. Adams requested in writing that

the case be placed on the inactive list on 7/14/04, without

my knowledge or consent.

Adams and Lattiboudere  were then caught between a rock and

a hard place. If those documents were returned to the Commissioner, they risked the exposure of their fraud through the department's re-handling of the documents. And if the documents were returned to the district, Adams and Lattiboudere further risked the district's board of education taking legal action against Lattiboudere and the filing ethics charges against Lattiboudere for illegally initiating and farming cases out to his friend Adams without her or the firm she worked for having any contract to work for the district involving the illegal expenditure of funds which Lattiboudere's office then signed off on. Tenure cases were never farmed out of the district, it is mandatory that in house staff of attorneys address tenure cases at no extra charge to the district.

Lattiboudere would have to explain what legal grounds he had to violate N.J.S.A.18A:7A-48b which mandates that all legal matters be presented to the board; what was he thinking placing the District in violation of Workers' Compensation public policy, N.J.S.A.34:15-39.1; the district was sitting on and in contempt of two outstanding consent court orders; Plaintiff was never disciplined or told to return to work; Hale refused light duty assignment; the district has numerous letters in their possession about Hale's discriminatory treatment of Plaintiff ; Plaintiff was under active medical treatment for workers' comp injuries and was

never deemed MMI; Lattiboudere and Adams would have been
made to account for their fraudulent actions **as the Board
would have discovered the fraud immediately as they were
well aware that Bolden was out of the District in New
Orleans on 2/20/03 through 2/24/03** as her frequent travel
was reportedly one of the reasons they voted on 2/25/03
not to recommend renewal of Bolden as State Superintendent

.

 The Board members had already made known at their May, 2002
board meeting that they wanted to hire their own attorney
because they did not trust Lattiboudere, Board Member, Dr.
Mott  said they did not agree with Lattiboudere's
interpretation of Title 18A and did not want their letter-
writing censored. Upon the Board's discovery that
Lattiboudere illegally initiated and illegally farmed out a
tenure without their knowledge , without the involvement of
any district or school administrator, without Plaintiff ever
being disciplined, and a legal case left the district
through the district's back door , while Adms was without
contract to work for district and illegally paid public
funds that could have been spent on children as Title 18A
case are always handled by in house staff of attorneys, that
Board would have had more than enough legal grounds to
charge Lattiboudere with theft of funds as his office signed
off on those payments, to have him removed . Lattiboudere

6

and Adams could not allow the return of the fraudulent

charges with the fraudulent documents to the Board of

Education as that would ruin their plans for their reaping

the cache of cases to springboard their private practice

and the illegal two million dollars off the board between

2002 through 2008,  which OPRA documents reveal they

profited, in violation of <u>N.J.S.A</u>.18A:7A-48b;18A:18A-1 et

seq. 18A:7A-29;18A:6-11, 18A:28-5 and in blatant violation

of school ethics laws.

Those fraudulent charging documents were unlawfully filed by
Adams on 2/25/03 with the Commissioner of Education and were
fraudulently submitted to the OAL for prosecution on 4/2/03.
Ruggero's perjury had  tremendous negative impact  causing
Plaintiff to endure the unfathomable  along with the loss of
her career , her livelihood, her health  and her reputation.
Ruggero's perjury resulted in Appellant's illegal suspension
without pay and ruined over ten (10)years of  her  life as
Adams illegally kept this case tied up in a quagmire in the
OAL while fully cognizant of the fact that every document
which Adams submitted is fraudulent.

- **( c) Irregularities no defense. It is not a defense to
  prosecution under this section that the oath or
  affirmation was administered or taken in an irregular
  manner**
- **<u>. A document purporting to be made upon oath or
  affirmation at any time when the actor presents it as
  being so certified shall be deemed to have been duly
  sworn or affirmed.</u>**

Ruggero put forth fraudulent charging documents as
legitimate documents which are the product of  Ruggero's
own perjury , there's no defense to prosecution , Ruggero
expressly claims that McGoldrick swore to the statement of
charges and statement of evidence while before Ruggero on
12/30/02. The only thing irregular in this case is perjury
by an officer of the court, to commit fraud upon the Court
with specific intent to cause Plaintiff harm.

- **<u>d) RETRACTION</u> It is an affirmative defense under this**

7

section that the actor retracted the falsification in the course of the proceeding or matter in which it was made prior to the termination of the proceeding or matter without having caused irreparable harm to any party.

To prevent more irreparable harm than has already been inflicted upon Appellant, **Ruggero should take heed of this semi salvaging provision**.

Ruth Ruggero, Esq. was also legally prohibited by law, from notarizing the Statement of Charges and Statement of Evidence as Ruggero had a hefty financial interest in seeing to it that those documents were filed and was therefore prohibited from notarizing the Statement of Charges and the Statement of Evidence as she and Adams were then paid to determine their own fraud, paid to file their own fraud with the Commissioner and then paid to unlawfully prosecute Plaintiff with their fraudulent charging documents.

**The fraud vitiated the entire procedure mandating dismissal of case as all filing documents are the products of 3rd and 4th degree crimes under Title 2C of the N.J. Code of Criminal Justice.**

**N.J.S. 2C:28-6** Tampering with or fabricating physical evidence.
A person commits a crime of the fourth degree if, believing that an official proceeding or investigation is pending or about to be instituted, he:
° (2) Makes, devises, prepares, presents , offers, or uses any article, object, record, document or other thing of physical substance knowing it to be false with purpose to mislead a public servant who is engaged in such proceeding or investigation.

Lattiboudere, Adams, Adams' assistant Ruggero, Hale and

McGoldrick fabricated physical evidence, filled fraudulent

charges , falsified attendance register which is a legal

document and tampered with Appellant's legal status in the

8

district, having Plaintiff illegally suspended without pay since 2003.Lattiboudere ,Adams, Adams' assitant Ruggero and Hale committed crimes of fourth degree in fabricating, making, devising, preparing all fraudulent documents with specific intent to wreck havoc on Appellant's life by abusing the legal process, and illegally instituting an official proceeding which none have standing to do. The fraudulent documents include the illegal tampering with the District's Official Status Report to indicate that Plaintiff is Suspended Without Pay to justify not providing light duty assignment,  while awaiting remaining surgery as required by the ADA and nonpayment of TTD.

Manufactured all fraudulent filing documents which include the following:
- (1)**False Notice** of 12/30/02;
- (2)**False Statement of Charges** of 12/30/02  which involve Perjury by an officer of the court;
- (3)**False Statement of Evidence** of 12/30/02 which Involves Perjury by an officer of the court;
- (4)**False Personnel Action Notice** of 2/20/03 which involves fraud and  forgery ;
- (5)**False Certificate of Determination** of 2/25/03 which involves fraud and forgery by officers of the court. The documents were prepared to commit fraud upon the court infect the judicial process by misleading the ALJ in the proceeding before  him.


(1) **The  Notice of 12/30/02 is a fraudulent document,** as it told Plaintiff that her response was to be provided to the Board pursuant to **N.J.S.A**.18A:6-11, Lattiboudere lied about the tenure hearing  before the Board, denying Plaintiff's due process rights to know of and challenge  illegal action rendering the action void action void.


Perry Lattiboudere,Esq., committed crimes of the fourth

9

PQ

degree as he prepared and presented false Notice of the Charges of 12/30/02 and the fraudulent Statement of Charges of 12/30/02 and fraudulent Statement of Evidence of 12/30/02 to Plaintiff by express mail on New Year's Eve to cause maximum emotional distress. Lattiboudere provided a false, constitutionally inadequate notice which assured Plaintiffof all her tenure rights and that her response would be submitted to the board pursuant to N.J.S.A. 18A:6-11,. Nothing Lattiboudere told Plaintiff was true. Lattiboudere fabricated realty. Lattiboudere's fraud denied Plaintiff of her due process rights to challenge the denial of her property rights under the terms of the permanent contract created by the *Tenure Law* N.J.S.A.18A:28.The terms set by the N.J. Legislature in the *Tenure Law* N.J.S.A.18A:28-5 are the only terms allowed to legally terminate a permanent contract. Lattiboudere's action as attorney for the district resulted in illegal breach of contract which rendered this illegal action invalid from the beginning, mandating dismissal for attorneys' abuse of the legal system and engagement in fraud to satisfy their own retaliatory needs.

With the fraudulent Notice , Lattiboudere sent out the fraudulent Statement of Charges and fraudulent Statement of Evidence which claim the newly hired office manager Ann Marie McGoldrick, whose name appears several times above the title of **State District Assistant Superintendent to lure Plaintiffinto responding because** without Plaintiff's 's response they would not get the satisfaction of seeing their retaliatory action through as that would risk exposure of their illegal scheme , or

10

PQ

abandoning their retaliatory scheme and they weren't about to do that.

The fraudulent documents claim that McGoldrick swore to the charges on 12/30/02, and further claim that Ruggero notarized McGoldrick's swearing on 12/30/02. Lattiboudere was well aware that McGoldrick was away on a Christmas vacation and that she hadn't been to work for two weeks. Lattiboudere knew that Ruggero committed perjury on those documents and Lattiboudere also knew that McGoldrick was not the State District Assistant Superintendent.

Lattiboudere sent out his fraudulent notice for Plaintiff to receive on New Years' Eve for maximum eff... <u>further exhibits the depth of their animosity and their vindictiveness which drove them to commit crimes of the 3rd and 4th degree, believing that Plaintiff would never discover the fraud they perpetrated upon her because she was on an adjudicated period of total temporary disability.</u>

Lattiboudere lied in the notice. He used trickery and deceit to keep Plaintiff uninformed of the sham procedure she was to be the victim of. Lattiboudere clearly informed Plaintiff that her tenure rights were to be honored pursuant to <u>N.J.S.A.</u>18A:6-11, assuring Plaintiff that her response would be submitted to the Board, clearly telling Plaintiff that <u>**"Further, please be advised that at the expiration of that time, pursuant to statute, the Board shall consider the charges and the statement of evidence that you have submitted, and make a determination as to whether there is probable cause……" Lattiboudere lied to lure Plaintiff into participating in an illegal situation**</u>. Plaintiff was not told that her tenure rights were to be denied as was required by the Due Process Clause of the U.S. Constitution as tenure has the satatus of a property right and cannot be denied without due process. Instead Plaintiff was assured of receiving her property rights under the Permanent Contract as mandated by the *Tenure Law,* <u>N.J.S.A.</u>18A:28-5.

Lattiboudere's fraud prevented Plaintiff's challenge of the denial of her mandatory tenure rights which resulted in the trampling of Plaintiff's due process rights.

Unbeknownst to Plaintiff at the time, Lattiboudere and Adams had their own need to retaliate against Plaintiff as her letter writing was shedding light on the illegal scam which Lattiboudere and Adams were engage in, and being run out of the legal department of NPS which as 1099s provided by the

11

PQ

district in August of 2011 under OPRA reveal reaped payments of two million ($2,000,000.00) Dollars just from 2002 through 2008 . They obviously were not about to allow Appellant's letter writing to be a detriment to their plans. It was obviously the self interests of Lattiboudere and Adams which motivated their contemptible, fraudulent conduct. They certainly did not risk their licenses for Hale.

**The fraudulent Statement of Charges and Statement of Evidence are invalid as fraud vitiated entire procedure ,mandating dismissal of the charges**

Plaintiff was hit with attendance charges "**out of the blue**", as she was NEVER disciplined for anything , let alone attendance. The evidence does not include any proof of any disciplinary measures that were ever taken against Plaintiff, which mandates dismissal of this sham action which not one district or school administrator would support, and is the reason why they had to use a newly hired office manager, Ann Marie McGoldrick to swear to the charges.
This action speaks to the internal mismanagement of the district at the time which was State operated in name only.

Neither Lattiboudere, Nor Adams, Nor Ruggero
Nor Hale have any standing to file drummed up charges against Plaintiff and label them "Tenure Charges", that's hypocrisy, especially since they never even provided the basic constitutional minimum of a truthful meaningful notice and never provided a hearing and instead **they engaged in a degree of fraud which is so outrageous and contemptible that few if any modern day employers would ever engage.**

The charging documents are illegal documents, fabricated attendance sheets which the clerk for Home Instruction Keisha Gifford, was directed to prepare by Risk Manager Ron Hale to meet his specifications, which Hale knew to be false as he was in active litigation in workers'compensation court on motion to compel his compliance with consent court orders. Hale's goal was workers' compensation and pension defeating motives.

Plaintiff was placed on the rolls of Home Instruction on 12/15/98 shortly after her serious work related injury of 9/4/98 to prevent her absence from impacting upon a classroom situation.If those charges were valid, Appellant's immediate District Administrator, State District Assistant Superintendent Dr. Lawrence Ashley would have submitted

APP - 062

those charges, not a newly hired office manager new to education who didn't have any knowledge of situation because she was not employed in the district, but was used to sign documents which Hale himself would not swear to. That says everything ! The statements are Hale's , he should have signed them. Hale wouldn't swear to his own lies and no district or school administrator would swear to such a contemptible action for Hale, either.

Had those charging documents  been valid the Director of Home Instruction, Ann Wilson would have certified the charges. But since the charging documents are not valid documents as proven by the outstanding consent court orders in the district's possession , Wilson was obviously not going to have charges of incompetence lodged against her as she never disciplined Plaintiff, nor ever told Plaintiff to return to work . In December 2002, Plaintiff had recently spoken to Wilson regarding workers' compensation case status and Wilson  never once uttered any word of there being any attendance problem, as Plaintiff's adjudicated period of total temporary disability awarded through consent court orders signed and consented to by the district was recognized as lawful absence.After speaking with Wilson, Plaintiff  then reiterated the  facts of that conversation in writing addressed to Wilson with copy to her immediate supervisor, State District Assistant Superintendent Dr. Lawrence Ashley. Neither Wilson nor Ashley ever informed Plaintiff of any attendance problem , as the Administration was well aware of Plaintiff's adjudicated period of total temporary disability and that Plaintiff had not been deemed maximum medical improvement due to Hale's unilateral interruption and termination of course of corrective hand surgeries. Hale makes his own laws and his own rules and has no regard for any consequences and  financial penalties his contemptible conduct brings upon the district

In December 2002, Hale had just been reminded by another one of his own doctors , Dr. Head that Dr. Massengill advised the remaining arthroplasties of the thumbs which Plaintiff was anticipating, as those surgeries would have restored Plaintiff to MMI and returned her to her regular position 12 weeks later .Hale's contempt of court orders prevented MMI .

In December,2002 Hale  decided to continue  flouting a second consent court order of the Honorable Fred Kumpf, having no concern for the fines and penalties his contemptible conduct brought upon the district for his initial flouting of court orders on 9/22/00, he now had Adams and Lattiboudere's assistance as they needed Plaintiff gone as much as Hale did, if not more.

13

**(3)Attorneys Lattiboudere, Adams and Adam's assistant Ruth
Ruggero Esq.  committed fraud and risked their  licenses all
for naught. There is no probable cause as the Statements of
Charges and Evidence claiming  McGoldrick's swearing to
hearsay cannot  rise to the level of probable cause as both
N.J.Court Rule 1:6-6 as well as the Manalapan Requirements
for Boards of Education to strictly comply with when making
probable cause determinations prohibit sworn hearsay from
rising to level of probable cause, which further render the
charges invalid.**

In the case of *Manalapan-Englishtown Association V. Board of
Education of the Manalapan Englishtown Regional School
District* , *187N.J.Super, 426 (App. Div. 1981)* this court
held that the ALJ  correctly required that **the Board must
make some assessment of the type and quality of the
evidence, in order to see if probable cause exists which
cannot be based on hearsay as property rights are involved.**
The Board of Education can't determine probable cause based
on hearsay and must adhere to the Manalapan Requirements
which require that: **"Evidence" of a charge that is specious,
speculative , based upon rumor , without alleged first hand
knowledge of the asserted facts, and the like,may not rise
to the level of probable cause."**

Affidavits and certifications based on hearsay, are
prohibited by the Manalapan requirements which  Boards of
Education  must adhere to in determining probable cause
which require that **evidence without first hand knowledge of
the asserted facts , may not rise to the level of probable
cause.** McGoldrick did not work in the district during any
time period identified on the fabricated attendance sheets
which are only for the time period of 9/4/01 through 6/14/02
and therefore could not swear that Plaintiffwas AWOL
.McGoldrick's falsely sworn statements of charges and
evidence could not support any probable cause determination
as both the Statement of Evidence and the Statement of
Charges were hearsay to McGoldrick as she did not work in
the district, did not know Plaintiff, did not know of her
work history ; did not know of the two outstanding consent
court orders in the district's possession and the
obligations the district incurred when signing and never
appealing consent court orders , and did not know that
Hale's illegal unilateral termination of benefits placed the
district in contempt of those orders  which was a second
flouting of orders showing no concern for the fines and
penalties the district had already incurred for Hale's

initial violations and contempt of consent court orders.

**No P.S. Board Of Education In State of New Jersey would have wasted their district's time and money by allowing McGoldrick's sworn hearsay to rise to the level of probable cause. Such documents are invalid.**

**Ruggero committed perjury and risked her career all for naught as sworn hearsay cannot rise to the level of probable cause . And, had these charges been tenure charges there would not have been even one school board in the State of N.J. which would have allowed sworn hearsay to rise to the level of probable cause, as School Boards have been well trained by the N.J.School Boards Association in the effective use of their quasi judicial authority to avoid the waste of a school districts funding.**

Adams' assistant Ruth Ruggero,Esq. committed  perjury on the Statement of Evidence and the Statement of Charges and risks her career **all for naught** as the charging documents  were invalid from the moment McGoldrick's name was entered on those documents as it is a basic premise of law that one can't swear to the truthfulness of charges that one knows nothing about. McGoldrick's name on the documents served  no valid purpose in any case  as no board of education in this state can render a probable cause determination on sworn hearsay, and that's all Adams has. And its all false hearsay at that , even lying that Plaintiff was assigned to a classroom situation  affecting students and preventing their progress, when Plaintiff wasn't even assigned to a classroom situation but was placed on the rolls of Home Instruction on 12/15/98 shortly after her serious work related accident on 9/4/98 to prevent her absence  from impacting upon a classroom situation; after the sudden death of Dr. Pollack, Dr. Gomez Rivera M.D. was treating Plaintiff for the effects of Hale's discriminatory treatment and his intentional infliction of emotional distress  created by Hale's bullying tactics, his illegal, underhanded actions  in violation of consent court orders, rules of the Workers' Compensation Court , N.J. Workers' Compensation law, decisional law, and human decency through his discrimination against Plaintiff for her ethnic heritage. Hale  made no secrete that his Italian teachers prevented his attending advanced classes while attending Weequahic schools  and now he was preventing Plaintiff from advancing in her carreer as it was a published fact that Plaintiff was being interviewed for an administrative position when she was seriously injured in work related accident. Emotional distress  is one of Appellant's  numerous work related injuries identified on

15

the Workers' Compensation claim petition filed  with the Department of Labor and Workforce Development , Division of Workers' Compensation.

**(4)  The Personnel Action Notice is a fraudulent document  as there was no hearing  provided for Plaintiff by State Superintendent Bolden on 2/20/03 as the document claims  and there was  no action taken to determine probable cause during the hearing on 2/20/03 as claimed because  Bolden was in New Orleans at AASA Conference,on 2/20/03  through 2/24/03 as revealed on 3/30/09 by Bolden's  attendance documents, rendering the Personnel Action Notice of such hearing held on  2/20/03 to be a fraudulent document, invalidating entire procedure.**

The personnel Action Notice of 2/20/03 is a complete fabrication of reality, nothing that it claims ever happened. The unconscionable scheme calculated  to interfere with the A.L.J.'s ability to adjudicate fairly has as its ultimate goal  the infliction of harm upon Plaintiff. This fraud is clearly and convincingly demonstrated by the fraudulent documents filed in this case, through 3rd and 4th degree criminal actions under Title 2C.

Plaintiff was provided a fraudulent Personnel Action Notice of 2/20/03 that informed her that former State Superintendent Bolden provided Plaintiff with an evidentiary hearing on 2/20/03 during which Bolden considered the charges , read Plaintiff's 160 page response, determined probable cause and the resolutions were then adopted .

**For six (6) long years they perpetrated this fraud and kept this case illegally tied up in the OAL instead of having case dismissed w/o prejudice due to the fact that they filed a non- justiciable controversy with ALJ's jurisdiction prohibited by N.J.S.A.52:14F-8** because Lattiboudere and Adams could not risk the ramifications of having their fraudulent documents returned to the Board. It was in their interests not to risk the exposure of their fraud which speaks volumes of their character. as each of the documents that they filed has been proven fraudulent on the face of each within the four corners of each. Having six years long years to think about their fraud and the harm it has caused Plaintiff  from 2/27/03 when Defendants filed their fraud through 3/30/09 when it was discovered that Bolden was in New Orleans on 2/20/03 and never provided Plaintiff  any

16

hearing on 2/20/03, as claimed on the Personnel Action Notice, Defendants made no attempt to correct their criminal, fraudulent activity, which continues to this day. Plaintiff has been made to suffer catastrophic loss, irreparable harm and numerous injuries to her career, her livelihood, her reputation, and her health as Defendants' have robbed her of ten years of her life, as they were allowed to instigate, orchestrate and dominate this illegal action .

In March , 2009, after being told by another employee that Bolden traveled a lot, Plaintiff requested Bolden's attendance records under OPRA. On 3/30/09 Plaintiff was provided Bolden's attendance records under OPRA which reveal that Bolden was in New Orleans from 2/20/03 through 2/24/03 at the A.A.S.A. Conference and never provided Plaintiff any hearing on 2/20/03 as the fraudulent Personnel Action Notice claims.

**5) The Certificate of Determination of 2/25/03 is a fraudulent document as it is the certification of the resolutions made and adopted at the hearing falsely reported to have been provided Plaintiff by State Superintendent Bolden on 2/20/03 , as there was never any such hearing as revealed six years later by attendance documents provided by the district on 3/30/09 , there were never any resolutions made and adopted at the phantom hearing rendering the Certificate of determination a fraudulent document vitiating the entire procedure.**

The Certificate of Determination is the certification of the findings made and adopted at the evidentiary hearing as required by N.J.S.A.18A:6-11. It is the by-product of the evidentiary hearing, as there was no hearing, there were no resolutions made.and adopted.
1. The Personnel Action Notice of 2/20/03 claims that Bolden provided Plaintiff an evidentiary hearing on 2/20/03 and the resolutions were made and adopted at the hearing of 2/20/03 as falsely claimed on the Personnel Action Notice of 2/20/03.
2. State district Superintendent Marion Bolden never provided Plaintiff any evidentiary hearing on 2/20/03 and never made or adopted any resolutions at any hearing on 2/20/03 as claimed on the Personnel Action Notice of 2/20/03.
3. Bolden's attendance records reveal that Bolden was in New Orleans from 2/20/03 through 2/24/03 at the A.A.S.A. Conference proving that Bolden never provided Plaintiff any hearing at which resolutions were made and adopted

APP - 067

on 2/20/03.

In March , 2009, after being told by another employee that Bolden traveled a lot, Plaintiff requested Bolden's attendance records under OPRA. On 3/30/09 Plaintiff was provided Bolden's attendance records under OPRA which reveal that Bolden was in New Orleans from 2/20/03 through 2/24/03 at the A.A.S.A. Conference and never provided Plaintiff any hearing on 2/20/03 as the fraudulent Personnel Action Notice claims.

As there was no evidentiary hearing conducted by Bolden on 2/20/03 , nothing of what the Personnel Action Notice claims occurred at the hearing ever happened, there were no resolutions made and there were no resolutions adopted at the phantom hearing of 2/20/03 . Therefore there are no adopted resolutions to certify to the Commissioner proving the Certificate of Determination of 2/25/03 to be a fraudulent document.

The Certificate of Determination of 2/25/03 also involves forgery as although it bears Bolden's name it does not bear her signature. Bolden wouldn't have signed any of those fraudulent documents as the State would be only to willing to deny Bolden's one hundred and fifty thousand($150,000.00) dollars a year pension for the  commission of fraud.

**Case Information Sheet  #20**

**Plaintiff respectfully requests the accelerated disposition of the case before a jury, as the facts contained within prove, this case requires a jury trial.**

**For six (6) long years from 2/27/03 through 3/30/09 when fraudulent filing documents were first  exposed in this case, Defendants  perpetrated their  fraud upon Plaintiff, the Commissioner and the ALJ, without any qualms about their conduct or the harm they inflicted upon Plaintiff. To this day they don't know how to rectify their contemptible actions. Defendants are in denial , yet they can't escape**

APP - 068

the ramifications of their fraudulent actions which they
have resorted. illegally tied up in the OAL for the last
decade, instead of having the case dismissed w/o prejudice
due to the fact not only that they filed a non-justiciable
controversy as ALJ's jurisdiction over a contested workers'
Compensation Case is prohibited by N.J.S.A.52:14F-8, but
their fraudulent actions can never be rectified, no matter
the judge they are able to maneuver their fraud before, as
past history has proven is their M.O.

The case should have been dismissed without prejudice but
instead after the completion of discovery, as Plaintiff was
illegally suspended without pay since March,2002 suffering
catastrophic loss, and irreparable harm,  Cherie L.Adams,
Esq. requested in writing on July 14,2004, that the case be
placed on the inactive list. This was done without
Plaintiff's knowledge or approval.

After numerous complaints to Plaintiff's Union attorney who
would not take any action to cross Adams, the Case remained
on the inactive list through March 27,2007, when Plaintiff's
numerous complaints to the Court Clerk and the
Administration of the OAL resulted in the case placed on
active list where it remained but Defendants still failed to
prosecute as N.J.S.A.52:14F-8 continued to be their
roadblock. This resulted in Defendants  taking even further
contemptible ex parte actions in effort to dismiss
Plaintiff's workers' compensation case without her
knowledge.

Lattiboudere and Adams could not risk the ramifications of
having their fraudulent documents returned to the Board, as
the Board would have immediately determined the fraud
involved in this case.

Due to the prohibition of the ALJ's jurisdiction over a
contested workers compensation case by the mandates of N.J.
Administrative Law, N.J.S.A.52:14F-8,Adams and Lattiboudere
were caught between a rock and a hard place.

If those documents were  returned to the Commissioner, they
risked the exposure of their  fraud  through the
department's re-handling of the documents. And if  the
documents were returned to the district, Adams and
Lattiboudere further risked  the district's board of
education taking legal action against Lattiboudere and  the
filing ethics charges against Lattiboudere for illegally
initiating and farming cases out to his friend Adams without
her or the firm she worked for having any contract to work

APP - 069

for the district involving the illegal expenditure of funds which Lattiboudere's office then signed off on. Tenure cases were never farmed out of the district, it is mandatory that in house staff of attorneys address tenure cases at no extra charge to the district.

Ther are no district or school administrators involved in this case. This is a cat's paw case. The Newark Board of education had just made known at their December, 2002, board meeting that they were not going to recommend the renewal of State District Superintendent Marion Bolden's contract. Bolden had a million and a half dollars at stake in contracts through 2008 as well as risking her reported one hundred and fifty thousand ($150,000.00)dollars a year pension after 2008 . Bolden needed Lattiboudere's and risk manager Ron Hale's help, among others, to get her supporters elected to the Board at the April,2003 election, as they'd be able to vote her in twice, which is what happened. Plaintiff was the tradeoff .

**Case Caption:** Christine Gillespie ,Plaintiff

                                  v.

          Cherie L. Adams, Esq., Perry Lattiboudere,Esq.,
          Derlys Maria Gutierrez,Esq.,
          Adams, Gutierrez, & Lattiboudere, LLC

          DOES 1-100

                                  Defendants

20

**Addresses**

1. Cherie L. Adams, Esq., 1037 Raymond Blvd. Suite 900, Newark,N.J.07102

2. Perry Lattiboudere,Esq.,1037 Raymond Blvd. Suite 900, Newark,N.J.07102

3. Derlys Maria Gutierrez,Esq.,1037 Raymond Blvd. Suite 900, Newark,N.J.07102

4. Adams, Gutierrez, & Lattiboudere, LLC., 1037 Raymond Blvd. Suite 900, Newark,N.J.07102

5. DOES 1-100 Plaintiff will amend this complaint to allege their true names and capacities when ascertained.

APP - 071

**Appendix XII-B1**

## CIVIL CASE INFORMATION STATEMENT (CIS)

Use for initial Law Division
Civil Part pleadings (not motions) under *Rule* 4:5-1
**Pleading will be rejected for filing, under *Rule* 1:5-6(c), if information above the black bar is not completed or attorney's signature is not affixed**

| FOR USE BY CLERK'S OFFICE ONLY |
|---|
| PAYMENT TYPE: ☐ CK ☐ CG ☐ CA |
| CHG/CK NO. |
| AMOUNT: |
| OVERPAYMENT: |
| BATCH NUMBER: |

| 1. ATTORNEY / PRO SE NAME | 2. TELEPHONE NUMBER | 3. COUNTY OF VENUE |
|---|---|---|
| Christine Gillespie, Pro Se | (973) 725-7080 | Essex  L 184-14 |

| 4. FIRM NAME (if applicable) | 5. DOCKET NUMBER (when available) |
|---|---|

| 6. OFFICE ADDRESS | 7. DOCUMENT TYPE |
|---|---|
| 23 Cliffside Drive Livingston, N.J. 07039 | Complaint |
| | 8. JURY DEMAND  ■ Yes  ☐ No |

| 9. NAME OF PARTY (e.g., John Doe, Plaintiff) | 10. CAPTION |
|---|---|
| Christine Gillespie, Plaintiff | Christine Gillespie V. Cherie L. Adams, Esq., et al. |

| 11. CASE TYPE NUMBER (See reverse side for listing) 699 | 12. HURRICANE SANDY RELATED? ☐ YES ■ NO | 13. IS THIS A PROFESSIONAL MALPRACTICE CASE?  ☐ YES  ■ NO |
|---|---|---|
| | | IF YOU HAVE CHECKED "YES," SEE N.J.S.A. 2A:53 A -27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |

| 14. RELATED CASES PENDING? ■ Yes ☐ No | 15. IF YES, LIST DOCKET NUMBERS A-000391-11T2 |
|---|---|

| 16. DO YOU ANTICIPATE ADDING ANY PARTIES (arising out of same transaction or occurrence)? ■ Yes ☐ No | 17. NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY (if known) ☐ NONE ■ UNKNOWN |
|---|---|

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

| 18. DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP? ☐ Yes ■ No | IF YES, IS THAT RELATIONSHIP: ☐ EMPLOYER/EMPLOYEE ☐ FAMILIAL ☐ FRIEND/NEIGHBOR ☐ BUSINESS ☐ OTHER (explain) |
|---|---|

| 19. DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY? ■ Yes ☐ No |
|---|

20. USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION

*See Attached*

| 21. DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS? ☐ Yes ■ No | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION |
|---|---|
| 22. WILL AN INTERPRETER BE NEEDED? ☐ Yes ■ No | IF YES, FOR WHAT LANGUAGE? |

23. I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b).

24. ATTORNEY SIGNATURE: *Christine Gillespie Pro Se*

CN 10517_ps - English, Effective 08-19-2013

Page 4 of 5

PQ



**AAdams Gutierrez & Lattiboudere, LLC**
The Legal Center
1037 Raymond Blvd., Suite 900
Newark, New Jersey 07102
(973) 735-2742
Attorneys for Defendants

| | |
|---|---|
| Christine Gillespie,<br><br>        Plaintiff,<br><br>v.<br><br>Cherie L. Adams, Perry L. Lattiboudere,<br>Derlys M. Gutierrez and Adams Gutierrez &<br>Lattiboudere, LLC,<br><br>        Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: ESSEX COUNTY<br>Docket No.: ESX-L-184-14<br><br>Civil Action<br><br>**ORDER** |

THIS MATTER having been brought before the Court by Daniel A. Schlein, Esq. of Adams Gutierrez & Lattiboudere, LLC, attorneys for Defendants, Defendants, Cherie L. Adams, Perry L. Lattiboudere, Derlys M. Gutierrez and Adams Gutierrez & Lattiboudere, LLC and on notice to Christine Gillespie, Pro Se, for an Order dismissing Plaintiff's complaint pursuant to R. 4:6-2(e), and having reviewed the moving papers and those submitted in opposition, and having heard the arguments of counsel and for good cause shown:

**IT IS** on this _____ 2 Pᴷ _____ day of February 2014, **ORDERED**:

1.    The Defendants' Motion for an Order dismissing the Complaint in its entirety hereby is granted.

2.    The Complaint is hereby dismissed in its entirety.

APP - 073

3.    A copy of this Order shall be served upon all counsel within seven (7) days of its receipt.

_____ *Mitchell*, J.S.C.

*Mr. Schleim's Cal 7, 2014 brief is persuasive + demonstrates that this case should be dismissed.*

This motion was:

_____ Opposed

___✓___ Unopposed

2

APP - 074

**ADAMS GUTIERREZ & LATTIBOUDERE, LLC**
The Legal Center
1037 Raymond Blvd., Suite 900
Newark, New Jersey 07102
(973) 735-2742
Attorneys for Defendants

SUPERIOR COURT OF NJ

2014 FEB -7 P 3: 00

RECEIVED/FILED

---

Christine Gillespie,

                Plaintiff,

v.

Cherie L. Adams, Perry L. Lattiboudere,
Derlys M. Gutierrez and Adams Gutierrez &
Lattiboudere, LLC,

                Defendants.

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION: ESSEX COUNTY
Docket No.: ESX-L-184-14

Civil Action

**NOTICE OF
MOTION TO DISMISS**

---

**TO:**    Christine Gillespie, Pro Se
       23 Cliffside Drive
       Livingston, New Jersey 07039

**PLEASE TAKE NOTICE** that on February 28, 2014 Defendants, Cherie L. Adams, Perry L.

Lattiboudere, Derlys M. Gutierrez and Adams Gutierrez & Lattiboudere, LLC shall move before

the Superior Court of New Jersey, Law Division, Essex County, pursuant to R. 4:6-2(e), for an

Order dismissing the complaint with prejudice.

    **PLEASE TAKE NOTICE** that no pretrial conference, arbitration proceeding, or

calendar call has been set in this matter.

    **PLEASE TAKE NOTICE** that the Defendants do not request oral argument on this

motion, unless opposed.

APP - 075

**PLEASE TAKE NOTICE** that a proposed form of Order is enclosed herewith.

**ADAMS GUTIERREZ & LATTIBOUDERE, LLC**
The Legal Center
1037 Raymond Blvd., Suite 900
Newark, New Jersey 07102
Attorneys for Defendants

By: _Daniel A. Schlein /WN_
       DANIEL A. SCHLEIN

Dated:  February 7, 2014

2

**CERTIFICATION OF SERVICE**

Julianne J. Navarrete, of full age, hereby certifies and says:

1.       I am a Legal Administrator at the law firm of Adams Gutierrez & Lattiboudere, LLC, attorneys for the Defendants.

2.       I hereby certify that on this day, I caused an original and two (2) copies of Defendants' Motion to Dismiss Plaintiff's Complaint and all supporting papers, in the above-referenced matter to be hand delivered to the Superior Court, Law Division–Essex County for filing.

3.       I also certify that on this day, I also caused a copy of Defendants' Motion to Dismiss Plaintiff's Complaint and all supporting papers in the above matter to be served via overnight mail to:

> Christine Gillespie, Pro Se
> 23 Cliffside Drive
> Livingston, New Jersey 07039

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Julianne J. Navarrete

Dated:  February 7, 2014

PQ

APP - 077